**THE DUGGER LAW FIRM, PLLC**
**Cyrus E. Dugger**
**154 Grand St.**
**New York, New York 10013**
**Tel: (646) 560-3208**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASMINE BURGESS, | : |
| | : Case No. |
| | : |
| Plaintiff, | : **COMPLAINT** |
| | : |
| v. | : **Demand for Trial by Jury** |
| | : |
| MAJOR MODEL MANAGEMENT, INC., | : |
| and GUIDO DOLCI, | : |
| | : |
| | : |
| Defendants. | : |
| | : |

1.     Plaintiff Jasmine Burgess ("Plaintiff"), by her attorney, The Dugger Law Firm, PLLC, makes the following allegations against Major Model Management, Inc. ("Major Model" or "Major") and owner Guido Dolci ("Dolci") (collectively "Defendants").

## INTRODUCTION

2.     This action seeks to recover, pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, unpaid minimum wages and associated liquidated damages.

3.     This action further seeks to recover, pursuant to the wage and hour provisions of the New York Labor Law ("NYLL") Article 6 §§ 190 *et seq.* and Article 19, §§ 650 *et seq.*, unpaid minimum wages and associated liquidated damages, additional liquidated damages for paid minimum wages that were not paid within the weekly or semi-monthly time-period required by the NYLL, unpaid earned wages and associated liquidated damages, illegal deductions from wages over 10% of Plaintiff's earnings and associated liquidated damages, wage notice statutory damages, and wage statement statutory damages.

1

4.      Plaintiff worked as a model for Major from on or about May 29, 2012 to April 5, 2017, which is the time-period relevant to the claims in the instant complaint.

5.      During this time-period, Plaintiff depended on Major for the opportunity to render modeling services.

6.      Defendants misclassified Plaintiff as an independent contractor with respect to the FLSA and NYLL wage and hour requirements from on or about May 29, 2012 to April 5, 2017.

7.      Defendants did not pay Plaintiff the required federal or state minimum wages for all hours worked in each of these workweeks.

8.      With respect to the minimum wages that Defendants eventually paid, Defendants did not pay Plaintiff the required state minimum wages for all hours worked within the weekly or semi-monthly time-periods required by the NYLL.

9.      Defendants failed to pay Plaintiff <u>any</u> minimum wages for her provision of modeling services to their fashion industry clients, as required by the FLSA and NYLL, from at least November 1, 2016 to April 5, 2017, which totaled more than 180 hours of modeling services.

10.      Defendants failed to pay Plaintiff <u>any</u> of her earned wages for her modeling work for at least November 1, 2016 to April 5, 2017, totaling at least $29,200 in unpaid earned wages.

11.      Defendants have failed to make these payments to Plaintiff, despite having <u>received payment</u> from its fashion industry clients for Plaintiff's provision of modeling services, for all, or the majority of, this at least $29,200 amount currently due to Plaintiff.

12.      On or about September 18, 2017, Defendants acknowledged that, as of that date, they owed Plaintiff <u>more</u> than this $29,200 amount.

13.      Defendants also failed to pay <u>any</u> of the NYLL minimum wages it eventually paid Plaintiff, within the weekly or semi-monthly time-period required by the NYLL, at any point in the six years prior to the filing of this lawsuit, including more than 1,000 hours of Plaintiff's provision of modeling services to Defendants' fashion industry clients.

14.     For example, Defendants failed to pay Plaintiff the minimum wages, it eventually paid, for her provision of modeling services to Defendants' fashion industry client Talbots on or about August 2, 2016 -- if at all -- only after September 19, 2017.  This payment was not within the weekly or semi-monthly time-period required by the NYLL, and Plaintiff is entitled to liquidated damages in the amount of these late payments.

15.     As an additional example, Defendants failed to pay Plaintiff the minimum wages, it eventually paid, for her provision of modeling services to Defendants' fashion industry client Talbots on or about July 27, 28, and 29, 2015, until on or about January 12, 2016.  This payment was not within the weekly or semi-monthly time-period required by the NYLL, and Plaintiff is entitled to liquidated damages in the amount of these late payments.

16.     As an additional example, Defendants failed to pay Plaintiff the minimum wages, it eventually paid, for her provision of modeling services to Defendants' fashion industry client Macy's on or about January 19, 2016, until on or about November 3, 2013.  This payment was not within the weekly or semi-monthly time-period required by the NYLL, and Plaintiff is entitled to liquidated damages in the amount of these late payments.

17.     As an additional example, Defendants failed to pay Plaintiff the minimum wages, it eventually paid, for her provision of modeling services to Defendants' fashion industry client Talbots on or about January 21, 2016, until on or about November 7, 2016.  This payment was not within the weekly or semi-monthly time-period required by the NYLL, and Plaintiff is entitled to liquidated damages in the amount of these late payments.

18.     Between August 3, 2016 and April 5, 2017, Plaintiff provided more than 200 hours of modeling services to Defendants' fashion industry clients, but was not paid any minimum wages, for any of these workweeks, within the weekly or semi-monthly time-period required by the NYLL. Plaintiff is entitled to liquidated damages in the amount of these late payments.

19.     Defendants failure to pay any FLSA or NYLL minimum wages included Plaintiff's provision of more than a total of twenty hours of modeling services to Defendants' fashion industry client Talbots on April 3, 2017, April 4, 2017, and April 5, 2017, with respect to which Plaintiff has still not received any compensation.

20.     Defendants made illegal deductions over the 10% authorized for employment agencies pursuant to GBL § 185, including approximately $8,584 deducted from Plaintiff's wages over this 10% limit during 2016.

21.     Defendants did not ever provide Plaintiff with the wage notice required by NYLL § 195(1).

22.     Defendants did not provide Plaintiff with any written wage statement with respect to every payment of wages to Plaintiff, as required by NYLL § 195(3), inclusive of failing to do so with their payments to Plaintiff on or about May 11, 2017 and on or about September 29, 2017.

23.     Defendants never provided Plaintiff with wage statements that contained all of the information required by NYLL § 195(3), which statements were required to have, *inter alia*, all hours worked, the employer's address, and the employer's phone number.

24.     Defendants currently owe Plaintiff earned wages of, at least, $29,200, for her provision of more than 180 hours of modeling services to Defendants' fashion industry clients between November 1, 2016 and April 5, 2017.

25.     Upon information and belief, Defendants have received payment from its fashion industry clients for all or the majority of this $29,200 amount, and have therefore, substantially profited by failing to pay Plaintiff her earned wages.

26.     Plaintiff worked for Defendants and provided over 1,000 hours of modeling services to Defendants' fashion industry clients, within the last six years, for which she was not paid minimum wages by Defendants within the weekly or semi-monthly time-period required by the NYLL.  Plaintiff is entitled to liquidated damages in the amount of these late payments.

## JURISDICTION AND VENUE

27.     The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331

and the FLSA, 29 U.S.C. § 216(b).

28.     The Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

Plaintiff's state law claims are so closely related to Plaintiff's claims under the FLSA that they form part

of the same case or controversy under Article III of the United States Constitution.

29.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-

2202 and NYLL § 198(1-b), (1-d).

30.     Defendants are subject to personal jurisdiction in New York.

31.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2),

because a substantial part of the events or omissions giving rise to the claims occurred within this

judicial district.

## PARTIES

**Plaintiff Jasmine Burgess**

32.     Plaintiff Jasmine Burgess is an adult individual who resides in the state of Florida.

33.     Plaintiff was employed and/or jointly employed as a model by Defendants, within the

meaning of the FLSA and NYLL, from approximately May 29, 2012 to April 5, 2017.

34.     At all times relevant to the Complaint, Plaintiff was a covered employee within the

meaning of the FLSA and the NYLL.

**Defendant Major Model Management, Inc.**

35.     At all times relevant to the complaint, Defendant Major was a domestic business

corporation with its principal place of business in New York, New York.

36.     Major was founded by owner Dolci.

37.     Major advertises itself as "one of the top ten worldwide modeling agencies handling men

and women models."

5

38.     Major advertises that "[t]he booking teams at Major Models are comprised of top industry professionals with a keen eye for beauty and attention to detail."

39.     Major advertises that "[c]lient commitment to the agency is due largely to the efforts and creative contributions made by the bookers and their representation of models."

40.     At all times relevant to the complaint, the primary activity of Major was to book, or attempt to book, its models to provide modeling services to its fashion industry clients.

41.     At all times relevant to the complaint, Major purposefully directed its activities in interstate commerce and knew, or should have known, that its actions would have an impact upon New York residents.

42.     At all times relevant to the complaint, Major was an employer of Plaintiff within the meaning of the FLSA and NYLL.

43.     At all times relevant to the complaint, Major employed and/or jointly employed Plaintiff within the meaning of the FLSA and NYLL.

44.     At all times relevant to the complaint, Major misclassified Plaintiff as independent contractor with respect to the FLSA and NYLL.

45.     At all times relevant to the complaint, Major had the power to hire, fire, and/or constructively discharge Plaintiff.

46.     Major hired Plaintiff on or about May 29, 2012.

47.     At all times relevant to the complaint, Major had the power to set Plaintiff's wages.

48.     At all times relevant to the complaint, Major exercised the power to set Plaintiff's wages by, *inter alia*, directly negotiating the rate for her modeling bookings with its fashion industry clients without the involvement of Plaintiff.

49.     At all times relevant to the complaint, Major had the power to withhold and/or delay payment of Plaintiff's wages.

50.     Major exercised the power to withhold and/or delay Plaintiff's wages by, *inter alia*, not

paying her all of her earned wages due, even after receiving payment in full from their clients for her provision of modeling services.

51.    At all times relevant to the complaint, Defendants controlled and/or had the potential power to control, Plaintiff's schedule and/or conditions of employment, including, but not limited to, by misclassifying her as independent contractor, determining whether to offer her and/or promote her to any or all of their fashion industry clients, scheduling castings and go-sees, scheduling bookings, coordinating her schedule, requiring her to be available to provide modeling services to their clients at least 300 days a year, requiring her to book out of work or be assumed to be available for the provision of modeling services their clients, directly negotiating her rate of pay and additional terms regarding her provision of modeling services to their clients, discouraging her from speaking directly with their clients regarding the terms and conditions of her provision of modeling services work, and requiring compliance with additional policies, practices, and customs.

52.    At all times relevant to the complaint, Major controlled, or had the potential power to control Plaintiff and other Major models' schedules, including, *inter alia*, the scheduling of go-sees, castings, and/or bookings and/or whether Major stopped scheduling or attempting to book Plaintiff and/or other Major models.

53.    Upon information and belief, at all times relevant to the complaint, the work of Major's models was the primary source of Major's income.

54.    At all times relevant to the complaint, the primary operations of Major were to obtain, or attempt to obtain, bookings for its models to provide modeling services to its fashion industry clients.

55.    At all times relevant to the complaint, the booking work of Major was more than incidental to its operations.

56.    In the alternative, at all times relevant to the complaint, the primary business of Major was to render vocational guidance or counseling services and to directly or indirectly: (1) procure or attempt to procure or represent that it could procure employment or engagements for persons seeking

employment or engagements; (2) represent that it had access, or had the capacity to gain access, to jobs not otherwise available to those not purchasing its services; and/or (3) provide information and/or service purporting to promote, lead to, or result in, employment or engagements for models with other employers.

57.     At all times relevant to the complaint, Major employed -- bookers -- whose primary or sole duty was to obtain castings, go-sees, and/or bookings for Plaintiff to provide modeling services to Major's fashion industry clients.

58.     At all times relevant the complaint, Major was an "employment agency" within the meaning of GBL § 171(2).

59.     Major applied deductions from wages to Plaintiff's earnings that exceeded the 10% amount permitted by GBL § 185.

60.     At all times relevant to the complaint, the business of Major did not incidentally involve the seeking of modeling work for its models.

61.     At all times relevant to the complaint, Major exercised formal and/or operational control over Plaintiff.

62.     At all times relevant to the complaint, Major possessed the power to control Plaintiff.

**Defendant Owner Guido Dolci**

63.     Upon information and belief, at all times relevant to the complaint, Defendant Dolci was the founder, owner, and President of Major.

64.     Upon information and belief, at all times relevant to the complaint, Dolci controlled Major.

65.     At all times relevant to the complaint, Dolci was an employer within the meaning of the FLSA and the NYLL.

66.     At all times relevant to the complaint, Dolci employed and/or jointly employed Plaintiff.

67.     At all times relevant to the complaint, Dolci purposefully directed his activities in

interstate commerce and knew, or should have known, that his actions would have an impact upon New York residents.

68.     At all times relevant to the complaint, Dolci misclassified Plaintiff as an independent contractor with respect to the FLSA and NYLL wage and hour provisions.

69.     At all times relevant to the complaint, Dolci had power over decisions at Major, including with respect to Plaintiff and other Major models.

70.     At all times relevant to the complaint, Dolci had power over decisions at Major, including with respect the hiring, firing, and assignments of Plaintiff's bookers and other model bookers at Major.

71.     At all times relevant to the complaint, Dolci possessed the power to control Plaintiff.

72.     At all times relevant to the complaint, Dolci had the power to hire, fire, and/or constructively discharge Plaintiff.

73.     At all times relevant to the complaint, Dolci had the power to and/or exercised the power to, set Plaintiff's wages, *inter alia*, through his misclassification of her as an independent contractor under the FLSA and NYLL, imposition of a model deduction of 20% of her earnings and imposition of an additional 20% "service charge" charged to its fashion industry clients for her provision of modeling services.

74.     At all times relevant to the complaint, Dolci had the power to and/or has exercised the power to withhold and/or delay payment of Plaintiff's wages.

75.     At all times relevant to the complaint, Dolici had the power to and/or exercised the power to make deductions from Plaintiff's wages.

76.     At all times relevant to the complaint, Dolci controlled, or had the potential power to control, Plaintiff and other Major models' schedules, including, *inter alia*, the scheduling of go-sees, castings, and/or bookings and/or whether Defendants stopped scheduling or attempting to book Plaintiff and other Major models.

77.     Upon information and belief, at all times relevant to the complaint, Dolci had overall

financial control of Major.

78.     Upon information and belief, at all times relevant to the complaint, Dolci had the power to make ultimate decisions as to how Major was run.

79.     Upon information and belief, at all times relevant to the complaint, Dolci could have dissolved Major if he decided the company should not remain in business.

80.     Upon information and belief, at all times relevant to the complaint, Dolci had operational control over Major.

81.     Upon information and belief, at all times relevant to the complaint, Dolci controlled all aspects of Major's operations and business.

82.     At all times relevant to the complaint, Dolci exercised formal and/or operational control over Plaintiff.

## PLAINTIFF'S FACTUAL ALLEGATIONS

83.     On or about May 29, 2012, Plaintiff signed Major's modeling contract document.

84.     The document stated that Plaintiff was required to:

      a.    "be available, ready, willing and able to render services as a fashion model in New York City or at such other location as may be reasonably requested from time to time by . . . clients at least three hundred (300) full working days" a year";

      b.    "advise [the agency] . . . in advance of any days during which . . . [she] w[ould] be unavailable to perform [modeling] [s]ervices";

      c.    give Major "the exclusive right to refer . . . [her] . . . or place . . . [her] with other agencies in location where . . . [Major] d[id] not maintain an office";

      d.    "maintain [her] weight";

      e.    "not materially change [her] appearance";

      f.    "conduct . . . [herself] in a courteous and professional manner';

      g.    "appear at all modeling and other professional engagements on a timely basis";

      h.    "refrain from taking any actions which w[ould] reflect adversely on . . . [Major] or . . . [her] career";

i.    "refrain from . . . excessively using alcohol";

j.    "remit [any] . . . compensation" she "received directly from a client to . . . [the agency] within seven (7) days of . . . [her] receipt thereof";

k.    agree that Major was "entitled to receive as . . . compensation . . . twenty percent (20%) of all gross income or other cast consideration (including composition, salaries, earnings, fees royalties, residuals, proceeds, bonuses, prizes, awards, goods, in-kind services, and contest monies)";

l.    agree that Major was "entitled to receive a service charge or agency fee from some, and/or all of the clients who may utilize . . . [her modeling] [s]ervices";

n.    if she missed "a booking (other than for extreme emergencies- which proof may be required) . . . [she] w[ould] be required to pay to the agency the lost model and client commission" -- i.e. half of the amount that she would have received from the booking; and

85.    The modeling document stated that Plaintiff was required to be classified as an independent contractor.

86.    At all times relevant to the complaint, Defendants coordinated all scheduling of Plaintiff's work with its fashion industry clients and maintained her master schedule.

87.    At all times relevant to the complaint, Plaintiff never turned down a booking offered to her by Major.

88.    At all times relevant to the complaint, Plaintiff was required to affirmatively opt-out of being assumed to be available for work.

89.    At all times relevant to the complaint, Plaintiff was assumed to be available for modeling work unless she "booked out" by requesting vacation from Major.

90.    At all times relevant to the complaint, Plaintiff only booked out a total of approximately one to two weeks each calendar year.

91.    At all times relevant to the complaint, Plaintiff typically communicated with Major's booker(s) each day, or every other day, regarding go-sees, castings, and bookings.

92.    At all times relevant to the complaint, Defendants coordinated Plaintiff's schedule regarding all modeling work.

93.     At all times relevant to the complaint, Defendants' deductions of Plaintiff's wages above the 10% permitted by GBL § 185 were not for the benefit of Plaintiff.

94.     At all times relevant to the complaint, Defendants imposed numerous rules, policies, practices, procedures, and/or requirements on Plaintiff, including, but not limited to: (1) discouraging Plaintiff from discussing her compensation or other terms and conditions of employment with Major's fashion industry clients; (2) requiring Plaintiff to be available to them for fashion modeling 300 days a year; (3) requiring Plaintiff not to cancel bookings or face substantial financial penalties if she cancelled a booking; (4) requiring Plaintiff to call and request a book out if she could not be available for work for any reason; (5) requiring Major to unilaterally negotiate her rate of pay and terms of condition with fashion industry clients; (6) discouraging Plaintiff from discussing her rate of pay and other terms and conditions of employment with fashion industry clients; (7) requiring Plaintiff to maintain her weight; (8) requiring Plaintiff to not materially change her appearance; (9) requiring Plaintiff to conduct herself in a courteous and professional manner; (10); requiring Plaintiff to appear at all modeling and other professional engagements on a timely basis; (11) requiring Plaintiff to refrain from taking any actions which would reflect adversely on Major or her career; (12) requiring Plaintiff to refrain from excessively using alcohol; (13) requiring Plaintiff to remit any compensation she received directly from a client to Major within seven days of her receipt thereof; (14) requiring Plaintiff to agree that Major was entitled to receive as compensation twenty percent (20%) of all gross income or other consideration (including composition, salaries, earnings, fees royalties, residuals, proceeds, bonuses, prizes, awards, goods, in-kind services, and contest monies); (15) requiring Plaintiff to agree that Major was entitled to receive a service charge or agency fee from some, and/or all of the clients who may utilize her modeling services; (16) requiring Plaintiff to use only Major's comp cards and portfolio documents that did not include her personal contact information; (17) having Plaintiff's profile on the Major website not include her personal contact information; (18) discouraging and/or prohibiting her from utilizing personal business cards; (19) requiring coordination of her modeling work schedule by Major; (20) requiring Major to

12

control direct contact with clients regarding the terms and conditions of her provision of modeling services; and (21) requiring frequent communications with Major bookers regarding go-sees, castings, and bookings.

95.     At all times relevant to the complaint, Defendants had the power to fire and/or constructively discharge Plaintiff.

96.     At all times relevant to the complaint, Defendants, including with respect to Plaintiff, controlled which Major models' information to send to a particular client, and for which models it would attempt to obtain castings, go-sees and/or bookings for,

97.     At all times relevant to the complaint, Defendants, including with respect to Plaintiff, controlled which Major models it offered and/or promoted to fashion industry clients for castings and go-sees.

98.     At all times relevant to the complaint, Defendants scheduled and/or coordinated Plaintiff and other Major models' work schedules through Defendants' bookers.

99.     At all times relevant to the complaint, Plaintiff's booker typically communicated with her regarding her schedule of go-sees, castings, and/or bookings at least approximately once a day or every other day.

100.    At all times relevant to the complaint, Defendants directly paid Plaintiff the wages that she received for her provision of modeling services to Defendants' fashion industry clients.

101.    At all times relevant to the complaint, Plaintiff did not receive any direct payments from Major's fashion industry clients for her provision of modeling services.

102.    At all times relevant to the complaint, Major's fashion industry clients directly paid Major, not Plaintiff, for Plaintiff's provision of modeling services to them.

103.    At all times relevant to the complaint, Defendants set the method of payment for Plaintiff as direct deposit.

104.    At all times relevant to the complaint, Defendants set the rate of pay for Plaintiff by

directly negotiating her rate with clients without her involvement.

105.    At all times relevant to the complaint, Defendants set the rate of pay for Plaintiff by illegally imposing a 20% deduction on her earned wages as a "model commission," which was twice the 10% limit permitted by GBL § 185.

106.    At all times relevant to the complaint, Defendants set and/or limited the rate of pay for Plaintiff, by charging its clients an additional 20% agency fee, which compensation to Defendants could have otherwise been paid to Plaintiff for her provision of modeling services.

107.    For example, for every eighty dollars that Plaintiff actually received in payment for her provision of modeling services to Defendants' clients, Defendants received a $20 model commission and an additional $20 agency fee.

108.    Defendants received one dollar, for every two dollars, that Plaintiff actually received for her provision of modeling services to Defendants' fashion industry clients.

109.    At all times relevant to the complaint, Defendants also determined the rate and/or method of payment of Plaintiff by unilaterally classifying her as an independent contractor under the FLSA and NYLL.

110.    At all times relevant to the complaint, Defendants directly invoiced it fashion industry clients for Plaintiff's provision of modeling services.

111.    At all times relevant to the complaint, Plaintiff did not have a significant opportunity for profit or loss from her work for Major.

112.    Upon information and belief, at all times relevant to the complaint, Defendants made large capital investments in their business.

113.    At all times relevant to the complaint, Plaintiff was more akin to a wage earner, toiling for a living, than an independent entrepreneur seeking a return on risky capital investments.

114.    Plaintiff's only initial required costs to be a Major Model were: (1) photographs which cost her $200; (2) a portfolio book which cost her approximately $38; and (3) Major's composite cards

containing her pictures and measurements (but only Major's contact information) which cost her approximately $400.

115.   Plaintiff's other primary required costs to be a Major model were an annual website fee of approximately $450, initially advanced to her by Major, and the purchase of additional Major composite cards at a cost of approximately $400 each year.

116.   Notwithstanding the mandatory website fee, Plaintiff had no control over, and was never consulted regarding, which of her photos were used for her model profile on Major's website.

117.   At all times relevant to the complaint, Plaintiff's employment prospects were controlled largely by Defendants' decisions concerning which models to promote to which fashion industry clients, and which models to offer to which client for a go-see and/or casting, and were not based on Plaintiff's own initiative.

118.   At all times relevant to the complaint, Plaintiff's employment prospects and earnings were primarily determined by the skill and initiative of her booker in: (1) booking her with Defendants' fashion industry clients; and (2) negotiating her rate and additional terms and conditions of her provision of modeling services to Defendants' fashion industry clients.

119.   At all times relevant to the complaint, Plaintiff did not use helpers to provide modeling services to Defendants' fashion industry clients.

120.   At all times relevant to the complaint, Plaintiff could not unilaterally assign or utilize a substitute for her provision of modeling services to Defendants' fashion industry clients.

121.   At all times relevant to the complaint, Defendants controlled the advertising for Plaintiff's provision of modeling services.

122.   At all times relevant to the complaint, if Defendants decided not to provide Plaintiff's information to their fashion industry clients and/or removed her from their website, that decision exerted substantial, if not total, control over whether Plaintiff would attend castings or go-sees with fashion industry clients and/or the volume of castings and/or go-sees Plaintiff received.

123.    At all times relevant to the complaint, Major's models were an integral part of its business.

124.    Upon information and belief, at all times relevant to the complaint, the majority of Major's revenues have been obtained through the payment of its fashion industry clients for its models' provision of modeling services.

125.    Upon information and belief, at all times relevant to the complaint, Major has obtained the majority of its revenue through "model commissions" and/or "agency fees," derived from payment by its fashion industry clients for its models' provision of modeling services to them.

126.    At all times relevant to the complaint, Defendants imposed appearance and figure standards on Plaintiff and other Major models.

127.    At all times relevant to the complaint, Plaintiff and other Major models were expected not to change their appearance without permission from Defendants.

128.    At all times relevant to the complaint, Defendants have maintained employment records concerning Plaintiff and other Major models regarding their provision of modeling services.

129.    At all times relevant to the complaint, Defendants required Plaintiff and other Major models to use a Major composite card and portfolio when attending go-sees, castings, and bookings.

130.    At all times relevant to the complaint, Defendants have prohibited and/or discouraged Plaintiff and other Major models from using any composite cards other than Major's composite card, and/or otherwise prohibited and/or discouraged the use of business cards regarding their provision of modeling services.

131.    At all times relevant to the complaint, Defendants have controlled and/or supervised Plaintiff and other Major models' work through the implementation and enforcement of formal and informal policies.

132.    Under the FLSA and the NYLL more than one employer may be responsible for the failure to pay wages.

133.    At all times relevant to the complaint, Defendants possessed the power to control Plaintiff.

134.    At all times relevant to the complaint, Defendants had the power to fire and hire Plaintiff.

135.    At all times relevant to the complaint, Defendants supervised and controlled the schedules and conditions of employment for Plaintiff.

136.    At all times relevant to the complaint, Defendants determined the rate of payment for Plaintiff's provision of modeling services to their fashion industry clients.

137.    At all times relevant to the complaint, Defendants determined the method of payment for Plaintiff's provision of modeling services to their fashion industry clients.

138.    At all times relevant to the complaint, Defendants maintained extensive employment records regarding Plaintiff's provision of modeling services to their fashion industry clients.

139.    At all times relevant to the complaint, Defendants established and applied minimum eligibility criteria, including appearance criteria, for hiring Major models, including with respect to Plaintiff.

140.    At all times relevant to the complaint, Defendants had the power to hire, fire, and/or reassign all Major staff, including Plaintiff's bookers, which reassignment would affect Plaintiff's conditions of employment by, *inter alia*, determining Plaintiff's booker's skill at obtaining go-sees and castings, and negotiating rates and terms and conditions of employment for Plaintiff's provision of modeling services to Defendants' clients.

141.    At all times relevant to the complaint, Major was, upon information and belief, a successful business, because of the skill and initiative of its bookers at booking models.

142.    At all times relevant to the complaint, Plaintiff did not work at her own convenience and was not free to engage in other employment.

143.    At all times relevant to the complaint, Plaintiff was required by Defendants to be available for modeling work for their clients three hundred (300) full working days per year.

144.    At all times relevant to the complaint, Plaintiff did not receive direct payment for her provision of modeling services from Defendants' fashion industry clients.

145.    At all times relevant to the complaint, Plaintiff did not provide modeling services without Major taking approximately one third of the client's payment for her modeling services.

146.    At all times relevant to the complaint, Plaintiff did not independently negotiate her pay rate for her provision of modeling services to Defendants' fashion industry clients.

147.    At all times relevant to the complaint, Plaintiff could not accept or reject work without suffering financial or other penalties from Defendants.

148.    At all times relevant to the complaint, Defendants coordinated all scheduling for Plaintiff's modeling work with their fashion industry clients.

149.    At all times relevant to the complaint, Defendants maintained Plaintiff's master modeling schedule.

150.    At all times relevant to the complaint, Defendants informed Plaintiff of her finalized modeling schedule.

151.    At all times relevant to the complaint, Defendants required that Plaintiff notify them of all modeling work in New York.

152.    At all times relevant to the complaint, Defendants notified Plaintiff of changes and modifications of her modeling schedule.

153.    At all times relevant to the complaint, only Defendants had direct negotiations with fashion industry clients regarding the amount they would pay for Plaintiff's provision of modeling services.

154.    At all times relevant to the complaint, Defendants actively discouraged Plaintiff from discussing compensation with Defendants' clients to whom she was providing modeling services.

155.    At all times relevant to the complaint, Plaintiff was on Defendants' weekly payroll.

156.    At all times relevant to the complaint, upon information and belief, the delays in payment

18

of minimum wages to Plaintiff and other Major models were intentional and increased Defendants'
profits through additional accrued interest to Defendants (*i.e.* "the float"), and/or because these delays in
payment, and failures of payment, financially benefited Defendants.

157.    At all times relevant to the complaint, upon information and belief, Defendants' non-
payment of earned wages to Plaintiff and other Major models were intentional, and financially benefited
Defendants, by permitting Defendants to obtain payment for the full value of the models' provision of
modeling services to fashion industry clients, instead of receiving one third of value through its "model
commission" and "agency fee."

158.    At all times relevant to the complaint, there is no reasonable business justification for
Defendants' substantial delays in paying wages and/or non-payment of wages.

159.    At all times relevant to the complaint, Defendants' deductions from Plaintiff's and other
Major models' wages over the 10% permitted by GBL § 185, were not made in accordance with the
provisions of any law or any rule or regulation issued by any governmental agency.

160.    At all times relevant to the complaint, Defendants' deductions of commissions from
Plaintiff's wages were not for her benefit.

161.    At all times relevant to the complaint, Defendants' deductions of commissions from
Plaintiff and other Major models were used for the purpose of paying Defendants' administrative costs.

162.    Defendants failed to comply with the payment notice requirements of NYLL § 195(3), by
failing to provide Plaintiff with a statement, along with each payment of wages, including failing to
include the amount of hours worked, the address of the employer, or the phone number of the employer.

163.    Upon information and belief, at all times relevant to the complaint, Defendants failed to
make, keep, and preserve complete and/or accurate records with respect to Plaintiff, hours spent
providing modeling services their fashion industry clients at bookings, resulting in incomplete records of
all hours worked each workday and all hours worked each workweek, as required by the FLSA at 29
U.S.C. § 211(c), and supporting federal regulations.

164.     Upon information and belief, at all times relevant to the complaint, Defendants failed to make, keep, and preserve accurate and/or complete records with respect to Plaintiff, as to the hours spent providing modeling services to their fashion industry clients at bookings, resulting in incomplete records of all hours worked each workday and all hours worked each workweek, as required by NYLL § 650 *et seq*., and supporting regulations.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Failure to Pay Minimum Wages

165.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

166.     At all times relevant to the complaint, Plaintiff was employed and/or jointly employed by Defendants within the meaning of the FLSA.

167.     At all times relevant to the complaint, Defendants violated the FLSA, including by misclassifying Plaintiff as an independent contractor, and failing to pay Plaintiff the minimum wage for all hours Defendants suffered or permitted her to work, which failures resulted in minimum wage violations for workweeks for which Defendants paid Plaintiff no compensation for her work.

168.     At all times relevant to the complaint, the minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, applied to Defendants and protected Plaintiff.

169.     Defendants failed or refused to pay Plaintiff at a rate equal to or greater than the federal minimum wage for all weeks worked, which violated the FLSA.  29 U.S.C. § 206.

170.     At all times relevant to the complaint, Plaintiff was engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(b) and 206.

171.     At all times relevant to the complaint, Defendants were employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(b), (d), 206.

172.     At all times relevant to the complaint, Plaintiff was an employee within the meaning of

the FLSA, including 29 U.S.C. § 203(e).

173.     Defendants have failed to pay Plaintiff the minimum wages to which she was entitled under the FLSA, for all workweeks within three years of her filing of the instant complaint.

174.     Defendants have not made a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff and their non-compliance has been willful.

175.     As a result of Defendants' willful violations of the FLSA, Plaintiff has suffered damages by being denied minimum wages in accordance with 29 U.S.C. §§ 201 *et seq*.

176.     As a result of the unlawful acts of Defendants, Plaintiff has been deprived of minimum wage compensation and other wages in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### New York Labor Law – Failure to Pay Minimum Wages

177.      Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

178.     Defendants failed to pay Plaintiff all of the minimum wages to which she was entitled under the NYLL.

179.     Defendants violated the NYLL, by failing to pay Plaintiff the minimum wage for all hours Defendants suffered or permitted her to work, which failures resulted in minimum wage violations for workweeks for which Defendants paid Plaintiff no compensation for her work within six years of her filing of the instant complaint.

180.     At all times relevant to the complaint, Plaintiff has been an employee and Defendants have been employers within the meaning of NYLL §§ 651, and 652, and the supporting New York State Department of Labor Regulations.

181.     Within the relevant time period, Defendants failed to pay Plaintiff minimum wages for all

hours worked to which she was entitled under the NYLL and the supporting New York State Department of Labor Regulations.

182.   Defendants' willful failure to pay Plaintiff minimum wages, for all of the hours worked, violated NYLL § 650 *et. seq*. and the supporting New York State Department of Labor regulations.

183.   Defendants did not have a good faith basis to believe that its failure to pay minimum wages was in compliance with the law.

184.   Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
**New York Labor Law – Failure to Pay Timely Minimum Wages**

185.   Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

186.   Defendants failed to pay Plaintiff all of the minimum wages to which she was entitled under the NYLL within the weekly or semi-monthly time-period required by the NYLL

187.   Defendants violated the NYLL by failing to pay Plaintiff's minimum wages, eventually paid, within the weekly or semi-monthly time-period required by NYLL § 191, for all hours Defendants suffered or permitted her to work providing modeling services to its fashion industry clients at bookings, entitling Plaintiff to liquidated damages in the equal amount of such minimum wages.

188.   At all times relevant to the complaint, Plaintiff was an employee and Defendants were employers within the meaning of the NYLL §§ 651, 652, and 190, and the supporting New York State Department of Labor Regulations.

189.   Within the relevant time period, Defendants failed to pay Plaintiff timely minimum wages for all hours worked to which she was entitled under the NYLL and the supporting New York State Department of Labor Regulations.

190.    Defendants' violations were willful.

191.    Defendants did not have a good faith basis to believe that its failure to pay minimum wages within the time-period required by NYLL § 191 was in compliance with the law.

192.    Plaintiff is entitled to recover from Defendants liquidated damages in the amount of the non-timely payments, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
**New York Labor Law – Failure to Pay Wages Due**

193.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

194.    At all times relevant, Defendants were employers and/or joint employers within the meaning of the NYLL.

195.    At all times relevant, Plaintiff was an employee and Defendants were employers within the meaning of NYLL § 190.

196.    At all times relevant, Plaintiff was a "clerical or other worker" or a "manual worker" within the meaning of NYLL § 191.

197.    At all times relevant, Plaintiff was entitled to weekly or semi-monthly payment of her wages by Defendants pursuant to NYLL § 191.

198.    Defendants failed to pay Plaintiff all of her earned wages which are currently due Plaintiff.

199.    Plaintiff is entitled to payment of her earned wages due.

200.    Defendants failed to pay Plaintiff all of her earned wages currently due within the weekly or semi-monthly time-period required by NYLL § 191.

201.    Defendants' violations were willful.

202.    Defendants did not have a good faith basis to believe that their failure to pay earned wages due, within the time-period required by NYLL § 191, was in compliance with the law.

203.    By Defendants' knowing, bad faith, and/or intentional failure to pay Plaintiff, Defendants have willfully violated the NYLL and the supporting New York State Department of Labor regulations.

204.    These unpaid earned wages are still due to Plaintiff.

205.    Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid earned wages due, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FIFTH CAUSE OF ACTION
**New York Labor Law – Unlawful Deductions**

206.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

207.    At all times relevant, Defendants have been employers and/or joint employers within the meaning of the NYLL.

208.    At all times relevant, Plaintiff was an employee and Defendants were employers within the meaning of NYLL § 190.

209.    At all times relevant, the wage deduction provisions of NYLL § 193, and the supporting New York State Department of Labor Regulations, applied to Defendants and protected Plaintiff.

210.    Defendants have willfully reduced the wages of Plaintiff by making unlawful deductions from her wages.

211.    Defendants did not have a good faith basis to believe that its deduction of 20% wages was in compliance with the 10% limit to such deductions under GBL § 185.

212.    At all times relevant to the complaint, Defendants violated NYLL § 193, by making a 20% "model commission" deduction from Plaintiff's wages, with respect to which -- at least -- half of such deduction was an illegal deduction in violation of NYLL § 193,

213.    At all times relevant to the complaint, Defendants' deductions above the 10% of wages amount permitted by GBL § 185, were not made in accordance with the provisions of any law or any

rule or regulation issued by any governmental agency.

214.    Defendants' deductions for model "commissions," were not for the benefit of Plaintiff.

215.    Defendants' deductions for commissions were made for the purpose of paying Defendants' administrative costs, which is explicitly prohibited by NYLL § 193 and supporting New York State Department of Labor Regulations.

216.    Defendants' violations were willful.

217.    Defendants did not have a good faith basis to believe that its deductions above 10% of Plaintiff's wages was in compliance with the law.

218.    Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants deductions from her wages above the 10% permitted by GBL § 185, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### SIXTH CAUSE OF ACTION
**New York Labor Law – Wage Notice**

219.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

220.    At all times relevant, Defendants were employers and/or joint employers within the meaning of the NYLL.

221.    At all times relevant, Plaintiff was an employee within the meaning of the NYLL § 190.

222.    Defendants failed to supply Plaintiff the notice required by NYLL § 195(1) within ten business days of hiring her on or about May 29, 2012.

223.    Defendants failed to provide Plaintiff the notice required by NYLL § 195(1).

224.    Defendants did not obtain the signature of Plaintiff on form LS 51 and/or other notice required by NYLL § 195(1).

225.    Due to Defendants' violations of NYLL § 195(1), Plaintiff is entitled to recover from Defendants a total of twenty-five hundred dollars, as provided for by NYLL § 198(1-b), in addition to

reasonable attorneys' fees, costs, and injunctive and declaratory relief.

### SEVENTH CAUSE OF ACTION
**New York Labor Law – Wage Statement**

226.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

227.    At all times relevant, Defendants were employers and/or joint employers within the meaning of the NYLL.

228.    At all times relevant, Plaintiff was an employee within the meaning of the NYLL § 190.

229.    Defendants failed to provide Plaintiff with the notice required by NYLL § 195(3), by failing to provide Plaintiff with any statement, with any payment of her wages, listing, *inter alia*, the number of hours worked, the address of the employer, or the phone number of the employer.

230.    Defendants frequently failed to provide Plaintiff with <u>any</u> written statement with her payment of wages.

231.    Due to Defendants' violations of NYLL § 195(3), Plaintiff is entitled to recover from Defendants five thousand dollars in statutory damages, in addition to reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

A.    Unpaid minimum wages, and an additional equal amount as liquidated damages, pursuant to the FLSA and the supporting United States Department of Labor regulations;

B.    Unpaid minimum wages pursuant to the NYLL and the supporting New York State Department of Labor regulations, and an additional equal amount as liquidated damages;

C.  Liquidated damages in the amount of paid minimum wages, that were not paid within the time-period required by NYLL and the supporting New York State Department of Labor regulations;

D.  Unpaid earned wages due pursuant to the NYLL and the supporting New York State Department of Labor regulations, and an additional equal amount as liquidated damages;

E.  Compensation for unlawful deductions from Plaintiff's wages pursuant to the NYLL and the supporting New York State Department of Labor regulations, and an additional equal amount as liquidated damages;

F.  Pre-judgment interest and post-judgment interest;

G.  Issuance of a declaratory judgment that the practices complained of in this complaint violated NYLL § 195(1), (3)

H.  Issuance of a declaratory judgment that Defendants are joint employers pursuant to the NYLL;

I.  Issuance of a declaratory judgment that Plaintiff was an employee within the meaning of the NYLL;

J.  Statutory damages;

K.  An injunction prohibiting Defendants from continuing their unlawful policies and practices as described herein;

L.  Reasonable attorneys' fees and costs; and

M.  Such other relief as this Court deems just and proper

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: April 3, 2020
       New York, New York

                              Respectfully submitted,

                    By:     _____/s/ Cyrus E. Dugger_____
                            Cyrus E. Dugger

                            **THE DUGGER LAW FIRM, PLLC**
                            **154 Grand St.**
                            **New York, NY 10013**
                            **Tel: (646) 560-3208**
                            **cd@theduggerlawfirm.com**