**THE DUGGER LAW FIRM, PLLC**
**Cyrus E. Dugger**
**Gotham Center**
**28-07 Jackson Ave., 5ᵗʰ Fl.**
**Long Island City, NY 11101**
**Tel: (646) 560-3208**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASMINE BURGESS, individually, and on behalf of all those similarly situated, | : **Case No. 1:20 Civ. 02816 (GHW)** |
| | : |
| Plaintiff, | : **SECOND** |
| | : **AMENDED CLASS AND COLLECTIVE** |
| v. | : **ACTION COMPLAINT** |
| | : |
| MAJOR MODEL MANAGEMENT INC., and GUIDO DOLCI, | : **Demand for Trial by Jury** |
| | : |
| Defendants. | : |

1.      Plaintiff Jasmine Burgess ("Plaintiff"), individually, and on behalf of all others similarly situated, by her attorneys, The Dugger Law Firm, PLLC, makes the following allegations against Major Model Management, Inc. ("Major" or "Major, Inc.") and Major owner Guido Dolci ("Dolci") (collectively "Defendants").

## **INTRODUCTION**

2.      This action seeks to recover, on behalf of Plaintiff and a collective of similarly situated former Major models, pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, unpaid minimum wages for their provision of modeling services to Major's clients, as well as associated liquidated damages for unpaid minimum wages.

3.      This action additionally seeks, on behalf of Plaintiff in her individual capacity, and as a representative of a class of similarly situated former Major models, pursuant to the wage and hour

minimum wage provisions of New York Labor Law Article 19, §§ 650 *et seq*., unpaid minimum wages

for their provision of modeling services to Major's clients, as well as liquidated damages for unpaid

minimum wages and delayed minimum wages eventually paid.

4.      This action further seeks, on behalf of Plaintiff in her individual capacity, and as a

representative of a class of similarly situated former Major models, pursuant to the wage and hour

provisions of the New York Labor Law, Article 6 §§ 190 *et seq.*,: (1) unpaid earned wages and

associated liquidated damages; (2) liquidated damages for earned wages that were eventually paid but

were not paid within the time-periods required by the NYLL; (3) illegal deductions of "commissions"

from their wages over the 10% statutory maximum charge permitted for an employment agency to

charge a worker pursuant to New York General Business Law  ("GBL") § 185, along with associated

liquidated damages; (4) illegal deductions from their wages, by separate transaction, through "service

charges" or "agency fees" charged to Defendants' clients above the statutory maximum charge

permitted for an employment agency to charge a client pursuant to GBL § 185, along with associated

liquidated damages; (5) wage notice statutory damages; and (6) wage statement statutory damages.

5.      In addition to, and/or in the alternative to, Plaintiff's and the classes' wages and hour

claims, this action seeks, on behalf of Plaintiff in her individual capacity, and as a representative of

classes of similarly situated former Major models, pursuant to the common law: (1) an accounting; (2) a

constructive trust; (3) disgorgement of all funds received concerning their provision of modeling

services; (4) actual damages; and (5) punitive damages arising from Major's breach of its fiduciary

duties, pursuant to New York General Obligations Law ("GOL") § 5-1505, and/or the common law,

concerning Major's asserted power of attorney and/or attorney-in-fact status (to the extent Major's

power of attorney and/or attorney-in-fact status was valid).

6.      In addition, this action further seeks, on behalf of Plaintiff in her individual capacity, and

as a representative of a class of similarly situated former Major models, pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201-02 a declaration that: (1) Major was an employment agency as defined

by General Business Law § 171 during the period April 3, 2014 to January 1, 2020; (2) Major did not have an employment agency license during the period April 3, 2014 to January 1, 2020; and (3) as a result of Major's unlicensed operation as an employment agency during April 3, 2014 to January 1, 2020, pursuant to GBL § 185(10), Major is barred from charging or collecting from them, any fee or allegedly owed fee, including any model commission(s), pertaining to their provision of modeling services provided during April 3, 2014 to January 1, 2020.

7.      This action further seeks to recover, on behalf of Plaintiff in her individual capacity, pursuant to 29 U.S.C. § 215 and NYLL § 215, for Defendants' retaliatory state court lawsuit against Plaintiff's and other putative class members' current modeling agency and/or current booker, punitive damages , attorney's fees, costs, a declaration of Defendants' violation of the anti-retaliation provisions of the FLSA, and an injunction restraining Defendants from further retaliation against Plaintiff or other putative class members.

8.      Plaintiff worked as a model for Major from on or about May 29, 2012 to April 5, 2017.

9.      During this time-period, Plaintiff, and other similarly situated Major models, depended on Major for the opportunity to render modeling services.

10.     Defendants misclassified Plaintiff, and similarly situated Major models, as independent contractors with respect to the FLSA and NYLL wage and hour requirements, from at least May 29, 2012 through at least January 1, 2020.

11.     Defendants did not pay Plaintiff, or similarly situated Major models, the required federal or state minimum wages for all hours worked, for each of their workweeks worked.

12.     With respect to the minimum wages that Defendants eventually paid, Defendants did not pay Plaintiff, or similarly situated Major models, the required minimum wages for all hours worked within the weekly or semi-monthly time-periods required by the NYLL.

13.     Defendants failed to pay Plaintiff <u>any</u> minimum wages, as required by the FLSA and NYLL, for her provision of modeling services to their fashion industry clients, from at least November 1, 2016 to April 5, 2017 -- totaling at least 90 hours of modeling services.

14.     Defendants have failed to pay Plaintiff and similarly situated former Major Models all of their earned wages due.

15.     Defendants have deducted commissions from Plaintiff, and similarly situated Major models at an amount (20%) that is twice the 10% legal limit of deductions permitted by GBL § 185, for deductions by employment agencies from workers.

16.     Defendants failed to pay Plaintiff <u>any</u> of her earned wages for her modeling work from at least November 1, 2016 to April 5, 2017, totaling at least $29,200 in unpaid earned wages.

17.     Defendants have failed to make these payments to Plaintiff, despite having <u>received payment</u> from its fashion industry clients for Plaintiff's provision of modeling services, for all or the majority of the at least $29,200 amount currently due to Plaintiff.

18.     Defendants have failed to pay similarly situated former Major models all of their earned wages due, and despite having <u>received payment</u> by the client for the models' provision of modeling services.

19.     Defendants failed to pay Plaintiff <u>any</u> of her earned wages for her modeling work from at least November 1, 2016 to April 5, 2017 -- totaling at least $29,200 in unpaid earned wages.

20.     On or about September 18, 2017, Defendants acknowledged that, as of that date, they owed Plaintiff <u>more</u> than this $29,200 amount.

21.     Defendants also failed to pay <u>any</u> of the NYLL minimum wages they eventually paid Plaintiff, within the weekly or semi-monthly time-period required by the NYLL, at any point in the six years prior to the initial filing of this lawsuit -- including approximately 781 hours of Plaintiff's provision of modeling services to Defendants' fashion industry clients.

22.     For example, Defendants failed to pay Plaintiff the minimum wages it eventually paid for her provision of modeling services to Defendants' fashion industry client Talbots on or about August 2, 2016, until after September 19, 2017 (if at all).  This payment or payments were not within the weekly or semi-monthly time-period required by the NYLL, and Plaintiff is entitled to liquidated damages in the amount of these late payments.

23.     As an additional example, Defendants failed to pay Plaintiff the minimum wages, it eventually paid, for her provision of modeling services to Defendants' fashion industry client Talbots on or about July 27, 28, and 29, 2015, until on or about January 12, 2016.  This payment was not within the weekly or semi-monthly time-period required by the NYLL, and Plaintiff is entitled to liquidated damages in the amount of these late payments.

24.     As an additional example, Defendants failed to pay Plaintiff the minimum wages, it eventually paid, for her provision of modeling services to Defendants' fashion industry client Macy's in New York City on or about January 19, 2016, until on or about November 3, 2016.  This payment was not within the weekly or semi-monthly time-period required by the NYLL, and Plaintiff is entitled to liquidated damages in the amount of these late payments.

25.     As an additional example, Defendants failed to pay Plaintiff the minimum wages, it eventually paid, for her provision of modeling services to Defendants' fashion industry client Talbots on or about January 21, 2016, until on or about November 7, 2016.  This payment was not within the weekly or semi-monthly time-period required by the NYLL, and Plaintiff is entitled to liquidated damages in the amount of these late payments.

26.     Between August 3, 2016 and April 5, 2017, Plaintiff provided more than 100 hours of modeling services to Defendants' fashion industry clients, but was not paid any minimum wages for any of these workweeks within the weekly or semi-monthly time-period required by the NYLL.

27.     Plaintiff is entitled to liquidated damages in the amount of these late payments.

28.     Defendants' failure to pay any FLSA or NYLL minimum wages included Plaintiff's provision of more than a total of twenty hours of modeling services to Defendants' fashion industry client Talbots on April 3, 2017, April 4, 2017, and April 5, 2017, with respect to which Plaintiff has still not received any compensation.

29.     During the six years prior to the initial filing of this lawsuit, Defendants also failed to pay any of the NYLL minimum wages they eventually paid, to all or the majority of similarly situated Major models, within the weekly or semi-monthly time-period required by the NYLL.

30.     Defendants made illegal deductions over the 10% authorized for employment agencies to deduct from workers pursuant to GBL § 185, including approximately $8,584 deducted from Plaintiff's wages over this 10% limit during 2016.

31.     Defendants made illegal deductions from their wages and/or payment by separate transaction, through "service charges" or "agency fees" charged to Defendants' clients at double (20%) the statutory maximum charge permitted of 10% for an employment agency to charge a client pursuant to GBL § 185, along with associated liquidated damages.

32.     In so doing, Defendants required Plaintiff and similarly situated Major models to make payments by separate transaction that were not permitted by NYLL § 193, in violation of NYLL § 193.

33.     Defendants' modeling agreements do not explain the basis, purpose, use, or intended use of these payments by Plaintiff, and other similarly situated Major models, other than to state that the payment was "an additional inducement for [Major] to act on [their] behalf."

34.     Defendants never provided Plaintiff, or other similarly situated Major models, with the wage notice required by NYLL § 195(1).

35.     Defendants did not provide Plaintiff, or other similarly situated Major models, with a written wage statement for every payment of wages to them, as required by NYLL § 195(3).

36.     Defendants failed to provide written wage statements to Plaintiff, including with respect to payments to Plaintiff on or about May 11, 2017 and September 29, 2017.

37.     Defendants never provided Plaintiff, or similarly situated Major models, with wage statements that contained all of the information required by NYLL § 195(3), which statements were required to have, *inter alia*, all hours worked, the employer's address, and the employer's phone number.

38.     Defendants currently owe Plaintiff earned wages of, at least $29,200, for her provision of approximately 90 hours of modeling services to Defendants' fashion industry clients between November 1, 2016 and April 5, 2017.

39.     Upon information and belief, Defendants have received payment from their fashion industry clients for all or the majority of this (at least) $29,200 amount, and have therefore, substantially profited by failing to pay Plaintiff her earned wages.

40.     Specifically, in addition to their previously deducted 20% commission, Defendants have taken $29,200 of Plaintiff's earnings for her provision of modeling services, to which they are not entitled.

41.     Plaintiff worked for Defendants, and provided hundreds of hours of modeling services to Defendants' fashion industry clients, within the six years prior to the filing of the initial complaint in this action, for which she was not paid minimum wages by Defendants within the weekly or semi-monthly time-period required by the NYLL.  Plaintiff is entitled to liquidated damages in the amount of these late payments.

42.     Similarly situated Major models worked for Defendants, and provided modeling services to Defendants' fashion industry clients, within the six years prior to the filing of the initial complaint in this action, for which they were was not paid minimum wages by Defendants within the weekly or semi-monthly time-period required by the NYLL.  These models are entitled to liquidated damages in the amount of these late minimum wage payments.

## JURISDICTION AND VENUE

43.     The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and the FLSA, 29 U.S.C. § 216(b).

44.     The Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

45.     Plaintiff's state law NYLL and breach of fiduciary duty claims, are so closely related to Plaintiff's claims under the FLSA that they form part of the same case or controversy under Article III of the United States Constitution.

46.     The Court additionally has jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1332(d)(2).

47.     Upon information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

48.     There is a reasonable probability that the aggregate claims of the plaintiff class(es) are in excess of $5 million.

49.     Upon information and belief, during at least one year during the period 2012-2017, Major grossed at least ten million dollars in a single year.

50.     Upon information and belief, the majority of these earnings were derived from the "commission" deductions from its models' earnings from their provision of modeling services, and its additional deductions, by separate transaction, through additional "agency fee" or "service fee" charges to Defendants' clients.

51.     Upon information and belief, the class(es) consist of more than one hundred models.

52.     Plaintiff's damages, exclusive of interest, costs, and attorney's fees arising from her wage and hour claims exceed $195,000.

53.     Multiplying Plaintiff's claims across at least 100 class members yields class-wide aggregate damages, exclusive of interest, costs, and attorney's fees, exceeding $19.5 million

54.     Plaintiff's illegal deduction claim damages, exclusive of interest, costs, and attorney's

fees, exceed $100,000.

55.     Multiplying only Plaintiff's illegal deduction claims across at least 100 class members yields class-wide aggregate damages exceeding $10 million.

56.     Plaintiff is a citizen of a state different from that of each Defendant.

57.     Plaintiff is a citizen of Florida.

58.     Defendant Major Model Management Inc. is a citizen of New York.

59.     Upon information and belief, Defendant Dolci is a citizen of Italy.

60.     At least one member of the proposed class(es) are citizens of a state different from that of Defendants.

61.     During the three-year period preceding the filing of the instant lawsuit one or more class actions, inclusive of *Raske v. Major Model Management Inc.*, filed in New York County Supreme on July 16, 2018, have been filed asserting the same or similar factual allegations against Major on behalf of Plaintiff and similarly situated models.

62.     The Court additionally has jurisdiction over the Declaratory Judgment Act Claims pursuant to 28 U.S.C. §§ 2201-2202.

63.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202, 29 U.S.C. § 216, NYLL § 198(1-b), (1-d), and NYLL § 215.

64.     Defendants are subject to personal jurisdiction in New York.

65.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## PARTIES

**Plaintiff Jasmine Burgess**

66.     Plaintiff Jasmine Burgess is an adult individual who resides in the state of Florida.

67.     Plaintiff is a citizen of Florida.

68.     Plaintiff was employed and/or jointly employed as a model by Defendants, within the meaning of the FLSA and NYLL, from approximately May 29, 2012 to April 5, 2017.

69.     At all times relevant to the Complaint, Plaintiff was a covered employee within the meaning of the FLSA and the NYLL.

**Defendant Major Model Management Inc.**

70.     At all times relevant to the complaint, Defendant Major was a domestic business corporation with its principal place of business in New York, New York.

71.     At all times relevant to the complaint, Defendant Major was a citizen of New York.

72.     Major was founded by owner Dolci.

73.     Major has advertised itself as "one of the top ten worldwide modeling agencies handling men and women models."

74.     Major has advertised that "[t]he booking teams at Major Models are comprised of top industry professionals with a keen eye for beauty and attention to detail."

75.     Major has advertised that "[c]lient commitment to the agency is due largely to the efforts and creative contributions made by the bookers and their representation of models."

76.     At all times relevant to the complaint, the primary activity of Major was to book, or attempt to book, its models to provide modeling services to its fashion industry clients.

77.     At all times relevant to the complaint, Major purposefully directed its activities in interstate commerce and knew, or should have known, that its actions would have an impact upon New York residents.

78.     At all times relevant to the complaint, Major was an employer of Plaintiff and similarly situated Major models, within the meaning of the FLSA and NYLL.

79.     At all times relevant to the complaint, Major employed and/or jointly employed Plaintiff and similarly situated Major models, within the meaning of the FLSA and NYLL.

80.     At all times relevant to the complaint, Major misclassified Plaintiff and similarly situated

Major models as independent contractors with respect to the FLSA and NYLL.

81.     At all times relevant to the complaint, Major had the power to hire, fire, and/or constructively discharge Plaintiff and similarly situated Major models.

82.     At all times relevant to the complaint, Major had the power and/or potential power over the hiring, firing, and/or assignments of Plaintiff's bookers and other similarly situated Major models' bookers.

83.     At all times relevant to the complaint, Major had the power to unilaterally hire, fire, and/or reassign Plaintiff's bookers and other similarly situated Major models' bookers.

84.     Major has terminated bookers.

85.     Major has hired bookers.

86.     Major has unilaterally reassigned Plaintiff's bookers.

87.     Major hired Plaintiff on or about May 29, 2012.

88.     At all times relevant to the complaint, Major had the power to set Plaintiff's and similarly situated Major models' wages.

89.     At all times relevant to the complaint, Major exercised the power to set Plaintiff's and similarly situated Major models' wages by, *inter alia*, directly negotiating the rate for their modeling bookings with its fashion industry clients.

90.     At all times relevant to the complaint, Major had the power to withhold and/or delay payment of Plaintiff's and similarly situated Major models' wages.

91.     Major exercised the power to withhold and/or delay Plaintiff's and other similarly situated Major models' wages by, *inter alia*, not paying them all of their earned wages due and/or delaying payment even after receiving payment in full for their provision of modeling services.

92.     Major exercised the power to withhold and/or delay Plaintiff's and other similarly situated Major models' wages by failing and/or declining to advise them when, and/or accurately communicate with them about, Major's receipt of payment from its clients for their provision of

11

modeling services to its clients.

93.     At all times relevant to the complaint, Major controlled and/or had the potential power to control, Plaintiff's and similarly situated Major models' schedules and/or conditions of employment, including, but not limited to, by unilaterally misclassifying them as independent contractors and/or unilaterally labeling them as independent contractors, determining whether to offer them and/or promote them to any or all of their fashion industry clients, scheduling castings and go-sees, scheduling bookings, coordinating and controlling their modeling schedules, requiring them to be available to provide modeling services to its clients at least 300 days a year, requiring them to hold time reserved by its clients for tentatively scheduled modeling work, requiring them to book out of work or be assumed to be available for the provision of modeling services, directly negotiating their rate of pay and additional terms regarding their provision of modeling services to clients, prohibiting them from speaking directly with clients regarding the terms and conditions of their provision of modeling services work, requiring signature of an asserted power of attorney, and requiring compliance with additional policies, practices, and customs.

94.     At all times relevant to the complaint, Major controlled, or had the potential power to control, Plaintiff and similarly situated Major models' schedules, including, *inter alia*, the scheduling of go-sees, castings, and/or bookings, and/or whether Major stopped scheduling or attempting to book Plaintiff and/or other Major models.

95.     Upon information and belief, at all times relevant to the complaint, the work of Major's models was the primary source of Major's income.

96.     At all times relevant to the complaint, the primary operations of Major were to obtain, or attempt to obtain, bookings for its models to provide modeling services to its fashion industry clients.

97.     At all times relevant to the complaint, the booking work of Major was more than incidental to its operations.

98.    At all times relevant to the complaint, the primary operation of Major's business was the procurement or attempted procurement of employment or engagements for models.

99.    At all times relevant to the complaint, the primary operation of Major's business was the procurement or attempted procurement of employment or engagements for Major's models.

100.    At all times relevant to the complaint, the primary operation of Major's business did not only incidentally involve the seeking of employment and/or engagements.

101.    In the alternative, at all times relevant to the complaint, the primary business of Major was to render vocational guidance or counseling services for Major models.

102.    At all times relevant to the complaint, the primary business and/or business purpose of Major was to directly or indirectly: (1) procure or attempt to procure or represent that it could procure employment or engagements for Major models and/or potential Major models seeking employment or engagements; (2) represent that it had access, or had the capacity to gain access, to modeling jobs for Major models and/or potential Major models not otherwise available to other models; and/or (3) provide information and/or service purporting to promote, lead to, or result in, employment or engagements for Major models and/or potential Major models with other employers.

103.    At all times relevant to the complaint, Major employed bookers and/or model managers whose primary or sole duty was to obtain castings, go-sees, and/or bookings for Plaintiff, and similarly situated Major models, in order for Major models to provide modeling services to Major's fashion industry clients.

104.    At all times relevant the complaint, Major was an "employment agency" within the meaning of GBL § 171(2).

105.    Major operated as an unlicensed employment agency from at least April 3, 2014 through at least January 1, 2020.

106.    Major's operation as an employment agency, from at least April 3, 2014 through at least January 1, 2020, was in violation of GBL § 172

13

107.    All modeling services provided by Plaintiff and other similarly situated Major models to Major's fashion industry clients, from at least April 3, 2014 through at least January 1, 2020, were provided during a time-period that Major did not have an employment agency license pursuant to GBL § 172.

108.    Major applied deductions from wages to Plaintiff's and similarly situated Major models' earnings that exceeded the 10% amount permitted for employment agencies by GBL § 185.

109.    At all times relevant to the complaint, the business of Major did not only incidentally involve the seeking of modeling work for its models.

110.    At all times relevant to the complaint, the business of Major was seeking or was primarily seeking modeling work for its models.

111.    At all times relevant to the complaint, Major exercised formal and/or operational control over Plaintiff.

112.    At all times relevant to the complaint, Major possessed the power to control Plaintiff.

**Defendant Owner Guido Dolci**

113.    Upon information and belief, at all times relevant to the complaint, Defendant Dolci was the founder, owner, and President of Major.

114.    Upon information and belief, at all times relevant to the complaint, Dolci controlled Major.

115.    At all times relevant to the complaint, Dolci was an employer within the meaning of the FLSA and the NYLL.

116.    At all times relevant to the complaint, Dolci employed and/or jointly employed Plaintiff and similarly situated Major models.

117.    At all times relevant to the complaint, Dolci purposefully directed his activities in interstate commerce and knew, or should have known, that his actions would have an impact upon New York residents.

14

118.    At all times relevant to the complaint, Dolci misclassified Plaintiff, and similarly situated Major models, as independent contractors with respect to the FLSA and NYLL wage and hour provisions.

119.    Upon information and belief, at all times relevant to the complaint, Dolci had ultimate decision-making authority over practices, policies, and/or procedures at Major, including concerning the terms and conditions of Major models' provision of modeling services.

120.    At all times relevant to the complaint, Dolci had the power and/or the potential power, over decisions at Major, including with respect to Plaintiff and other similarly situated Major models.

121.    At all times relevant to the complaint, Dolci had power and/or potential power, over decisions at Major, including with respect the hiring, firing, and the assignments of Plaintiff's bookers and other similarly situated Major models' bookers at Major.

122.    At all times relevant to the complaint, Dolci possessed the power to control Plaintiff and other similarly situated Major models.

123.    At all times relevant to the complaint, Dolci had the power, and/or potential power, to hire, fire, and/or constructively discharge Plaintiff and other similarly situated Major models.

124.    At all times relevant to the complaint, Dolci had the power to set, and/or exercised the power to set, Plaintiff's and other similarly situated Major models' wages, *inter alia*, through his misclassification of them as an independent contractor under the FLSA and NYLL, imposition of an illegal model deduction of 20% of their earnings, and imposition of an illegal additional 20% "service charge" or "agency charge" to Defendants' fashion industry clients for Major models' provision of modeling services.

125.    At all times relevant to the complaint, Dolci had the power to, and/or exercised the power to, withhold and/or delay payment of Plaintiff's and other similarly situated Major models' wages.

126.    Upon information and belief, at all times relevant to the complaint, Dolici had the power to and/or exercised the power to make deductions from Plaintiff's and other similarly situated Major

models' wages.

127.   Upon information and belief, at all times relevant to the complaint, Dolci controlled, or had the potential power to control, Plaintiff and other similarly situated Major models' schedules, including, *inter alia*, the scheduling of go-sees, castings, and/or bookings, and/or whether Defendants stopped scheduling or attempting to book Plaintiff and other similarly situated Major models.

128.   Upon information and belief, at all times relevant to the complaint, Dolci had overall financial control of Major.

129.   Upon information and belief, at all times relevant to the complaint, Dolci had the power to make ultimate decisions as to how Major was run.

130.   Upon information and belief, at all times relevant to the complaint, Dolci could have dissolved and/or ceased the operations of Major if he decided the company should not remain in business.

131.   Upon information and belief, at all times relevant, Dolci was involved in and/or consulted regarding new changes to the company's policies, practices, and/or procedures regarding Major's models.

132.   Dolci was involved in and/or consulted regarding the general of running the business practices of Major.

133.   Dolci was involved in and/or consulted regarding invoicing and the keeping of Major's books.

134.   Dolci was involved in and/or consulted regarding changes to Major's modeling contract.

135.   Dolci was involved in and/or consulted regarding Major's policy changes.

136.   Dolci was involved in and/or consulted regarding Major's policy or policies regarding usages.

137.   Dolci was involved in and/or consulted regarding Major's policy or practices regarding recordkeeping.

138.   Dolci hired Major's current Vice President Nadia Shahrik.

139.   Upon information and belief, at all times relevant to the complaint, Dolci had operational control over Major.

140.   Upon information and belief, at all times relevant to the complaint, Dolci controlled and/or had ultimate control over all aspects of Major's operations and business.

141.   At all times relevant to the complaint, Dolci exercised formal and/or operational control over Plaintiff.

## FACTUAL ALLEGATIONS

142.   On or about May 29, 2012, Plaintiff signed Major's modeling agreement attached hereto as **Exhibit A**.

143.   The document required Plaintiff to:

 a.   "be available, ready, willing and able to render services as a fashion model in New York City or at such other location as may be reasonably requested from time to time . . . at least three hundred (300) full working days" a year;

 b.   "advise [the agency] . . . in advance of any days during which . . . [she] w[ould] be unavailable to perform [modeling] [s]ervices";

 c.   give Major "the exclusive right to refer . . . [her] . . . or place . . . [her] with other agencies in location[s] where . . . [Major] d[id] not maintain an office";

 d.   "maintain [her] weight";

 e.   "not materially change [her] appearance";

 f.   "conduct . . . [herself] in a courteous and professional manner';

 g.   "appear at all modeling and other professional engagements on a timely basis";

 h.   "refrain from taking any actions which w[ould] reflect adversely on . . . [Major] or . . . [her] career";

 i.   "refrain from . . . excessively using alcohol";

 j.   "remit [any] . . . compensation" she "received directly from a client to . . . [the agency] within seven (7) days of . . . [her] receipt thereof";

k.      agree that Major was "entitled to receive as . . . compensation . . . twenty percent (20%) of all gross income or other . . . consideration (including composition, salaries, earnings, fees royalties, residuals, proceeds, bonuses, prizes, awards, goods, in-kind services, and contest monies)";

l.      agree that Major was "entitled to receive a service charge or agency fee from some, and/or all of the clients who may utilize . . . [her modeling s]ervices";

m.      agree that if she missed "a booking (other than for extreme emergencies- which proof may be required) . . . [she] w[ould] be required to pay to the agency the lost model and client commission" -- *i.e.,* half of the amount that she would have received from the booking after Major's model commission deduction; and

n.      agree to "advise [Major] in advance of any days during which [she] w[ould] be unavailable to perform" modeling services

144.    The document further stated that Plaintiff was required to be classified as independent contractor.

145.    The document further stated that Major would be Plaintiff's "sole and exclusive personal manager in New York."

146.    The document also asserted a power of attorney -- which did not include language stating that it was coupled with an interest -- stating Major was "hereby authorized and empowered, as [Plaintiff's] sole and exclusive personal Manager, to act for [her], and on [her] behalf" with respect to "(i) approving [Plaintiff] and permitting the copyright, license, use and publication of [her] name, photograph, likeness and voice in connection with [her] Services; (ii) signing bills of sale and photographic and other releases for [her] in connection with the foregoing; (iii) collecting and receiving sums paid to [her] in connection with [her] Services; (iv) endorsing [her] name upon and depositing into accounts or cashing any and all checks payable to [her] in connection with [her] Services; (v) deducting from such deposits all sums owing to [Major] . . . .; and (vi) enforcing and protecting [her] rights with respect to parties with whom [she] . . . had . . . contractual dealings . . . in such manner as [Major] deem[ed] appropriate by, among other means, demanding, suing for collecting, recovering, and receiving, on [her] behalf, all money, interest and other times due [her] or belonging to [her].

147.    In addition, to the extent that it was a valid power of attorney, as set forth in New York

General Obligations Law § 5-1505, and/or or pursuant to the common law, the power of attorney and/or attorney-in-fact status (if valid) created a distinct fiduciary relationship with Plaintiff and other similarly situated Major models.

148.    Upon information and belief, the modeling agreements signed by similarly situated Major models contained the same or substantially similar terms as the modeling agreement Plaintiff signed.

149.    At all times relevant to the complaint, Defendants coordinated the scheduling of Plaintiff's and other similarly situated Major models' work with their fashion industry clients.

150.    At all times relevant to the complaint, Defendants maintained Plaintiff's and other similarly situated Major models' master modeling schedules.

151.    At all times relevant to the complaint, Plaintiff rarely turned down a booking offered to her by Major.

152.    At all times relevant to the complaint, Plaintiff and other similarly situated Major models, were required to affirmatively opt-out of being assumed by Major to be available for work.

153.    At all times relevant to the complaint, Plaintiff and other similarly situated Major models, were assumed to be available for modeling work unless they "booked out" by requesting vacation from Major.

154.    At all times relevant to the complaint, Plaintiff typically only booked out of work approximately a few weeks each calendar year.

155.    At all times relevant to the complaint, Plaintiff typically communicated with Major's booker(s) each day, or every couple of days, regarding go-sees, castings, and bookings.

156.    At all times relevant to the complaint, Defendants coordinated Plaintiff's and other similarly situated Major models' schedules regarding modeling work.

157.    At all times relevant to the complaint, Defendants' commission deductions of Plaintiff's and other similarly situated Major models wages above the 10% permitted by GBL § 185, were not for the benefit of Plaintiff or other similarly situated Major models.

158.     At all times relevant to the complaint, Defendants imposed numerous rules, policies,

practices, procedures, and/or requirements on Plaintiff, and other similarly situated Major models,

including, but not limited to: (1) discouraging them from discussing their compensation or other terms

and conditions of employment with Major's fashion industry clients; (2) requiring them to be available

to them for fashion modeling 300 days a year; (3) requiring them not to cancel bookings and/or face

substantial financial penalties if they cancelled a booking including payment of the amount of their

booking to Major; (4) requiring them to call and request a book out if they could not be available for

work for any reason; (5) requiring Major to directly negotiate their rate of pay and terms of condition

with fashion industry clients; (6) prohibiting or discouraging them from discussing their rate of pay and

other terms and conditions of employment with fashion industry clients; (7) requiring them to maintain

their weight; (8) requiring them to not materially change their appearance; (9) requiring them to conduct

themselves in a courteous and professional manner; (10) requiring them to appear at all modeling and

other professional engagements on a timely basis; (11) requiring them to refrain from taking any actions

which would reflect adversely on Major or their career; (12) requiring them to refrain from excessively

using alcohol; (13) requiring them to remit any compensation they received directly from a client to

Major within seven days of their receipt thereof; (14) requiring them to agree that Major was entitled to

receive as compensation twenty percent (20%) of all gross income or other consideration (including

composition, salaries, earnings, fees royalties, residuals, proceeds, bonuses, prizes, awards, goods, in-

kind services, and contest monies); (15) requiring them to agree that Major was entitled to receive a

service charge or agency fee from some and/or all of the clients who utilized their modeling services;

(16) requiring them to use only Major's comp cards and portfolio documents that did not include their

personal contact information; (17) having their profile on the Major website not include their personal

contact information; (18) discouraging and/or prohibiting them from utilizing personal business cards;

(19) requiring coordination of their modeling work schedule by Major; (20) requiring Major to control

their direct contact with clients concerning the terms and conditions of their work and/or their provision

of modeling services; (21) requiring their frequent communications with Major bookers regarding scheduling and/or concerning go-sees, castings, and bookings; and (22) requiring their classification as independent contractors.

159.    Defendants also imposed an exclusive modeling agreement on Plaintiff and other similarly situated former Major models.

160.    At all times relevant to the complaint, Defendants had the power to fire and/or constructively discharge Plaintiff and other similarly situated Major models.

161.    At all times relevant to the complaint, Defendants had the power to fire, hire, constructively discharge, and/or reassign its bookers, including Plaintiff's booker.

162.    At all times relevant to the complaint, Defendants, including with respect to Plaintiff and other similarly situated Major models, controlled which Major models' information to send to a particular client, for which Major models it would attempt to obtain castings, go-sees, and/or bookings, and/or the amount of effort it would utilize to attempt to obtain castings, go-sees, and/or bookings for a Major model.

163.    At all times relevant to the complaint, Defendants, including with respect to Plaintiff and other similarly situated Major models, controlled which Major models it offered and/or promoted to fashion industry clients for castings and go-sees, and/or the amount of effort it exerted to do so.

164.    At all times relevant to the complaint, Defendants scheduled and/or coordinated Plaintiff and other similarly situated former Major models' work schedules through Defendants' bookers.

165.    At all times relevant to the complaint, Plaintiff's booker typically communicated with her regarding her schedule of go-sees, castings, and/or bookings at least approximately once a day or several days.

166.    At all times relevant to the complaint, with respect to the payments Defendants did make (as opposed to those it withheld), Defendants directly paid Plaintiff and other similarly situated former Major models the wages that Defendants received from their fashion industry clients for their provision

of modeling services.

167.    At all times relevant to the complaint, Plaintiff did not receive any direct payments from Major's fashion industry clients for her provision of modeling services.

168.    At all times relevant to the complaint, Major's fashion industry clients directly paid Major, not Plaintiff, for Plaintiff's provision of modeling services to them.

169.    At all times relevant to the complaint, Defendants set the method of payment for Plaintiff and other similarly situated Major models, including by setting such method of payment as via direct deposit or via payment by check, which payment method Major set unilaterally and/or could set unilaterally.

170.    At all times relevant to the complaint, Defendants set the rate of pay for Plaintiff, and other similarly situated Major models, by directly negotiating their rate of pay with clients.

171.    At all times relevant to the complaint, Defendants set the rate of pay for Plaintiff, and other similarly situated Major models, by illegally imposing a 20% deduction on their earned wages as a "model commission," which deduction was twice the 10% limit permitted to be charged by an employment agency pursuant to GBL § 185.

172.    Half of this commission deduction of 20% was an illegal deduction in violation of NYLL § 193, as it was double the 10% fee authorized by GBL § 185.

173.    For every eighty dollars that Plaintiff, and other similarly situated Major models, actually received in payment for their provision of modeling services to Defendants' clients, Defendants typically received a $20 model commission and an additional $20 agency fee.

174.    Defendants typically received one dollar, for every two dollars, that Plaintiff and other similarly situated Major models actually received for their provision of modeling services to Defendants' fashion industry clients.

175.    At all times relevant to the complaint, Defendants set and/or limited the rate of pay for Plaintiff, and other similarly situated Major models, by charging its clients an additional 20% "agency

22

fee" or "service fee", which was twice the 10% limit permitted to be charged to Defendant's clients pursuant to GBL § 185.

176.    For example, if Defendants disclosed to Plaintiff, or similarly situated Major models, that they would be paid $100 for their provision of modeling services to Defendants' client, in addition to Major taking an illegal 20% "commission" deduction from this $100 amount, Defendants would typically additionally bill their client an additional $20 (*i.e.,* 20% of the $100 disclosed job amount) as a "agency fee" or "service fee."

177.    Half of this "agency fee" or "service fee" of 20% of the disclosed job amount was an illegal deduction in violation of NYLL § 193, because it was double the 10% fee authorized to be charged by Major to its fashion industry clients pursuant to GBL § 185.

178.    The "agency fees" or "service fees" paid to Defendants by their clients for Plaintiff and other similarly situated Major models' provision of modeling services, was a required payment, by Plaintiff and similarly situated Major model, to Defendants, by a separate transaction, that was prohibited by NYLL § 193.

179.    At all times relevant to the complaint, Defendants also determined the rate and/or method of payment of Plaintiff, and other similarly situated Major models, by unilaterally classifying them as independent contractors under the FLSA and NYLL.

180.    At all times relevant to the complaint, Defendants directly invoiced their fashion industry clients for Plaintiff's, and other similarly situated Major models', provision of modeling services.

181.    At all times relevant to the complaint, Plaintiff and other similarly situated Major models, did not have a significant opportunity for profit or loss from their provision of modeling services to Defendants' fashion industry clients.

182.    Upon information and belief, at all times relevant to the complaint, Defendants made large capital investments in their business.

183.    At all times relevant to the complaint, Plaintiff and other similarly situated Major models,

were more akin to wage earners, toiling for a living, than independent entrepreneurs seeking a return on capital investments.

184.    Plaintiff's, and upon information and belief other similarly situated Major Models', only initial required costs to become a Major Model were: (1) photographs (which cost Plaintiff approximately $200); (2) a portfolio book (which cost Plaintiff approximately $38); and (3) Major's composite cards containing their pictures and measurements -- but only Major's contact information -- (which cost Plaintiff approximately $400).

185.    Plaintiff's, and upon information and belief other similarly situated Major Models', other primary required costs were an annual website fee of approximately $450 -- initially advanced to them by Major -- and the cost of additional composite cards.

186.    Notwithstanding the mandatory website fee, Plaintiff, and upon information and belief other similarly situated Major models, had no final control over which of their photos were used for their model profile on Major's website.

187.    At all times relevant to the complaint, Plaintiff's and other similarly situated Major models' employment prospects and earnings, were controlled largely by Defendants' decisions concerning which models to promote to which fashion industry clients, and which models to offer to which client for a go-see and/or casting, and were not based on Plaintiff's and other similarly situated Major models' own initiative.

188.    At all times relevant to the complaint, Plaintiff's and other similarly situated Major models' employment prospects and earnings were primarily determined by the skill and initiative of their booker in: (1) placing and/or booking them with Defendants' fashion industry clients; and (2) negotiating their rate and additional terms and conditions of their provision of modeling services to Defendants' fashion industry clients.

189.    At all times relevant to the complaint, Plaintiff, and other similarly situated Major models, did not use helpers for their provision of modeling services to Defendants' fashion industry

clients.

190.    At all times relevant to the complaint, Plaintiff, and upon information and belief other similarly situated Major models, could not unilaterally assign or utilize a substitute model for their provision of modeling services to Defendants' fashion industry clients.

191.    At all times relevant to the complaint, Defendants controlled the advertising for Plaintiff's, and other similarly situated Major models', provision of modeling services.

192.    At all times relevant to the complaint, if Defendants decided not to provide Plaintiff's and other similarly situated Major models' information to their fashion industry clients, and/or removed them from Defendants' website, that decision exerted substantial, if not total, control over whether Plaintiff and other similarly situated Major models would attend castings or go-sees with fashion industry clients, and/or the volume of castings and/or go-sees they received.

193.    At all times relevant to the complaint, Major's models were an integral part of its business.

194.    Upon information and belief, at all times relevant to the complaint, the majority of Major's revenues were obtained through the payment by its fashion industry clients relating to its models' provision of modeling services.

195.    Upon information and belief, at all times relevant to the complaint, Major has obtained the majority of its revenue through "commissions," "agency fees," and/or "service fees" concerning payments by its fashion industry clients for its models' provision of modeling services.

196.    At all times relevant to the complaint, Defendants imposed appearance and figure standards on Plaintiff and other similarly situated Major models.

197.    At all times relevant to the complaint, Major's modeling agreement(s) gave it the option to terminating its modeling agreement with Plaintiff and other similarly situated Major models if they became "disfigured."

198.    At all times relevant to the complaint, Plaintiff and other similarly situated Major models,

were expected not to not materially change their appearance without permission from Defendants.

199.    At all times relevant to the complaint, Defendants' modeling agreement(s) asserted the right to terminate its modeling agreement with Plaintiff, and other similarly situated Major models, by delivering ninety days written notice asserting that they had failed to perform any of the terms and conditions of Defendants' modeling agreement(s), if such asserted default was not cured within such ninety days.

200.    At all times relevant to the complaint, Defendants have maintained employment records concerning Plaintiff, and other similarly situated Major models, regarding their provision of modeling services.

201.    At all or most times relevant to the complaint, Defendants required Plaintiff, and other similarly situated Major models, to use a Major's composite cards and/or portfolios when attending go-sees, castings, and bookings.

202.    At all times relevant to the complaint, Defendants have prohibited and/or discouraged Plaintiff and other similarly situated Major models' from using any composite cards other than Major's composite card, and/or otherwise prohibited and/or discouraged the use of business cards regarding their provision of modeling services.

203.    At all times relevant to the complaint, Defendants have controlled and/or supervised Plaintiff, and other similarly situated Major models' work, through the implementation and enforcement of formal and informal policies.

204.    Under the FLSA and the NYLL more than one employer may be responsible for the failure to pay wages.

205.    At all times relevant to the complaint, Defendants possessed the power to control Plaintiff and other similarly situated Major models.

206.    At all times relevant to the complaint, Defendants had the power to fire and hire Plaintiff and other similarly situated Major models.

207.     At all times relevant to the complaint, Defendants supervised and controlled the schedules and conditions of employment for Plaintiff and other similarly situated Major models.

208.     At all times relevant to the complaint, Defendants determined the rate of payment for Plaintiff's and other similarly situated Major models' provision of modeling services to Defendants' fashion industry clients.

209.     At all times relevant to the complaint, Defendants determined the method of payment for Plaintiff's and other similarly situated Major models' provision of modeling services to Defendants' fashion industry clients.

210.     At all times relevant to the complaint, Defendants maintained extensive employment records regarding Plaintiff's and other similarly situated Major models' provision of modeling services to Defendants' fashion industry clients.

211.     At all times relevant to the complaint, Defendants established and applied minimum eligibility criteria, including appearance criteria, for hiring Major models, including with respect to Plaintiff and other similarly situated Major models.

212.     At all times relevant to the complaint, Defendants had the power to hire, fire, and/or reassign all Major staff, including Plaintiff's and other similarly situated Major models' bookers and/or model managers, which reassignments would affect Plaintiff and other similarly situated Major models' conditions of employment by, *inter alia*, determining their assigned booker's and/or model manager's skill at obtaining go-sees, castings, and booking, and with respect to negotiating their rates and terms and conditions of employment for their provision of modeling services to Defendants' clients.

213.     At all times relevant to the complaint, Major was, upon information and belief, a successful business, because of the skill and initiative of its bookers and/or model managers at booking Major models for modeling work.

214.     Plaintiff and other similarly situated Major models did not work at their own convenience and/or were not free to engage in other employment without restrictions, penalties, potential penalties,

and/or interference from Major.

215.   At all times relevant to the complaint, Plaintiff and other similarly situated Major models, were required by Defendants to be available for modeling work for Defendants' clients three hundred (300) full working days per year.

216.   At all times relevant to the complaint, Plaintiff, and upon information and belief other similarly situated Major models, did not receive direct payment for their provision of modeling services from Defendants' fashion industry clients.

217.   At all times relevant to the complaint, Plaintiff and other similarly situated Major models, did not provide modeling services as Major models, without Major taking approximately one third of the client's payments relating to these modeling services.

218.   At all times relevant to the complaint, Plaintiff and upon information and belief, other similarly situated Major models, did not independently negotiate their pay rate for their provision of modeling services to Defendants' fashion industry clients.

219.   At all times relevant to the complaint, Plaintiff and other similarly situated Major models, could not accept or reject work offered by Major models without suffering financial or other penalties and/or risking financial or other penalties from Defendants.

220.   At all times relevant to the complaint, Defendants coordinated scheduling for Plaintiff's, and upon information and belief, other similarly situated Major models' modeling work with Defendants' fashion industry clients.

221.   At all times relevant to the complaint, Defendants maintained Plaintiff's, and upon information and belief, other similarly situated Major models' master modeling schedules.

222.   At all times relevant to the complaint, Defendants informed Plaintiff, and upon information and belief, other similarly situated Major models, of their finalized modeling schedule.

223.   At all times relevant to the complaint, Defendants required that Plaintiff, and upon information and belief, other similarly situated Major models, notify them of all modeling and/or

28

potential modeling work in New York.

224.    Defendants exercised substantial control over Plaintiff and the Major Wage Class with respect to the results produced and/or the means used to provide modeling services to Defendants' clients.

225.    Defendants provided Plaintiff and the Major Wage Class with fringe benefits in the form of the initial financing of Defendants' website fee and the availability of potential lending of advances and/or the provision of advances on their earnings.

226.    At all times relevant to the complaint, Defendants notified Plaintiff, and upon information and belief, other similarly situated Major models, of changes and modifications of their modeling schedule.

227.    At all times relevant to the complaint, only Defendants had direct negotiations with fashion industry clients regarding the amount they would pay for Plaintiff's, and upon information and belief, other similarly situated Major models' provision of modeling services.

228.    At all times relevant to the complaint, Defendants actively discouraged Plaintiff, and upon information and belief, other similarly situated Major models, from discussing compensation with Defendants' clients to whom they were providing modeling services.

229.    At all times relevant to the complaint, Plaintiff and other similarly situated Major models were on Defendants' weekly payroll and/or were on Defendants' payroll to the extent possible given their misclassification as independent contractors by Defendants.

230.    At all times relevant to the complaint, upon information and belief, the delays in payment of minimum wages and/or model earnings received by Defendants from their clients for Plaintiff's and other similarly situated Major models' provision of modeling services, were intentional and increased Defendants' profits through, *inter alia*, additional accrued interest to Defendants (*i.e.* "the float").

231.    At all times relevant to the complaint, upon information and belief, Defendants' delays in payment of minimum wages and/or model earnings received by Defendants, for Plaintiff's and other

similarly situated Major models' provision of modeling services to Defendants' clients, financially benefited Defendants and were to the detriment of Plaintiff and other similarly situated Major models.

232.    At all times relevant to the complaint, upon information and belief, Defendants' non-payment of earned wages to Plaintiff and other similarly situated Major models were intentional, and financially benefited Defendants, by permitting Defendants to obtain payment for the full value of the compensation paid for models' provision of modeling services to fashion industry clients, instead of receiving only approximately one third of the payments for their modeling services through Defendants' "commissions," "agency fees," and "service fees."

233.    At all times relevant to the complaint, there was no reasonable business justification for Defendants' substantial delays in paying wages and/or for their non-payment of wages to Plaintiff and other similarly situated Major models.

234.    At all times relevant to the complaint, Defendants' deductions from Plaintiff's wages and similarly situated Major Models' wages over the 10% permitted by GBL § 185, were not made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency.

235.    At all times relevant to the complaint, Defendants' required payments by Plaintiff and similarly situated Major Models by separate transactions through additional "agency fees" and "service fees" charged to Defendants' clients, which were over the 10% permitted by GBL § 185, were not made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency.

236.    At all times relevant to the complaint, Defendants' deductions of commissions from Plaintiff's and other similarly situated Major models' wages were not for their benefit.

237.    At all times relevant to the complaint, Defendants' required payments by Plaintiff and similarly situated Major Models by separate transaction, through additional "agency fees" and "service fees" charged to Defendants' clients, were not for Plaintiff's and similarly situated Major models' benefit.

238.     At all times relevant to the complaint, Defendants' deductions of commissions from Plaintiff's and other similarly situated Major models' wages were used for the purpose of paying Defendants' administrative and other costs.

239.     At all times relevant to the complaint, Defendants' required payments by Plaintiff and similarly situated Major Models by separate transaction were used for the purpose of paying Defendants' administrative and other costs.

240.     Defendants failed to comply with of NYLL § 195(1) by failing to provide Plaintiff, and similarly situated Major models, with the wage rate statement required by NYLL § 195(1) and/or its supporting regulations and/or guidance.

241.     Defendants failed to comply with the payment notice requirements of NYLL § 195(3), by failing to provide Plaintiff, and similarly situated Major models, with a statement, along with each payment of wages, including the amount of hours worked, the address of the employer, and/or the phone number of the employer.

242.     Upon information and belief, at all times relevant to the complaint, Defendants failed to make, keep, and preserve complete and/or accurate records with respect to all of Plaintiff's hours, and other similarly situated Major model's hours, spent providing modeling services to Defendants' fashion industry clients, including with respect to model bookings, resulting in incomplete records of all hours worked each workday and all hours worked each workweek, as required by 29 U.S.C. § 211, and supporting federal regulations.

243.     Upon information and belief, at all times relevant to the complaint, Defendants failed to make, keep, and preserve accurate and/or complete records with respect to Plaintiff's hours, and other similarly situated Major models' hours, spent providing modeling services Defendants' fashion industry clients, including with respect to model bookings, resulting in incomplete records of all hours worked each workday and all hours worked each workweek, as required by NYLL § 650 *et seq*., and supporting regulations.

244.    Defendants repeatedly misrepresented to Plaintiff, and upon information and belief, other similarly situated Major models, that they had not received payment from their clients for Plaintiff's and other similarly situated Major models', provision of modeling services for Defendants' clients.

245.    Defendants misrepresented to Plaintiff that they no longer had the funds to pay her, when Defendants had in fact received such funds, from their clients, for Plaintiff's provision of modeling services and/or otherwise had the funds to pay Plaintiff.

246.    Upon information and belief, at all times relevant to the Complaint, Major was an enterprise whose gross volume of sales made or business done has been more than $500,000, pursuant to and/or withing the meaning of 29 U.S.C. § 203.

247.    As described in further detail below, on February 9, 2021, Major filed a retaliatory lawsuit against Plaintiff's current modeling agency and current modeling agency booker.

248.    As described in further detail below, Major amended its retaliatory lawsuit and added a specific reference to Plaintiff on March 3, 2021.

## COLLECTIVE ACTION ALLEGATIONS

249.    Plaintiff brings the First Cause of Action on behalf of herself, in her individual capacity, as well as on behalf of the following collective: an opt-in collective pursuant to 29 U.S.C. § 216(b) of all persons who had signed a modeling contract and/or personal management agreement with Major (and/or its predecessors), and at any time between three years prior to opting into the instant action and January 1, 2020, provided modeling services as a Major model and/or in association with Major (the "Major Collective").

250.    Plaintiff and the Major Collective claim that Defendants (and/or their predecessors) had a policy and/or practice of misclassifying them as independent contractors who were not covered by the FLSA, and that as a consequence of this misclassification: (1) Defendants are liable for payment of minimum wages as required by the FLSA, as well as associated liquidated damages; and (2) Defendants are liable for the failure to pay minimum wages promptly, as required by the FLSA, inclusive of

liquidated damages for all minimum wages that Defendants eventually paid but that were not paid promptly as required by the FLSA.

251.    Plaintiff and the Major Collective further allege that Defendants have had and/or have a policy or practice of failing to pay Plaintiff and the Major Collective their minimum wages and/or not paying minimum wages promptly as required by the FLSA, inclusive of a policy or practice of not paying wages and/or minimum wages for more than a month after the wages were earned by the provision of modeling services.

252.    The Major Collective consists of many similarly situated individuals to whom Defendants have not paid the federal minimum wage, or to whom they have not paid minimum wages promptly, within the meaning of the FLSA, and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.

253.    Plaintiff and the Major Collective were all subject to Major's policies, practices, practices, customs, and/or procedures concerning their compensation and provision of modeling services.

254.    Major had a policy, practice, custom, and/or procedure of failing to pay Plaintiff and the Major Collective minimum wages as required by the FLSA and/or prompt payment of minimum wages as required by the FLSA.

255.    These similarly situated collective members are known to Defendants, are readily identifiable, and can be located through Defendants' records.

256.    Notice should be sent to the members of the Major Collective pursuant to 29 U.S.C § 216(b).

## **CLASS ACTION ALLEGATIONS**

257.    Plaintiff brings the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure.

258.    Plaintiff brings the Second, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action

against Defendants Major and Dolci, pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4), on behalf of a class of all persons who signed a modeling contract and/or personal management agreement with Major (and/or its predecessors) and, at any time between April 3, 2014 and January 1, 2020, provided modeling services as a Major model and/or in association with Major (the "Major Wage Class").

259.   Plaintiff brings the Eighth Cause of Action against Major pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4) on behalf of a class of all persons who signed a modeling contract and/or personal management agreement with Major (and/or its predecessors) and, at any time between April 3, 2014 and January 1, 2020, provided modeling services as a Major model and/or in association with Major (the "Major Fiduciary Equitable Class").

260.   Plaintiff brings the Ninth Cause of Action against Major pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4) on behalf of a class of all persons who signed a modeling contract and/or personal management agreement with Major (and/or its predecessors) and, at any time between April 3, 2017 and January 1, 2020, provided modeling services as a Major model and/or in association with Major (the "Major Fiduciary Legal Class").

261.   Plaintiff brings the Tenth Cause of Action against Major pursuant to Fed. R. Civ. P. 23(a), (b)(2), (c)(4) on behalf of a class of all persons who signed a modeling contract and/or personal management agreement with Major (and/or its predecessors) and, at any time between April 3, 2014 and January 1, 2020, provided modeling services as a Major model and/or in association with Major (the "Major DJA Class").

262.   Excluded from the Major Wage Class, Major Fiduciary Equitable Class, Major Fiduciary Legal Class, and Major DJA Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or at any time during the class period(s), or now has, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judge's immediate family; all current or former Major models, other than Plaintiff, with individual

claims against Defendant(s) filed in state or federal court prior to the filing of this amended complaint; and all persons who will submit timely and otherwise proper requests for exclusion from the class(es).

263.    Plaintiff is a member of the Major Wage Class, Major Fiduciary Equitable Class, Major Fiduciary Legal Class, and Major DJA Class class(es) she seeks to represent.

264.    The members of the Major Wage Class, Major Fiduciary Equitable Class, Major Fiduciary Legal Class, and Major DJA Class class(es) identified herein are so numerous that joinder of all members is impracticable.

265.    Although Plaintiff does not know precisely how many Major models are in the Major Wage Class, Major Fiduciary Equitable Class, Major Fiduciary Legal Class, and Major DJA Class class(es), upon information and belief, their number is far greater than can be feasibly addressed through joinder.

266.    There are questions of law and fact common to the Major Wage Class, which questions also predominate over any questions affecting only individual members, including but not limited to: (1) whether Major is an employer and/or joint employer within the meaning of the NYLL; (2) whether Defendant Guido Dolci is an individual employer and/or joint employer within the meaning of the NYLL and/or had operational control over Major; (3) whether Plaintiff and Major Wage Class were employees within the meaning of the NYLL; (4) whether Plaintiff and the Major Wage Class were "manual workers" or "clerical or other workers" within the meaning of NYLL § 191; (5) whether Defendants had a policy or practice of misclassifying Plaintiff and the Major Wage Class as independent contractors; (6) whether Defendants had a policy or practice of not paying Plaintiff and the Major Wage Class their minimum wages as required by the NYLL; (7) whether Defendants had a policy or practice of not paying Plaintiff and the Major Wage Class their minimum wages within the time-period required by the NYLL; (8) the time-period required by the NYLL for payment of minimum wages to Plaintiff and the Major Wage Class; (9) the time-period required for payment of Plaintiff and the Major Wage Class of their earned wages as required by NYLL § 191; (10) whether Defendants had a policy or

practice of deducting a 20% commission from Plaintiff and the Major Wage Class's wages; (11) whether Defendants had a policy or practice of charging an additional 20% "service charges" or "agency fees," to their clients in connection with Plaintiff and the Major Wage Class's provision of modeling services; (12) whether Defendants' deductions of commissions above the 10% amount permitted by GBL § 185 were violations of NYLL § 193; (13) whether Defendants' "service charges" or "agency fees," charged to its fashion industry clients, above the 10% amount permitted by GBL § 185, were required payments by separate transaction by Plaintiff and the Major Wage Class to Defendants, in violation of NYLL § 193; (14) whether Defendants had a policy or practice of failing to provide the wage rate notices required by NYLL § 195(1) to Plaintiff and the Major Wage Class as; (15) whether Defendants had a policy or practice of failing to provide Plaintiff and the Major Wage Class the wage statement notices, fully accurate wage statement notices, and/or fully compliant wage statement notices, as required by NYLL § 195(3); (16) whether Defendants are liable to the Major Wage Class for violation of the NYLL with respect to the failure to pay minimum wages and/or pay minimum wages within the time-period required by the NYLL; (17) whether Defendants are liable to the Major Wage Class for violation of the NYLL with respect to illegal deductions; (18) whether Defendants are liable to the Major Wage Class for violation of the NYLL with respect to failure to pay all earned wages earned; (19) whether Defendants are liable to the Major Wage Class for violation of the NYLL with respect to a failure to pay earned wages eventually paid within the time-period required by the NYLL; (20) whether Defendants are liable to the Major Wage Class for failure to provide and/or provide accurate wage rate statements; (21) whether Defendants are liable to the Major Wage Class for failure to provide and/or provide accurate wage statements; (22) the amount of minimum wages due to the Major Wage Class (23) the amount of earned wages due to the Major Wage Class; (24) the amount of illegal deductions due to the Major Wage Class; (25) the amount of liquidated damages due to the Major Wage Class; (26) the amount of pre-judgment and/or post-judgment interest due to the Major Wage Class; (27) whether Defendants can establish an affirmative defense to an award of liquidated damages by establishing that

they had a good faith basis to believe that their compensation practices were in compliance with the law; (28) whether Defendants can establish an affirmative defense to statutory damages based on Defendants having made complete and timely payment of all wages due to the Major Wage Class; (29) whether Defendants can establish an affirmative defense to statutory damages based on Defendants reasonably believing that they were not required to provide the Major Wage Class with wage rate statements and/or wage statements; (30) whether injunctive relief to the Major Wage Class is warranted; and (31) if injunctive relief is warranted the scope of such relief for the Major Wage Class.

267.    There are questions of law and fact common to the Major Fiduciary Equitable Class, which questions also predominate over any questions affecting only individual members, including but not limited to: (1) whether Defendants had a valid power of attorney and/or valid attorney-in-fact status; (2) if valid, whether Defendants' power of attorney and/or attorney-in-fact status created a fiduciary relationship with the Major Fiduciary Equitable Class pursuant to NY General Obligations Law § 5-1505; (3) if valid, whether Defendants' power of attorney and/or attorney-in-fact status created a fiduciary relationship with the Major Fiduciary Equitable Class pursuant to the common law; (4) whether Major breached its fiduciary duty and/or had a policy or practice of breaching its fiduciary duty by: (i) failing to notify, timely notify, and/or accurately notify the Major Fiduciary Equitable Class of the receipt of their earnings for their provision of modeling services from Major's clients; (ii) failing to pay and/or fully pay the Major Fiduciary Equitable Class their received earnings within a reasonable period of time after receipt (regardless of whether a model specifically requested payment); (5) the minimum and/or maximum length of any permissible time-period of non-payment of received funds and/or non-notification of the receipt of funds with respect to the Major Fiduciary Equitable Class; (6) whether Major had a good faith justification for the failure to notify, timely notify, pay, and/or fully pay the Major Fiduciary Equitable Class, or whether it merely served its own business interests and/or did not serve the interests of Major Fiduciary Equitable Class, in breach of its fiduciary duties; (7) whether Major failed to observe the standard of care that would be observed by a prudent person dealing with the

property of another with respect to the Major Fiduciary Equitable Class; (8) whether the Major

Fiduciary Equitable Class is entitled to an accounting, a constructive trust, and/or disgorgement; and (9)

the scope and/or amount of such accounting, constructive trust, and/or disgorgement.

268.     There are questions of law and fact common to the Major Fiduciary Legal Class, which

questions also predominate over any questions affecting only individual members, including but not

limited to: (1) whether Defendants had a valid power of attorney and/or attorney-in-fact status; (2) if

valid, whether Defendants' power of attorney and/or attorney-in-fact status created a fiduciary

relationship with the Major Fiduciary Legal Class pursuant to NY General Obligations Law § 5-1505;

(3) if valid, whether Defendants' power of attorney and/or attorney-in-fact status created a fiduciary

relationship with the Major Fiduciary Legal Class pursuant to the common law; (4) whether Major

breached its fiduciary duty and/or had a policy or practice of breaching its fiduciary duty by: (i) failing

to notify, timely notify, and/or accurately notify the Major Fiduciary Legal Class of the receipt of their

earnings; (ii) failing to pay and/or fully pay the Major Fiduciary Equitable Class their received earnings

within a reasonable period of time after receipt (regardless of whether a model specifically requested

payment); (5) the minimum and/or maximum length of any permissible time-period of non-payment of

received funds and/or non-notification of the receipt of funds with respect to the Major Fiduciary Legal

Class; (6) whether Major had a good faith justification for the failure to notify, pay, and/or fully pay the

Major Fiduciary Legal Class, or whether it merely served its own business interests and/or did not serve

the interests of Major Fiduciary Legal Class, in breach of its fiduciary duties; (7) whether Major failed to

observe the standard of care that would be observed by a prudent person dealing with the property of

another with respect to the Major Fiduciary Legal Class; (8) whether the Major Fiduciary Legal Class is

entitled to actual damages; (9) whether the Major Fiduciary Legal Class is entitled to punitive damages;

and (10) the total amount of actual and/or punitive damages to be awarded to the Major Fiduciary Legal

Class.

269.     There are questions of law and fact common to the Major DJA Class, including but not

limited to: (1) whether Major was an employment agency and/or theatrical agency pursuant to Gen. Bus. Law § 171; (2) whether Major obtained an employment agency and/or theatrical employment agency license for all of April 3, 2014 to January 1, 2020 and/or for what part of such period -- if any -- it did; (3) whether Major operated as an unlicensed employment agency and/or unlicensed theatrical agency for all of April 3, 2014 to January 1, 2020 and/or for what part of such period -- if any -- it did; (4) whether, pursuant to GBL § 185, no fee may be charged or collected by Major from Plaintiff and the Major DJA Class, concerning their provision of modeling services during April 3, 2014 through January 1, 2020, or with respect to some period thereof.

270.    At all times relevant to the complaint, Major employed bookers and/or model managers whose primary or sole duty was to obtain castings, go-sees, and/or bookings for Plaintiff, and similarly situated Major models, to provide modeling services to Major's fashion industry clients.

271.    At all times relevant the complaint, Major was an employment agency and/or theatrical employment agency within the meaning of GBL § 171(2).

272.    Major operated as an unlicensed employment agency from at least April 3, 2014 through at least January 1, 2020.

273.    Major's operation as an employment agency, from at least April 3, 2014 through at least January 1, 2020, was in violation of GBL § 172.

274.    All modeling services provided by Plaintiff and other similarly situated Major models to Major's fashion industry clients, from at least April 3, 2014 through at least January 1, 2020, were provided during a time-period that Major did not have an employment agency license pursuant to GBL § 172.

275.    Plaintiff's claims are typical of the Major Wage Class.  Plaintiff and the Major Wage Class were subject to the same or very similar policies and practices concerning their provision of modeling services and compensation, and have sustained the same or similar types of damages as a result of Defendants' conduct.

276.    Plaintiff's claims are typical of the Major Fiduciary Equitable Class and Major Fiduciary Legal Class.  Plaintiff and the Major Fiduciary Equitable Class and Major Fiduciary Legal Class were subject to the same power of attorney and/or attorney-in-fact status (if valid), which was not coupled with an interest, and the same or very similar policies and practices concerning notification and payment of their earnings, and have sustained the same or similar types of damages as a result of Defendants' conduct.

277.    Plaintiff's claims are typical of the Major DJA Class because Plaintiff and the Major DJA class were subject to the same unlicensed employment agency operation of Major with the same resulting prohibition on Major's ability to collect any fee regarding their modeling work pursuant to GBL §185(10) ("[N]o fee may be charged or collected for services rendered by an employment agency not licensed pursuant to section one hundred seventy-two of this article at the time such services were rendered.").

278.    Plaintiff and Plaintiff's counsel will fairly and adequately represent and protect the interests of the class members.

279.    Plaintiff has retained counsel competent and experienced in complex class actions.

280.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Major Wage Class, Major Fiduciary Equitable Class, Major Fiduciary Legal Class, and Major DJA Class making declaratory and/or injunctive relief appropriate with respect to Plaintiff and each class as a whole.

281.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) for the Major Wage Class, Major Fiduciary Equitable Class, and Major Fiduciary Legal Class because common questions of fact and law predominate over any questions affecting only individual members of the class(es), and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the class(es) have been injured and are entitled to recovery as a result of Defendants' violations of the NYLL and Major's breach of its fiduciary duty.

282.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(c)(4) with respect to the Major Wage Class, Major Fiduciary Equitable Class, Major Fiduciary Legal Class, and Major DJA Class because the resolution of additional common issues would reduce the range of issues in dispute and promote judicial economy.

283.     Resolution of whether Defendants are liable pursuant to the NYLL, in the first instance, would reduce the range of issues in dispute and promote judicial economy by initially determining whether any remedial damages proceedings are required at all.

284.     Similarly, resolution of whether such power of attorney and/or attorney-in-fact status gave rise to a fiduciary duty, pursuant to NY General Obligations Law § 5-1505 and/or the common law, would reduce the range of issues in dispute and promote judicial economy by initially determining whether any remedial damages proceedings are required at all.

285.     Similarly, resolution of whether Major was an employment agency and/or operating as an unlicensed employment agency would reduce the range of issues in dispute and promote judicial economy by initially determining whether GBL § 185 applied to any attempt by it to collect modeling commission that it asserts are owed by the Major DJA Class.

286.     Similarly, resolution of any one of the issues referenced above, even where such issue(s) are not appropriate for resolution pursuant to Fed. R. Civ. P. 23(b)(3), would nonetheless reduce the range of issues in dispute and promote judicial economy if resolved as an issues class pursuant to Fed. R. Civ. P. 23(c)(4).

287.     The members of the class(es) have been injured and are entitled to damages, necessitating the resolution of common issues regarding the calculation of class damages.

288.     To the extent any claim herein is inconsistent with another, it is plead in the alternative.

## **ALTERNATIVE PLEADING**

289.     Plaintiff's wage and hour and fiduciary duty claims are pled in the alternative and pled, in the second alternative, as co-extensive claims.

41

290.    Plaintiff's wage and hour claims are pled in the alternative, and in addition to, Plaintiff's breach of fiduciary duty claims.

291.    The Complaint alleges three alternative legal theories: (1) Plaintiff was an employee under the FLSA and NYLL wage and hour provisions; (2) Plaintiff was not an employee under the FLSA and NYLL wage and hour provisions but was owed a fiduciary duty by Major concerning her funds held and controlled through Major's power of attorney and/or attorney-in-fact status (if valid); or (3) Plaintiff was both an employee under the FLSA and NYLL wage and hour provisions _and_ owed a fiduciary duty concerning her funds held by Major because of its power of attorney (if valid).

292.    These alternative statements of Plaintiff's claims, based on the same underlying factual allegations, are the "two or more statements of a claim . . . alternatively or hypothetically . . . regardless of consistency," permitted by Fed. R. Civ. P. 8(d).

### FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Failure to Pay Minimum Wages**
**(On Behalf of Plaintiff and the Major Collective Against Major and Dolci)**

293.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

294.    At all times relevant to the complaint, Plaintiff and the members of the Major FLSA Collective were employed and/or jointly employed by Defendants within the meaning of the FLSA.

295.    At all times relevant to the complaint, Defendants violated the FLSA, including by misclassifying Plaintiff and the Major FLSA Collective as independent contractors, and failing to pay them minimum wages and/or paying minimum wages promptly, for all hours Defendants suffered and/or permitted them to work, which failures resulted in minimum wage violations for workweeks for which Defendants paid them no compensation for their work and/or failed to pay them promptly as required by the FLSA.

296.    At all times relevant to the complaint, upon information and belief, the delays in payment

of minimum wages to Plaintiff and the Major Model Collective, were intentional, increased Defendants' profits through additional accrued interest to Defendants (*i.e.* "the float"), and/or because these delays in payment, and failures of payment, financially benefited Defendants.

297.    At all times relevant to the complaint, the minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, applied to Defendants and protected Plaintiff and the Major FLSA Collective.

298.    Defendants failed or refused to pay Plaintiff and the Major FLSA Collective at a rate equal to or greater than the federal minimum wage for all weeks worked, which violated the FLSA.  29 U.S.C. § 206.

299.    At all times relevant to the complaint, Plaintiff and the Major FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(b) and 206.

300.    At all times relevant to the complaint, Defendants were employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(b), (d), 206.

301.    At all times relevant to the complaint, Plaintiff and the Major FLSA Collective were employees within the meaning of the FLSA, including 29 U.S.C. § 203.

302.    Defendants have failed to pay Plaintiff the minimum wages to which she was entitled under the FLSA, for all workweeks, within three years prior to her filing her original complaint in this action.

303.    Defendants have failed to pay many members of the Major FLSA Collective the minimum wages to which they were entitled, between April 3, 2017 to January 1, 2020.

304.    Defendants have not made a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff and the Major FLSA Collective, and their non-compliance has been willful.

305.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the Major

Collective have suffered damages by being denied minimum wages and/or prompt payment of minimum wages in accordance with 29 U.S.C. §§ 201 *et seq*.

306. As a result of the unlawful acts of Defendants, Plaintiff and the Major FLSA Collective have been deprived of minimum wage compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages for unpaid minimum wages and/or non-prompt minimum wages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216.

**SECOND CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Minimum Wages**
**(On Behalf of Plaintiff and the Major Wage Class Against Major and Dolci)**

307. Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

308. Defendants failed to pay Plaintiff, and upon information and belief, the Major Wage Class, all of the minimum wages to which they were entitled under the NYLL.

309. Defendants violated the NYLL, by failing to pay Plaintiff, and upon information and many members of the Major Wage Class, the minimum wage for all hours Defendants suffered and/or permitted them to work, which failures resulted in minimum wage violations for workweeks for which Defendants paid them no compensation for their provision of modeling services performed between April 3, 2014 to January 1, 2020.

310. At all times relevant to the complaint, Plaintiff and the Major Wage Class have been employees within the meaning of NYLL §§ 2, 651 and the supporting New York State Department of Labor Regulations, and Defendants have been employers within the meaning of NYLL §§ 2, 651-52 and the supporting New York State Department of Labor Regulations.

311. Plaintiff and the Major Wage Class did not work at their own convenience and/or were not free to engage in other employment without restrictions, penalties, potential penalties, and/or interference from Major.

312.   Defendants exercised substantial control over Plaintiff and the Major Wage Class with respect to the results produced and/or the means used to provide modeling services to Defendants' clients.

313.   Defendants provided Plaintiff and the Major Wage Class with fringe benefits, including the initial financing of Defendants' website fee and the availability of potential lending of advances and/or the provision of advances on their earnings and/or prospective earnings from their provision of modeling services.

314.   Defendants failed to pay Plaintiff, and many members of the Major Wage Class, minimum wages for all hours worked to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

315.   Defendants' bad faith and willful failure to pay Plaintiff, and many members of the Major Wage Class, minimum wages, for all of the hours worked, violated NYLL § 650 *et. seq*. and the supporting New York State Department of Labor regulations.

316.   Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law.

317.   By Defendants' knowing, bad faith, and/or intentional failure to pay Plaintiff and the Major Wage Class, Defendants have willfully violated the NYLL.

318.   Defendants misclassified and/or continued to misclassify Plaintiff and the Major Collective under the FLSA, despite their notice of and/or prior participation in putative class action litigation in which the plaintiffs challenged Major and/or Major and several other modeling agencies' classification of models as independent contractors, and/or following the New York Department of Labor's initial finding that Major Models were employees for purposes of the less expansive New York unemployment benefit statute.

319.   Due to Defendants' violations of the NYLL, Plaintiff and the Major Wage Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, reasonable

attorneys' fees, costs, and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION
### New York Labor Law – Failure to Pay Timely Minimum Wages
### (On Behalf of Plaintiff and the Major Wage Class Against Major and Dolci)

320.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

321.    At all times relevant to the complaint, Defendants were employers and/or joint employers within the meaning of the NYLL.

322.    At all times relevant to the complaint, Plaintiff and the Major Wage Class were employees and Defendants were employers within the meaning of NYLL §§ 2, 651, 190.

323.    Defendants suffered and/or permitted Plaintiff and the Major Wage Class to work.

324.    Defendants employed Plaintiff and the Major Wage Class within the meaning of NYLL § 2.

325.    At all times relevant to the complaint, Plaintiff and the Major Class were "clerical or other workers" or "manual workers" within the meaning of NYLL § 191.

326.    Defendants failed to pay Plaintiff and many members of the Major Wage Class, all of the minimum wages to which they were entitled under the NYLL within the weekly or semi-monthly time-period required by the NYLL.

327.    During April 3, 2014 to January 1, 2020, Defendants violated the NYLL by failing to pay Plaintiff's and many members of the Major Wage Class's minimum wages eventually paid, within the weekly or semi-monthly time-period required by NYLL § 191, for all hours Defendants suffered and/or permitted them to work providing modeling services to Defendants' fashion industry clients at bookings.

328.    These late payments entitled Plaintiff and many members of the Major Wage Class to liquidated damages in amounts equal to the untimely paid minimum wages.

329.    At all times relevant to the complaint, Plaintiff and the Major Wage Class were employees within the meaning of the NYLL §§ 2, 190, 651 and the supporting New York State

Department of Labor Regulations, and Defendants were employers within the meaning of NYLL §§ 2, 190, 651-52 and the supporting New York State Department of Labor Regulations.

330.    During April 3, 2014 to January 1, 2020, Defendants failed to pay Plaintiff and many members of the Major Wage Class, timely minimum wages for all hours worked to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

331.    Defendants did not have a good faith basis to believe that their failure to pay minimum wages within the time-period required by NYLL § 191 was in compliance with the law.

332.    Plaintiff and the Major Wage Class are entitled to recover from Defendants liquidated damages in the amount of the non-timely payments of minimum wages eventually paid, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Wages Due**
**(On Behalf of Plaintiff and the Major Wage Class Against Major and Dolci)**

333.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

334.    At all times relevant to the complaint, Defendants were employers and/or joint employers within the meaning of the NYLL.

335.    At all times relevant to the complaint, Plaintiff and the Major Wage Class were employees and Defendants were employers within the meaning of NYLL §§ 2, 190.

336.    Defendants suffered and/or permitted Plaintiff and the Major Wage Class to work.

337.    Defendants employed Plaintiff and the Major Wage Class within the meaning of NYLL § 2.

338.    At all times relevant to the complaint, Plaintiff and the Major Class were "clerical or other workers" or "manual workers" within the meaning of NYLL § 191.

339.    Plaintiff and the Major Wage Class did not work at their own convenience and/or were not free to engage in other employment without restrictions, penalties, potential penalties, and/or

interference from Major.

340.    Defendants exercised substantial control over Plaintiff and the Major Wage Class with respect to the results produced and/or the means used to provide modeling services to Defendants' clients.

341.    Defendants provided Plaintiff and the Major Wage Class with fringe benefits, including the initial financing of Defendants' website fee and the availability of potential lending of advances and/or the provision of advances on their earnings and/or prospective earnings from their provision of modeling services.

342.    At all times relevant to the complaint, Plaintiff and the Major Wage Class were entitled to weekly or semi-monthly payments of their wages by Defendants pursuant to NYLL § 191.

343.    During April 3, 2014 to January 1, 2020, Defendants failed to pay Plaintiff and many members of the Major Wage Class all of their earned wages due, which wages continue to be due to Plaintiff and many members of the Major Wage Class.

344.    Plaintiff and the Major Wage Class are entitled to payment of their earned wages due pursuant to NYLL § 191.

345.    During April 3, 2014 to January 1, 2020, Defendants failed to pay Plaintiff, and many members of the Major Wage Class, all of their earned wages due within the weekly or semi-monthly time-period required by NYLL § 191.

346.    Defendants did not have a good faith basis to believe that their failure to pay earned wages due to Plaintiff and the Major Wage Class, within the time-period required by NYLL § 191, was in compliance with the law.

347.    By Defendants' knowing, bad faith, and/or intentional failure to pay Plaintiff and the Major Wage Class all wages due and/or pay all wages due within the time period required by NYLL § 191, Defendants have willfully, and without a good faith basis, violated the NYLL and the supporting New York State Department of Labor regulations.

348.    Unpaid earned wages are still due to Plaintiff and many members of the Major Wage Class.

349.    Due to Defendants' violations of the NYLL, Plaintiff and the Major Wage Class are entitled to recover from Defendants their unpaid earned wages due, liquidated damages in the amount of their unpaid wages due, liquidated damages for untimely paid wages eventually paid, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FIFTH CAUSE OF ACTION
**New York Labor Law – Unlawful Deductions**
**(On Behalf of Plaintiff and the Major Wage Class Against Major and Dolci)**

350.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

351.    At all times relevant to the complaint, Defendants have been employers and/or joint employers within the meaning of the NYLL §§ 2, 190.

352.    At all times relevant to the complaint, Plaintiff and the Major Wage Class were employees and Defendants were employers within the meaning of NYLL §§ 2, 190.

353.    Defendants suffered and/or permitted Plaintiff and the Major Wage Class to work.

354.    Defendants employed Plaintiff and the Major Wage Class within the meaning of NYLL § 2.

355.    Plaintiff and the Major Wage Class did not work at their own convenience and/or were not free to engage in other employment without restrictions, penalties, potential penalties, and/or interference from Major.

356.    Defendants exercised substantial control over Plaintiff and the Major Wage Class with respect to the results produced and/or the means used to provide modeling services to Defendants' clients.

357.    Defendants provided Plaintiff and the Major Wage Class with fringe benefits, including the initial financing of Defendants' website fee and the availability of potential lending of advances

and/or the provision of advances on their earnings and/or prospective earnings from their provision of modeling services.

358.    At all times relevant to the complaint, the wage deduction provisions of NYLL § 193, and the supporting New York State Department of Labor Regulations, applied to Defendants and protected Plaintiff and the Major Wage Class.

359.    Defendants have reduced the wages of Plaintiff and the Major Wage Class by making unlawful deductions from their wages.

360.    Defendants did not have a good faith basis to believe that that their commission deduction of 20% of Plaintiff and Major Wage Class' earnings were in compliance with the 10% limit to such deductions to Major's models provided for in GBL § 185, and were not illegal deductions pursuant to NYLL § 193.

361.    Defendants did not have a good faith basis to believe that its charges of "service charges" or "agency fees" to their clients of 20% of Plaintiff's and the Major Wage Class's disclosed earnings, was in compliance with the 10% limit to such charges to Major's clients provided for by GBL § 185, and were not illegal deductions pursuant to NYLL § 193.

362.    At all times relevant to the complaint, Defendants violated NYLL § 193, by making a 20% commission deduction from Plaintiff's wages, with respect to which half of such deduction was an illegal deduction in violation of NYLL § 193.

363.    At all times relevant to the complaint, Defendants violated NYLL § 193, by charging their clients an additional 20% of the disclosed fee for Plaintiff and the Major Wage Classes' disclosed earnings as "service charges" or "agency fees," with respect to which half of such deduction was an illegal required payment by separate transaction, by Plaintiff and the Major Wage Class to Defendants.

364.    At all times relevant to the complaint, Defendants': (1) direct deductions of commissions from Plaintiff and the Major Wage Class's earnings, above the 10% of earnings amount permitted by GBL § 185; and (2) required payments by separate transaction by Plaintiff and the Major Wage Class

above the 10% of earnings amount permitted by GBL § 185, were illegal deductions of wages in violation of NYLL § 193 and New York State Department of Labor regulations.

365.    At all times relevant to the complaint, Defendants' direct deductions of "commissions," were not for the benefit of Plaintiff or the Major Wage Class.

366.    At all times relevant to the complaint, Defendants' "agency fees" and "service fees" charged to their fashion industry clients, which were payments by separate transaction from Plaintiff and the Major Wage Class to Defendants, were not for the benefit of Plaintiff or the Major Wage Class.

367.    At all times relevant to the Complaint, Defendants' deductions for commissions from Plaintiff and the Major Wage Class's wages were made for the purpose of paying Defendants' administrative costs, which is explicitly prohibited by NYLL § 193, and supporting New York State Department of Labor Regulations.

368.    At all times relevant to the Complaint, Defendants' "agency fees" and "service fees" charges, which were payments by separate transaction from Plaintiff and the Major Wage Class to Defendants, were made for the purpose of paying Defendants' administrative costs, which is explicitly prohibited by NYLL § 193, and supporting New York State Department of Labor Regulations.

369.    At all times relevant to the Complaint, Defendants did not have a good faith basis to believe that their deductions above the 10% limit imposed by GBL § 185 were in compliance with the law.

370.    Due to Defendants' violations of NYLL § 193, during April 3, 2014 through January 1, 2020, Plaintiff and the Major Wage Class are entitled to recover from Defendants, with respect to that period, the amounts of Defendants' deductions above the 10% cap permitted by GBL § 185, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Wage Notice**
**(On Behalf of Plaintiff and the Major Wage Class Against Major and Dolci)**

371.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding

paragraphs.

372.    At all times relevant, Defendants were employers and/or joint employers within the meaning of the NYLL §§ 2, 190.

373.    At all times relevant, Plaintiff and the Major Wage Class were employees within the meaning of the NYLL §§ 2, 190.

374.    Defendants suffered and/or permitted Plaintiff and the Major Wage Class to work.

375.    Defendants employed Plaintiff and the Major Wage Class within the meaning of NYLL § 2.

376.    Plaintiff and the Major Wage Class did not work at their own convenience and/or were not free to engage in other employment without restrictions, penalties, potential penalties, and/or interference from Major.

377.    Defendants exercised substantial control over Plaintiff and the Major Wage Class with respect to the results produced and/or the means used to provide modeling services to Defendants' clients.

378.    Defendants provided Plaintiff and the Major Wage Class with fringe benefits, including the initial financing of Defendants' website fee and the availability of potential lending of advances and/or the provision of advances on their earnings and/or prospective earnings from their provision of modeling services.

379.    Defendants failed to supply Plaintiff the notice required by NYLL § 195(1) within ten business days of hiring her on or about May 29, 2012.

380.    During April 3, 2014 through January 1, 2020, Defendants failed to supply all or many members of the Major Wage Class with the notice required by NYLL § 195(1) within ten business days of hiring them.

381.    During April 3, 2014 through January 1, 2020, Defendants did not obtain from all or many members of the Major Wage Class, a signed and dated written acknowledgement, in English and

in the primary language of the model, of receipt of the wage rate notice required by NYLL § 195(1) and supporting New York State Department of Labor Regulations.

382.    Due to Defendants' violations of NYLL § 195(1), Plaintiff is entitled to recover from Defendants a total of twenty-five hundred dollars, as provided for by NYLL § 198(1-b), in addition to reasonable attorneys' fees, costs, and injunctive and declaratory relief.

383.    Due to Defendants' violations of NYLL § 195(1) during April 3, 2014 through January 1, 2020, the Major Wage Class is entitled to recover from Defendants, as provided for by NYLL § 198(1-b), a total of twenty-five hundred dollars or five thousand dollars, in addition to reasonable attorneys' fees, costs, and injunctive relief, and declaratory relief.

### SEVENTH CAUSE OF ACTION
### New York Labor Law – Wage Statement
### (On Behalf of Plaintiff and the Major Wage Class Against Major and Dolci)

384.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

385.    At all times relevant, Defendants were employers and/or joint employers within the meaning of NYLL §§ 2, 190.

386.    Defendants suffered and/or permitted Plaintiff and the Major Wage Class to work.

387.    Defendants employed Plaintiff and the Major Wage Class within the meaning of NYLL § 2.

388.    At all times relevant, Plaintiff and the Major Wage Class were employees within the meaning of NYLL §§ 2, 190.

389.    Plaintiff and the Major Wage Class did not work at their own convenience and/or were not free to engage in other employment without restrictions, penalties, potential penalties, and/or interference from Major.

390.    Defendants exercised substantial control over Plaintiff and the Major Wage Class with respect to the results produced and/or the means used to provide modeling services to Defendants'

clients.

391.     Defendants provided Plaintiff and the Major Wage Class with fringe benefits, including the initial financing of Defendants' website fee and the availability of potential lending of advances and/or the provision of advances on their earnings and/or prospective earnings from their provision of modeling services.

392.     Defendants failed to provide Plaintiff, and upon information and belief the Major Wage Class, with the notice required by NYLL § 195(3), by failing to provide them with a statement, with every payment of their wages, listing, *inter alia*, the number of hours worked, the address of the employer, or the phone number of the employer.

393.     Defendants frequently failed to provide Plaintiff with any written statement with the payment of her wages..

394.     Upon information and belief, Defendants have failed to provide the Major Wage Class with a statement as required by NYLL § 195(3) with all of their wage payments.

395.     Due to Defendants' violations of NYLL § 195(3), Plaintiff, and upon information and belief the Major Wage Class, are entitled to recover from Defendants five thousand dollars in statutory damages, in addition to reasonable attorneys' fees, costs, and injunctive relief, and declaratory relief, as provided for by NYLL § 198(1-d).

### EIGHTH CAUSE OF ACTION
**Breach of Fiduciary Duty -- Accounting, Constructive Trust, and Disgorgement**
**(On Behalf of Plaintiff and the Major Fiduciary Equitable Class Against Major)**

396.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

397.     In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, a fiduciary relationship existed between Major and Plaintiff and the Major Fiduciary Equitable Class, arising from Major's power of attorney and/or attorney-in-fact provision in its modeling agreement (if valid).

398.     In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, to the extent that Major's power of attorney and/or attorney-in-fact provision was valid, Major was a fiduciary of Plaintiff and the Major Fiduciary Equitable Class pursuant to N.Y. Gen. Oblig. Law § 5-1505 and/or the common law.

399.     In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, Major breached its fiduciary duty to Plaintiff and the Major Fiduciary Equitable Class, by failing to make complete and/or prompt payments to Plaintiff and the Major Fiduciary Equitable Class of all of their earnings (whether or not payment was specifically requested by them), and/or by withholding all or some of their earnings, for reasons that served its own business interests, and did not serve the interests of Plaintiff or the Major Fiduciary Equitable Class.

400.     In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, by failing to disburse funds received from clients pursuant to its fiduciary relationship with Plaintiff and the Major Fiduciary Equitable Class, Major breached its fiduciary obligations with respect to the provision, use, and/or safeguarding of these funds.

401.     In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, instead of serving their interests as a fiduciary, Major diverted Plaintiff and the Major Fiduciary Equitable Class's earnings to itself.

402.     In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the complaint, upon information and belief, Major's failures and/or delays in payment of the earnings of Plaintiff and the Major Fiduciary Equitable Class, were intentional and increased Defendants' profits through additional accrued interest

to Defendants (*i.e.* "the float"), and/or because these delays in payment, and failures of payment, financially benefited Defendants. In the alternative, Major carelessly disposed of Plaintiff and the Major Fiduciary Equitable Class's earnings.

403. In addition, to and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, Major further breached its fiduciary duty by concealing, obfuscating, misrepresenting, and/or inaccurately disclosing to Plaintiff and the Major Fiduciary Equitable Class, whether it had received payment from its clients for their provision of modeling services.

404. In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, Major further breached its fiduciary duty to Plaintiff and the Major Fiduciary Equitable Class by failing to notify them, within a reasonable time-period, of Major's receipt of payment(s) by its clients for their provision of modeling services.

405. In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the complaint, Major failed to observe the standard of care that would be observed by a prudent person dealing with property of another in handling Plaintiff and the Major Fiduciary Equitable Class's funds, by diverting their funds to itself, failing to properly account for these funds, delaying payment of these funds without reasonable justification, making misrepresentations about the receipt of these funds, and/or failing to disburse these funds at all.

406. In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, upon information and belief, Major breached its fiduciary duty to Plaintiff and the Major Equitable Class, by failing to maintain adequate and accurate records of the earnings of the Plaintiff and the Major Fiduciary Equitable Class.

407. At all times relevant to the complaint, the power of attorney and/or attorney-in-fact

language contained in Plaintiff's and the Major Fiduciary Equitable Class' modeling agreements with Major did not include language stating that it was coupled with an interest.

408.   At all times relevant to the complaint, Major's above-described self-dealing and self-enriching conduct was not in the best interests of Plaintiff and the Major Fiduciary Equitable Class.

409.   At all times relevant to the complaint, Major did not act in the best interests of and/or act to avoid conflicts of interest with Plaintiff and the Major Fiduciary Equitable Class.

410.   At all times relevant to the complaint, Major did not act in accordance with the requests and/or instructions for payment by Plaintiff or many or all members of the Major Fiduciary Equitable Class.

411.   Instead of serving their interests as a fiduciary, Major diverted Plaintiff and the Major Fiduciary Equitable Class's earnings to itself.

412.   Major did not act for or give advice for the benefit of Plaintiff upon matters within the scope of its asserted power of attorney and/or attorney-in-fact provision.

413.   In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, Plaintiff and the Major Fiduciary Equitable Class have been injured by Major's breaches of fiduciary duty.

414.   In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, Plaintiff and the Major Fiduciary Equitable Class have been injured by Major's breaches of its fiduciary duty and are entitled to an accounting, a constructive trust, and disgorgement.

<u>**NINTH CAUSE OF ACTION**</u>
**Breach of Fiduciary Duty – Actual Damages and Punitive Damages**
**(On Behalf of Plaintiff and the Major Fiduciary Legal Class Against Major)**

415.   Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

416.   In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the

Major Wage Class's wage and hour claims, at all times relevant to the Complaint, a fiduciary relationship existed between Major and Plaintiff and the Major Fiduciary Legal Class, arising from Major's power of attorney and/or attorney-in-fact provision in its modeling contract (if valid).

417.    In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, to the extent that Major's power of attorney and/or attorney-in-fact provision was valid, Major was a fiduciary of Plaintiff and the Major Fiduciary Legal Class pursuant to N.Y. Gen. Oblig. Law § 5-1505 and/or the common law.

418.    In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, Major breached its fiduciary duty to Plaintiff and the Major Fiduciary Legal Class, by failing to make complete and/or prompt payments to Plaintiff and the Major Fiduciary Legal Class of all of their earnings (whether or not payment was specifically requested by them), and/or by withholding all or some of their earnings, for reasons that served its own business interests, and did not serve the interests of Plaintiff or the Major Fiduciary Legal Class.

419.    In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, by failing to disburse funds received from clients pursuant to its fiduciary relationship with Plaintiff and the Major Fiduciary Legal Class, Major breached its fiduciary obligations with respect to the provision, use, and/or safeguarding of these funds.

420.    In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, instead of serving their interests as a fiduciary, Major diverted Plaintiff and the Major Fiduciary Legal Class's earnings to itself.

421.    In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the

Major Wage Class's wage and hour claims, at all times relevant to the complaint, upon information and belief, Major's failures and/or delays in payment of the earnings of Plaintiff and the Major Fiduciary Legal Class, were intentional and increased Defendants' profits through additional accrued interest to Defendants (*i.e.* "the float"), and/or because these delays in payment, and failures of payment, financially benefited Defendants. In the alternative, Major carelessly disposed of Plaintiff and the Major Fiduciary Legal Class's earnings.

422.    In addition, to and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, Major further breached its fiduciary duty by concealing, obfuscating, misrepresenting, and/or inaccurately disclosing to Plaintiff and the Major Fiduciary Legal Class, whether it had received payment from its clients for their provision of modeling services.

423.    In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the Complaint, Major further breached its fiduciary duty to Plaintiff and the Major Fiduciary Legal Class by failing to notify them, within a reasonable time-period, of Major's receipt of payment(s) by its clients for their provision of modeling services.

424.    In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the complaint, Major failed to observe the standard of care that would be observed by a prudent person dealing with property of another in handling Plaintiff and the Major Fiduciary Legal Class's funds, by diverting their funds to itself, failing to properly account for these funds, delaying payment of these funds without reasonable justification, making misrepresentations about the receipt of these funds, and/or failing to disburse these funds at all.

425.    In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, at all times relevant to the complaint, Major breached its

fiduciary duty to Plaintiff and the Major Legal Class, by failing to maintain adequate and accurate records of the earnings of the Plaintiff and the Major Fiduciary Legal Class.

426.    At all times relevant to the complaint, the power of attorney and/or attorney-in-fact language contained in Plaintiff's and the Major Fiduciary Legal Class's modeling agreements with Major did not include language stating that it was coupled with an interest.

427.    At all times relevant to the complaint, Major's above-described self-dealing and self-enriching conduct was not in the best interests of Plaintiff and the Major Fiduciary Legal Class.

428.    At all times relevant to the complaint, Major did not act in the best interests of and/or act to avoid conflicts of interest with Plaintiff and the Major Fiduciary Legal Class.

429.    At all times relevant to the complaint, Major did not act in accordance with the requests and/or instructions for payment by Plaintiff or many or all members of the Major Fiduciary Legal Class.

430.    Instead of serving their interests as a fiduciary, Major diverted Plaintiff and the Major Fiduciary Legal Class's earnings to itself.

431.    Major did not act for or give advice for the benefit of Plaintiff upon matters within the scope of its asserted power of attorney and/or attorney-in-fact status.

432.    In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, Plaintiff and the Major Fiduciary Legal Class have been injured by Major's breaches of fiduciary duty.

433.    In addition to, and/or in the alternative to, Plaintiff, the Major Collective, and/or the Major Wage Class's wage and hour claims, Plaintiff and the Major Fiduciary Legal Class have been injured by Major's breaches of fiduciary duty and are entitled to actual and punitive damages.

## TENTH CAUSE OF ACTION
### Fair Labor Standards Act Retaliation
### (On Behalf of Plaintiff Against Major and Dolci)

434.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

435.   Major and Dolci were employers and/or persons within the meaning of 29 U.S.C. §§ 203, 215.

436.   Plaintiff was an employee and/or former employee within the meaning of 29 U.S.C. §§ 203, 215.

437.   Upon information and belief, Defendants discriminated and/or retaliated against Plaintiff because, or in part because, she filed a complaint, amended a complaint, instituted a proceeding, and/or caused to be instituted a proceeding under the FLSA, by, upon information and belief, filing a retaliatory lawsuit, with Index No. 650911/2021, in New York Supreme Court, against Plaintiff's current modeling agency and current modeling agency booker.

438.   This action was filed and/or amended to specifically reference Plaintiff, and upon information and belief, was filed, in whole or in part, in bad faith, and/or without legal merit, in an attempt to intimidate and to retaliate against Plaintiff, and potential members of Major Collective, because of Plaintiff's exercise of her FLSA rights and/or FLSA collective action rights.

439.   Upon information and belief, Plaintiff's filing of a complaint, amending of a complaint, instituting of a proceeding, or causing to be instituted a proceeding under the FLSA, was a motivating factor in Defendants filing, upon information and belief, in whole or in part, bad faith litigation and/or meritless claims, against Plaintiff's current modeling agency and current booker, by way of a state court complaint on February 9, 2021.

440.   Major's filing of this litigation against Plaintiff's current modeling agency and booker was within approximately five weeks of Plaintiff's filing of an amended complaint, on January 1, 2021, adding FLSA collective action allegations in this action.

441.   Although it was unnecessary to do so, in order to plead the claims asserted in the state court litigation against Plaintiff's current modeling agency and modeling agency booker, Major specifically named several models whose departures from Major to Plaintiff's current modeling agency it asserted related to Major's asserted claims against Plaintiff's current modeling agency and booker.

442.    Major further asserted that these specifically named models were still under contract with Major despite having left the agency for Plaintiff's current modeling agency.

443.    Although it was unnecessary to do so to plead the claims asserted in the state court litigation against Plaintiff's current modeling agency and modeling agency booker, Major amended its complaint and added specific references to Plaintiff on March 3, 2021.

444.    In the amended complaint, Major asserted that Plaintiff was still under contract with Major.

445.    Upon information and belief, at least several of the allegations in the retaliatory state court proceeding against Plaintiff's current modeling agency and booker, were filed by Major despite the expiration of the statute of limitations for the asserted claims.

446.    Upon information and belief, a motivating factor for Major filing a lawsuit against Plaintiff's, and several putative collective and class action members' current modeling agency, was to retaliate against Plaintiff, and/or deter Plaintiff from pursuing or proceeding with this case as a FLSA collective action on behalf of the Major Collective.

447.    Plaintiff engaged in protected activity under the FLSA by filing the instant lawsuit on April 3, 2020.

448.    Plaintiff engaged in protected activity under the FLSA by amending her complaint on January 1, 2021 to add FLSA collective action claims.

449.    Upon information and belief, the purpose of this lawsuit was to retaliate against and intimidate Plaintiff and potential members of the putative collective, by publicly identifying them as models for whom their modeling agreement is claimed by Major to still be in effect with Major -- which dispute with a former agency may make them less appealing to their current agency and/or their current agencies' clients.

450.    Similarly, upon information and belief, a motivating factor of Major's lawsuit against Plaintiff's current modeling agency and booker, was to attempt harm Plaintiff, by making her less

appealing to her agency because of a legal dispute relating to her departure from Major.

451.    Similarly, upon information and belief, a motivating factor of Major's lawsuit against Plaintiff's current modeling agency and booker, was to attempt harm Plaintiff, by making her less appealing to her agency and/or agencies' clients because of Major's assertion that she was still under contract with Major.

452.    Defendants' own complaint, filed in its retaliatory state court proceeding, admits that Defendants' alleged grounds for several of their alleged claims, were known to Defendants since at least April 4, 2018 -- almost three years before they filed the retaliatory complaint against Plaintiff's current modeling agency and booker.

453.    Nonetheless, Defendants took no action to file these retaliatory state court lawsuit claims against Plaintiff's current modeling agency and booker, until filing their retaliatory state court complaint on February 9, 2021, approximately a month after Plaintiff amended her complaint in this proceeding to include FLSA collective action allegations.

454.    Filing a lawsuit and/or a lawsuit referencing a model by name, against a model's current modeling agency and/or current modeling booker, might well have dissuaded a reasonable model from initially filing and/or amending a FLSA complaint to add collective action allegations.

455.    If Plaintiff had known that Defendants would file a lawsuit against her current agency and booker because of her lawsuit, she might have been dissuaded from filing her FLSA complaint against Major and/or amending her complaint to include FLSA collective action allegations.

456.    If Defendants had a stated policy that they would file a lawsuit against the current modeling agency and/or booker of any former model who filed and/or amended a FLSA complaint against them to include collective action allegations, less former Major models would file or amend FLSA complaints to include class actions and/or it might well have dissuaded all former Major models from doing so.

457.    Defendants filing of a retaliatory lawsuit against Plaintiff's current agency and booker

has potentially significant adverse consequences that would discourage a reasonable person from acting to protect their FLSA wage rights.

458.     Upon information and belief, some or all of Defendants' claims against Plaintiff's current modeling agency and modeling agency booker are bad faith, groundless, and/or unsupported legal claims that have been filed because of, or in part because of: (1) their *in terrorem* effect on Plaintiff, the other former Major models named in the lawsuit, and the putative class members; and (2) as a warning to putative class members of that they could be next model to be specifically named in a publicly filed complaint against their agency -- in which Major publicly asserts that they were still under contract with Major.

459.     Upon information and belief, the intended purpose of the retaliatory litigation against Plaintiff's current modeling agency and modeling agency booker, was to send Plaintiff, the other specifically named former Major models, and the putative members of the class a strong message that by making their wage and hour claims against Major, they and/or their current agencies would be subject to potential litigation and interference with their modeling work.

460.     Defendants' conduct was even more materially adverse because its public assertion that Plaintiff and the other named former Major models were still under contract meant that -- according to Major -- they were not free to engage in modeling work with their current modeling agency, or any other modeling agency.

461.     This conduct might well have dissuaded a reasonable worker from filing and/or amending a FLSA complaint to allege collective action allegations.

462.     The effect of this assertion is far more materially adverse than that of a retaliatory negative reference regarding a single job opportunity.

463.     Major's publicly filed complaint asserted that, according to Major, Plaintiff, and the other specifically named models, were not free to engage in any modeling work for any other modeling agency because they were still under contract with Major.

464.     By retaliating against Plaintiff for filing her initial complaint and/or amending her complaint asserting FLSA claims, Defendants have not made a good faith effort to comply with the FLSA and such non-compliance has been willful.

465.     Upon information and belief, the retaliatory initiation of the lawsuit against Plaintiff's current modeling agency and booker required the authorization and/or involvement of Defendant Dolci.

466.     Defendants discriminated and/or retaliated with malice and/or reckless indifference to Plaintiff's federally protected FLSA rights, or otherwise engaged in outrageous conduct through their retaliatory actions.

467.     As a result of the unlawful acts of Defendants, Plaintiff is entitled to punitive damages, attorney's fees and costs, a declaration of Defendants' violation of the anti-retaliation provisions of the FLSA, and an injunction restraining Defendants from further retaliation against Plaintiff or other putative collective members.

### ELEVENTH CAUSE OF ACTION
**New York Labor Law Retaliation**
**(On Behalf of Plaintiff Against Major and Dolci)**

468.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

469.     Major was an employer and/or person within the meaning of NYLL § 215.

470.     Dolci was an employer, person, officer, and/or agent of Major within the meaning of NYLL § 215.

471.     Defendants retaliated against Plaintiff, by filing a proceeding in New York Supreme Court, Index No. 650911/2021, against Plaintiff's current modeling agency and current modeling agency booker, because Plaintiff caused to be instituted a proceeding alleging violations of the NYLL.

472.     Defendants threatened, penalized, discriminated against, and/or retaliated against Plaintiff because, or in part because, she filed her initial complaint in this action and/or filed her first amended complaint adding NYLL class action claims to this action.

473.   Major's filing of this state court litigation against Plaintiff's current modeling agency and booker was within approximately five weeks of Plaintiff's filing of an amended complaint adding NYLL class action claims to this action.

474.   Major's filing of this litigation against Plaintiff's current modeling agency and booker was within approximately five weeks of Plaintiff's filing of an amended complaint, on January 1, 2021, adding NYLL class action allegations in this action.

475.   Although it was unnecessary to do so, in order to plead the claims asserted in the state court litigation against Plaintiff's current modeling agency and modeling agency booker, Major specifically named several models whose departures from Major to Plaintiff's current modeling agency, it asserted related to Major's asserted claims against Plaintiff's current modeling agency and booker.

476.   Major further asserted that these specifically named models were still under contract with Major despite having left the agency for Plaintiff's current modeling agency.

477.   Although it was unnecessary to do so to plead the claims asserted in the state court litigation against Plaintiff's current modeling agency and modeling agency booker, Major amended its complaint and added specific references to Plaintiff on March 3, 2021.

478.   In the amended complaint, Major asserted that Plaintiff was still under contract with Major.

479.   Upon information and belief, at least several of the allegations in the retaliatory state court proceeding against Plaintiff's current modeling agency and booker, were filed by Major despite the expiration of the statute of limitations for the asserted claims.

480.   A motivating factor for Major filing a lawsuit against Plaintiff's and putative class action members' current modeling agency, was to retaliate against Plaintiff and/or deter Plaintiff from pursuing or proceeding with this case as a class action on behalf of the Major Wage Class.

481.   Plaintiff engaged in protected activity under the NYLL by filing the instant lawsuit on April 3, 2020.

482.    Plaintiff engaged in protected activity under the NYLL by amending her complaint on January 1, 2021 to add NYLL class action claims.

483.    Upon information and belief, the purpose of this lawsuit was to retaliate against and intimidate Plaintiff and the putative class, by identifying them as models with respect to which their contract is now publicly claimed by Major to still be in effect with Major- which dispute with a former agency may make them less appealing to their current agency and/or their current agencies' clients.

484.    Similarly, a motivating factor of Major's lawsuit against Plaintiff's current modeling agency and booker, was to attempt harm Plaintiff, by making her less appealing to her agency because of a legal dispute relating to her departure from Major, and its unavoidable costs and inconveniences.

485.    Similarly, a motivating factor of Major's lawsuit against Plaintiff's current modeling agency and booker, was to attempt harm Plaintiff, by making her less appealing to her agency and/or agencies' clients because of Major's assertion that she was still under contract with Major.

486.    Defendants' own complaint filed in the retaliatory state court proceeding admits that their alleged grounds for several of their alleged claims, were known to them since at least April 4, 2018.

487.    Nonetheless, Defendants took no action to file their retaliatory state court lawsuit against Plaintiff's current modeling agency and booker, until filing their retaliatory state court complaint on February 9, 2021, approximately a month after Plaintiff amended her complaint in this proceeding to include NYLL class action allegations.

488.    Filing a lawsuit and/or a lawsuit referencing a model by name, against a model's current modeling agency and/or current modeling booker, might well have dissuaded a reasonable model from initially filing and/or amending a wage complaint to add additional collective action allegations.

489.    If Plaintiff had known that Defendants would file a lawsuit against her current agency and booker because of her lawsuit, she might have been dissuaded from filing her NYLL complaint against Major and/or amending it to include class action allegations.

490.    If Defendants had a stated policy that they would file a lawsuit against the current

modeling agency and/or booker of any former model who filed and/or amended a NYLL complaint against them to include class action action allegations, less former Major models would file or amend NYLL complaints to include class action allegations and/or it might well have dissuaded all former Major models from doing so.

491.    Defendants filing of a retaliatory lawsuit against Plaintiff's current agency and booker has potentially significant adverse consequences that would discourage a reasonable person from acting to protect their NYLL wage rights.

492.    Upon information and belief, some or all of Defendants' claims against Plaintiff's current modeling agency and modeling agency booker are bad faith, groundless, and/or unsupported legal claims that have been filed because of, or in part because of: (1) their *in terrorem* effect on Plaintiff, the other former Major models named in the lawsuit, and potential class action members; and (2) as a warning to the putative class members that they could be next model to be specifically named in a publicly filed complaint against their agency -- in which Major publicly asserts that they were still under contract with Major.

493.    Upon information and belief, the intended purpose of the retaliatory litigation against Plaintiff's current modeling agency and modeling agency booker, was to send Plaintiff, the other specifically named former Major models, and the putative class members a strong message that by making their wage and hour claims against Major, they and/or their current agencies would be subject to potential litigation and interference with their modeling work.

494.    Defendants' conduct was even more materially adverse because its public assertion that Plaintiff and the other named former Major models were still under contract meant that -- according to Major -- they were not free to engage in modeling work with their current modeling agency, or any other modeling agency.

495.    This conduct might well have dissuaded a reasonable worker from filing and/or amending a NYLL complaint to allege class action allegations.

496.    The effect of this assertion is far more materially adverse than that of a retaliatory

negative reference regarding a single job opportunity.

497.    Major's publicly filed complaint asserted that, according to Major, Plaintiff, and the other

specifically named models, were not free to engage in any modeling work for any other modeling

agency because they were still under contract with Major.

498.    By retaliating against Plaintiff for filing her initial complaint and/or amending her

complaint to assert NYLL class claims, Defendants have not made a good faith effort to comply with the

NYLL and such non-compliance has been willful.

499.    Pursuant to New York Labor Law § 215, notice of this complaint is being

contemporaneously provided to the New York Attorney General.

500.    As a result of the unlawful acts of Defendants, Plaintiff is entitled to punitive damages,

attorney's fees, costs, a declaration of Defendants' violation of the anti-retaliation provisions of the

NYLL, and an injunction restraining Defendants from further retaliation against Plaintiff or other

putative class members.

## TWELTH CAUSE OF ACTION
### Declaratory Judgement Act
### (On Behalf of Plaintiff and the Major DJA Class Against Major)

501.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding

paragraphs.

502.    General Business Law §185(10) states that "no fee may be charged or collected for

services rendered by an employment agency not licensed pursuant to section one hundred seventy-two

of this article at the time such services were rendered."

503.    General Business Law § 185(10) further states that "[i]n an action to collect a fee, the

court shall void all or any part of an agreement or contract with an employment agency that did not have

a valid license at the time the contract was entered into or services were rendered."

504.    Major has frequently asserted that former Major models were in breach of their modeling

agreement and/or still under contract, and therefore, owed Major 20% of all of their earnings from their provision of modeling services.

505.    Major's retaliatory state court lawsuit recently asserted that Plaintiff and additional members of the Major DJA Class, breached their modeling agreements and/or were still under contract.

506.    At all times during at least April 3, 2014 through at least January 1, 2020, Major has been an employment agency and/or theatrical employment agency as defined by GBL § 171.

507.    At all times during at least April 3, 2014 through at least January 1, 2020, Major has operated as an unlicensed employment agency in violation of GBL § 172.

508.    At all times during at least April 3, 2014 through at least January 1, 2020, Major has not had a license to operate as an employment agency in New York.

509.    There is a substantial and continuing controversy between Defendants on the one hand, and Plaintiff and the Major DJA Class on the other, and a declaration of rights is both necessary and appropriate to establish whether: (1) Major was an employment agency pursuant to GBL § 171 during April 3, 2014 through January 1, 2020; (2) Major operated as an unlicensed employment agency in violation of GBL § 172 during April 3, 2014 through January 1, 2020; and (3) whether, as a result, no fee may be charged or collected by Major from Plaintiff and the Major DJA Class concerning their provision of modeling services during April 3, 2014 through January 1, 2020.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks the following relief:

A.    Unpaid minimum wages, for Plaintiff and the Major Collective, and an additional equal amount as liquidated damages, pursuant to the FLSA and the supporting United States Department of Labor regulations;

B.    Liquidated damages for the Major Collective, for non-prompt payment of minimum wages eventually paid, pursuant to the FLSA and the supporting United States Department of Labor regulations;

C. Unpaid minimum wages, for Plaintiff and the Major Wage Class, pursuant to the NYLL and supporting New York State Department of Labor regulations, and an additional equal amount as liquidated damages;

D. Liquidated damages, for Plaintiff and the Major Wage Class, in the amount of minimum wages eventually paid, that were not paid within the time-period required by NYLL and supporting New York State Department of Labor regulations;

E. Unpaid earned wages due Plaintiff and the Major Wage Class, pursuant to the NYLL and the supporting New York State Department of Labor regulations, and an additional equal amount as liquidated damages;

F. Liquidated damages for Plaintiff and the Major Wage Class for paid earned wages that were not paid withing the time-period required by the NYLL and supporting New York State Department of Labor regulations;

G. Compensation for unlawful deductions from Plaintiff's and the Major Wage Class's wages' pursuant to the NYLL and supporting New York State Department of Labor regulations, and an additional equal amount as liquidated damages;

H. Compensation for unlawful deductions, by way of separate transaction, from Plaintiff and the Major Wage Class, pursuant to the NYLL and supporting New York State Department of Labor regulations, and an additional equal amount as liquidated damages;

I. An accounting of all funds received concerning Plaintiff and the Major Fiduciary Equitable Class;

J. A constructive trust concerning all funds received concerning Plaintiff and the Major Fiduciary Equitable Class;

K. Disgorgement for the Major Fiduciary Equitable Class;

L.    Actual damages for Plaintiff and the Major Fiduciary Legal Class;

M.   Punitive damages for Plaintiff and the Major Fiduciary Legal Class;

N.    Statutory damages for Plaintiff and the Major Wage Class;

O.    Pre-judgment interest and post-judgment interest for Plaintiff, the Major

       Collective, the Major Wage Class, and the Major Fiduciary Legal Class;

P.    Issuance of a declaratory judgment for the Major DJA Class that: (1) during April

       3, 2014 through January 1, 2020 Major was an employment agency as defined by

       GBL § 171; (2) Major operated as an unlicensed employment agency during

       April 3, 2014 through January 1, 2020 in violation of GBL § 172; and (3) and that

       Major has no legal right to charge or collect any fee from the Major DJA Class

       concerning their provision of modeling services during April 3, 2014 through

       January 1, 2020;

Q.    Issuance of a declaratory judgment that Defendants failed to provide the Major

       Wage Class wage rate and/or wage statements and/or failed to provide accurate

       wage rate and/or wage statements as required by NYLL § 195(1), (3);

R.    An injunction requiring Defendants to issue the notices and/or corrected notices

       required by NYLL § 195(1), (3) to the Major Wage Class;

S.    Punitive damages;

T.    Reasonable attorneys' fees and costs; and

U.    Such other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by

jury on all questions of fact raised by this Complaint.

Dated:  March 26, 2021
        Whitestone, New York

Respectfully submitted,

By:   /s/ Cyrus E. Dugger_____
Cyrus E. Dugger

THE DUGGER LAW FIRM, PLLC
Gotham Center
28-07 Jackson Ave., 5th Fl.
Long Island City, NY 11101
Tel: (646) 560-3208
Fax: (646) 390-4524
cd@theduggerlawfirm.com

*Attorneys for Plaintiff, the putative class, and the*
*putative collective*