**THE DUGGER LAW FIRM, PLLC**　　　　　　　　　　**FLETCHER LAW**
**Cyrus E. Dugger**　　　　　　　　　　　　　　　　　**Jordan Fletcher**
**Gotham Center**　　　　　　　　　　　　　　**424 Broadway, 11th Fl.**
**28-07 Jackson Ave., 5th Fl.**　　　　　　**New York, New York 10012**
**Long Island City, NY 11101**　　　　　　　　**Tel (212) 320-8945**
**Tel: (646) 560-3208**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JASMINE BURGESS, individually, and on behalf of all those similarly situated, | : : : | **Case No. 1:20 Civ. 02816 (GHW)** |
|  | : : | **ORAL ARGUMENT REQUESTED** |
| Plaintiff, | : : |  |
| v. | : : |  |
| MAJOR MODEL MANAGEMENT INC., and GUIDO DOLCI, | : : : |  |
| Defendants. | : : |  |

## MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' SECOND PARTIAL MOTION TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT………………………………………………………..1

STATEMENT OF FACTS………………………………………………………...2

PROCEDURAL HISTORY………………………………………………………3

STANDARD OF REVIEW…………………………………………………….….4

ARGUMENT………………………………………………………………...5

    I.    The Second Amended Complaint Does Not Violate Rule 8……………………...5

        A.    Rule 8 Provides for Alternative Pleading…………………………………5

        B.    The Complaint's Alternative Pleading is Exactly
            What Rule 8(d) Envisions………………………………………………5

            1.    The Complaint Alleges Three Alternative Legal
                    Theories Based on Common Factual
                    Allegations…………………………………………………...5

            2.    The Factual Allegations Concerning a Power of
                    Attorney Support Alternative Claims…………………………..6

            3.    Plaintiff's Status as an Employee Would Not Be Mutually
                    Exclusive of Defendant Having A Fiduciary Duty
                    to Her Concerning the Subject of the Power of Attorney …………7

            4.    Defendants' Legal Authorities Do Not Actually
                    Support Their Argument…………………………………………..8

        C.    Defendants Do Not Identify Any Factually Inconsistent
            Statements and Confuse Factual Allegations With the Legal
            Claims Arising From Factual Allegations…………………………….9

        D.    Even Assuming *Arguendo* That There is Any Factual
            Inconsistency in the  Sec. Am. Compl. Rule 8 Does
            Not Even Prohibit Alternative
            Factual Allegations………………………………………………10

        E.    Rule 8 Would Not Prohibit Plaintiff's Legal Claims
            on a Motion to Dismiss Even if They Were
            Inconsistent………………………………………………………11

II.      Plaintiff Has Pled Plausible Declaratory Judgment Act Claims…………………………....12

     A.      General Business Law § 185(10) Amended Article 11 Post-
*Agerbrink*………………………………………………………………………...13

     B.      General Business Law §185(10) Created an Implied Private Right of
Action for Violations of GBL § 172……………………………………………..14

          1.      The Legal Standard for Implied Rights of
Action………………………………………………………………………14

          2.      GBL § 185(10) Provides an Implied Private Right of Action
to Prevent Unlicensed Employment Agencies from
Charging or Collecting Fees……………………………………………...15

III.     Plaintiff Has Pled Plausible NYLL and FLSA Retaliation Claims ……………………..19

     A.      Plaintiff Has Exceeded Her Pleading Requirements by Plausibly Pleading a
Prima Facie Case of Retaliation Under the FLSA and
NYLL………………………………………………………………………19

          1.      The Prima Facie Elements of a FLSA and NYLL Retaliation Claim……20

          2.      Plaintiff Has Plausibly Pled Participation in Protected Activity and a
Causal Connection……………………………………………………….20

          3.      Plaintiff Has Plausibly Pled a Materially Adverse Action………………22

CONCLUSION………………………………………………………………………………..25

# TABLE OF AUTHORITIES

<u>CASES</u>

*Acosta v. Off Duty Police Servs.*, 915 F.3d 1050 (6th Cir. 2019)…………………………………..7

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999)……………………………………………………..5

*Agerbrink v. Model Serv., LLC*, 787 F. App'x 22 (2d Cir. 2019)…………………………1, 6, 8

*Agerbrink v. Model Serv. LLC*, 14 Civ. 7841, 2015 U.S. Dist. LEXIS 77821
    (S.D.N.Y. June 16, 2015)………………… ……………………………………........................13

*Andres v. Town of Wheatfield*, No. 17 Civ. 00377, 2020 U.S. Dist. LEXIS 244884
    (W.D.N.Y. Dec. 30, 2020)……………………………………………………………….12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). …………………………………………..……………...4

*Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003)…………….9

*Benjamin v. Koeppel*, 85 N.Y.2d 549 (N.Y. 1995)……………………………………………18

*Boyd v. Larregui*, No. 3:19 Civ.579, 2020 U.S. Dist. LEXIS 180329 (D. Conn. Sep. 30, 2020)…11

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988)……………………….……………..6, 8

*Brown v. Daikin Am., Inc.*, 756 F.3d 219 (2d Cir. 2014) ……………………………..………………5

*Bruno v. Bruno*, 51 A.D.2d 862 (4th Dep't 1976) …………………………………………………18

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)…..……………………………..*passim*

*Chan v. Big Geyser, Inc.,* No. 17 Civ. 06473, 2018 U.S. Dist. LEXIS
    148291 (S.D.N.Y. Aug. 30, 2018)……………………………………………………….20

*Columbia Artists Mgm't, LLC v. Swenson & Burnakus, Inc.*, No. 05 Civ. 7314,
    2008 U.S. Dist. LEXIS 74377 (S.D.N.Y. Sept. 24, 2008)………………………....…..16

*Corcoran v. John F. Trommer, Inc.*, 203 Misc. 37 (N.Y. Sup. Ct. 1952) ……………..……......17

*Deravin v. Kerik*, 335 F.3d 195 (2d Cir. 2003) …………………………………………………...5

*Desiderio v. NASD*, 191 F.3d 198 (2d Cir. 1999) ……………………………………..…..…….4

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) …………………………………..………5

*Dorking Genetics v. United States*, 76 F.3d 1261 (2d Cir. 1996) …………………………………13

*EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247 (2d Cir. 2014) …………………...........4, 5

*Goldberg v. Enterprise Rent-A-Car Co.*, 14 A.D.3d 417 (1st Dep't 2005) …………………19

*Goldberg v. Whitaker House Coop., Inc.*,
    366 U.S. 28, 32, (1961) ……………………………………………………………7

*Gordon v. City of New York*, No. 14 Civ. 6115, 2015 U.S. Dist. LEXIS 70915
    (S.D.N.Y. June 2, 2015)……………… …………………………………….....................5

*Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545 (2d Cir. 2001)….21

*GPIF-I Equity Co. v. HDG Mansur Inv. Servs., Inc.*, 13 Civ. 547, 2014 U.S.
    Dist. LEXIS 55193 (S.D.N.Y. Apr. 21, 2014)……………….....................................20

*Henry v. Daytop Vill.*, 42 F.3d 89 (2d Cir. 1994) ……………………………………………11

*Kinsey v. Cendant Corp.*, 2004 U.S. Dist. LEXIS 23059 (S.D.N.Y. Nov. 16, 2004)………………9

*Lawrence v. NYC Med. Practice, P.C.*, No. 1:18 Civ. 8649, 2019 U.S. Dist. LEXIS
    150408 (S.D.N.Y. Sep. 3, 2019)……………………………………………….…………23

*Leevson v. Aqualife USA Inc.*,
    770 F. App'x 577, 582 (2d Cir. 2019) ……………………………………………...........7

*Li v. Oliver King Enters.*, No. 14 Civ. 9293, 2015 U.S. Dist. LEXIS
102597 (S.D.N.Y. Aug. 4, 2015)…………………………………………………………..20, 22

*Lind v. Vanguard Offset Printers*, 857 F. Supp. 1060 (S.D.N.Y. 1994) ……………………..………9

*Luckenbach Steamship Co. v. United States*, 312 F.2d 545 (2d Cir. 1963)…………………………19

*MacFarlane v. Grasso*, 696 F.2d 217 (2d Cir. 1982)..…………………………………………10

*Madera v. Metro. Life Ins. Co.*, 2002 U.S. Dist. LEXIS 12000,
    No. 99 Civ. 4005 (S.D.N.Y. 2002)……………………………………………………9

*Mazurkiewicz v. NY.C. Health & Hasps. Corp.*, No. 09 Civ. 5962, 2010
U.S. Dist. LEXIS 107697 (S.D.N.Y. Sept. 16, 2010)…………………………………………21

*Mullins v. City of N.Y.*, 626 F.3d 47 (2d Cir. 2010)……………………………..………….....20

*Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co.*,
    239 F. Supp. 3d 761 (S.D.N.Y. 2017) ………………………………………………....18

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
112 F. Supp. 2d 292 (S.D.N.Y. 2000) …………………..…………………12

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 89 F. App'x 287 (2d Cir.
2004) …………………..…………………………………………………………………………………...12

*Nielsen v. Rabin*, 746 F.3d 58 (2d Cir. 2014) …………………………………………….………4

*Nielsen Media Research, Inc. v. Microsystems Software, Inc.*, No. 99 Civ. 10876, 2
002 U.S. Dist. LEXIS 18261 (S.D.N.Y. Sep. 30, 2002)…………………………………………12

*Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382 (S.D.N.Y. 2004) …………..………18

*Nunez v. Metro. Learning Inst., Inc.*, No. 18 Civ. 1757, 2019
    U.S. Dist. LEXIS 185674 (E.D.N.Y. Oct. 24, 2019)……………………………………………..21

*Padilla v. Yeshiva Univ.*, 691 F. App'x 53 (2d Cir. 2017)……………………………………….4

*Padre Shipping, Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328 (S.D.N.Y. 2008)………………11

*Perrone v. Amato*, No. 09 Civ. 0316, 2010 U.S. Dist. LEXIS 148202,
    at *45 (E.D.N.Y. Aug. 30, 2010)…………………………………………………………..6

*People ex rel. Armstrong v. Warden*, 183 N.Y. 223 (N.Y. 1905)…………………………………19

*Rhodes v. Herz*, 84 A.D.3d 1 (1st Dep't 2011) ……………………………………14, 15, 16, 19

*Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ……………………………………………………11

*Rivera v. JP Morgan Chase*, 815 F. App'x 603 (2d Cir. 2020)……………………………….21

*Rodriguez v. Nat'l Golf Links of Am.*, No. 19 Civ. 7052, 2020 U.S. Dist.
    LEXIS 100138 (E.D.N.Y. June 8, 2020)…………………………………………...22, 23

*Saleem v. Corp. Transp. Grp., Ltd.*,
    854 F.3d 131 (2d Cir. 2017) …………………………………………………………..6, 8

*Samuels v. Mackell*, 401 U.S. 66 (1971) ……………………………..…………………………18

*Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166 (N.Y. 2013) ……………………………………16

*Schlessinger v. Valspar Corp.*, 723 F.3d 396 (2d Cir. 2013) ………………………………………16

*Schlessinger v. Valspar Corp.*, 686 F.3d 81 (2d Cir. 2012)………………………………………18

*Schlessinger v. Valspar Corp.*, 817 F. Supp. 2d 100 (E.D.N.Y. 2011)……………………………17

*Sheehy v Big Flats Community Day*, *Inc*., 73 N.Y.2d 629 (N.Y. 1989). ……………………15, 16

*Sigall v. Zipcar, Inc.*, 13 Civ. 4552, U.S. Dist. LEXIS 20909 (S.D.N.Y. Feb. 24, 2014)…………19

*Thistle v. Englert*, 479 N.Y.S.2d 921 (4th Dep't 1984)…………………………..…………16, 18

*Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447 (S.D.N.Y. 2008)……… 22, 23, 20, 21

*Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) …………………………18

*U.S. v. Space Hunters, Inc.*, 429 F.3d 416 (2d Cir. 2005)………………..……………………4

*Walker v. Carter,* No. 12 Civ 5384, 2014 U.S. Dist. LEXIS
123247 (S.D.N.Y. Sep. 3, 2014)…… ………………………….………………………...12

*West-Fair Elec. Contractors v. Aetna Casualty & Sur. Co.*,
872 F. Supp. 1212 (S.D.N.Y. 1994) …………………………………….................17

*Williams v. City of Albany*, 271 A.D.2d 855 (3rd Dep't 2000) ……….……….....………17

*Williams v. Metro N. R.R.*, No. 16 Civ. 1141, 2016 U.S. Dist. LEXIS 109299
(S.D.N.Y. Aug. 17, 2016)……………………………………………………………..21

*Woodnotch Farms Inc. v. Agri-Mark, Inc.,* No. 20 Civ.180, 2021
U.S. Dist. LEXIS 72534 (D. Vt. Apr. 13, 2021)…………………………………………..12

*Yngwie Malmsteen v. Berdon*,
No. 05 Civ. 00958 595 F. Supp 2d 299, 306-08 (S.D.N.Y. Jan 20, 2009)…………………7

*Zaubler v. Picone*, 100 A.D.2d 620 (2d Dep't 1984)………………………………..………….6

<u>STATUTES</u>

Fed. R. Civ. P. 8(d)…...………………………………………..……………….5, 6, 10, 11

GBL § 171………………………………………….……………………………3, 12, 18

GBL § 172…………………………………………………………………….. *passim*

GBL § 185(10) …………………………………………………………………...*passim*

NY Lien § 34………………………………………………………………………..17

NY Gen. Oblig. § 5-326……………………….…………………………………………………17

NY Gen. Oblig. § 5-311……………………….……………………………………………………17

NY General Obligations Law § 5-1505. ……………………….……………………………3, 6, 8

28 U.S.C. § 2201-02……………………………………………………………………………….3

29 U.S.C. § 206………………………………………………………………………………….2

29 U.S.C. § 215…………………………………………………………………………………..21

NYLL ¶ 191…………………………………………………………………………………...…2

NYLL ¶ 193 ……………………………………………………………………………………….2

NYLL ¶ 195………………………………………………………………………………………….2

<u>OTHER AUTHORITIES</u>

2A JAMES W. MOORE & JO D. LUCAS, MOORE'S FEDERAL PRACTICE
P 8.32 (2d ed. 1994) ……………………………………………………………………………10

5 Fed. Prac. &  Proc. § 1282, "Alternative and Hypothetical Pleadings," (3d ed. 2021)………..10

NY L.2014, c. 501 (A. 9396-B), Sponsor's Memo (eff. Dec. 17, 2014)…………………....…13, 15

NY L.2015, c. 84 (S. 1317), Sponsor's Memo (eff. July 23, 2015)……………………….……..13

## PRELIMINARY STATEMENT

Defendants' second partial motion to dismiss, challenging the legal plausibility of Plaintiff's claims under the Fair Labor Standards Act, New York Labor Law, and Declaratory Judgment Act should be denied in its entirety.

As an initial matter, Defendants' hyperbolic brief attempts to distract from the simple question now before the Court -- whether or not Plaintiff, individually,[1] has pled plausible Fair Labor Standards Act and New York Labor Law misclassification claims. The Second Circuit, after six years of intensive litigation by the undersigned counsel, has already found that similar FLSA and NYLL misclassification claims by models against their modeling agency, with similar power of attorney language in their modeling agreements, are not only "plausible," but sufficiently compelling to require a jury trial. *See Agerbrink v. Model LLC*, 787 F. App'x 22, 26 (2d Cir. 2019); *Agerbrink v. Model LLC*, ECF, No. 14 Civ. 7841, ECF No. 16-1, Ex. A (Agreement ¶ 3).

Nonetheless, despite a prior pre-motion letter to the Court, ECF No. 36, a Court conference, ECF No. 38, a first motion to dismiss, ECF No. 39, and now seven pages of argument in Defendants' second motion to dismiss attempting to explain their Rule 8 arguments, Defendants are still unable to cite either a single: (1) inconsistent factual allegation; or (2) case holding that there is something unique about Plaintiff's alternative pleading of FLSA and NYLL wage and hour claims and breach of fiduciary duty claims  that would violate Rule 8's alternative pleading provision. Defendants' arguments confuse inconsistent *factual* allegations with the alternatively pled l*egal theories* contained in the Second Amended Complaint ("Sec. Am. Compl.").

Further, Defendants' arguments regarding Plaintiff's Declaratory Judgement Act claims ignore the recent amendment of GBL § 185 to include a new subsection, *i.e.* § 185(10). Via that

---

[1]    Defendants have not challenged the adequacy of any of the class allegations concerning the wage and hour, breach of fiduciary duty or Declaratory Judgment Act claims.

amendment, the New York Legislature created a private right of action to prevent unlicensed employment agencies like Major from charging or collecting fees for services rendered from artists during the time-period they operated without a license. Significantly, in the context of civil litigation, GBL § 185(10) explicitly requires courts to void any agreements that an unlicensed employment agency seeks to enforce. This provision provides a statutory basis for Plaintiff's declaratory judgment claim, and it has never been addressed in any published decision, including the decisions cited by Defendants in their brief.

Finally, Defendants' arguments concerning Plaintiff's FLSA and NYLL retaliation claims fail to recognize that: (1) Plaintiff's filing of an amended complaint adding class and collective claims was protected activity; (2) Plaintiff has pled causation based on temporal proximity of five weeks; and (3) a modeling agency launching a lawsuit against a former model's current modeling agency and booker -- *i.e.*, their current source of income -- is, in "context," plausibly "harmful to the point that [it] could well dissuade a reasonable [model] from making or supporting" a wage claim. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006).

## STATEMENT OF FACTS

Plaintiff Jasmine Burgess worked as a fashion model for Defendant Major from May 2012 through April 2017, providing modeling services to Major's fashion industry clients. ECF No. 49 (Sec. Am. Compl. SAC ¶¶ 2-8). Via this lawsuit -- and on behalf of herself, and a putative class and collective of former Major models -- Plaintiff alleges class claims for: (1) unpaid and untimely minimum wages, unpaid earned wages, and illegally-deducted wages above the ten percent cap permitted by General Business Law § 185, wage rate and wage statement claims, and related liquidated damages pursuant the FLSA and NYLL, *see* 29 U.S.C. § 206 and NYLL ¶¶ 191, 193, Sec. Am. Compl. ¶¶ 2-4, 266, 293-395; (2) class claims for breach of fiduciary duty concerning

Defendants' receipt, retention, use, and misrepresentations, concerning models' earnings, pursuant to its required "power of attorney" language in its modeling agreements, Sec. Am. Compl. ¶¶ 5, 146-48, 267-68, 396-443, 415-433; N.Y. Gen. Oblig. Law § 5-1505; and (3) Declaratory Judgment Act class claims seeking declarations that Major: (i) operated as an "employment agency" within the meaning of GBL § 171 during the period April 3, 2014 through January 1, 2020; (ii) was unlicensed during this entire period of time, in violation of GBL § 172; and (iii) therefore, pursuant to GBL § 185(10), has no legal right to charge or collect any contractual fee for modeling services from Plaintiff or any other member of the putative class. 28 U.S.C. § 2201-02; Sec. Am. Compl. ¶¶ 6, 269, 501-09.

On February 9, 2021, in response to Plaintiff amending her complaint to add class and collective action wage and hour claims, Major filed a retaliatory state court proceeding against Plaintiff's current modeling agency and agency "booker" -- *i.e.*, Plaintiff's current source of income. *See* May 7, 2021, Declaration of Cyrus E. Dugger ("Dugger Dec."), Ex. A. On March 3, 2021, Defendants amended their initial retaliatory state court complaint to explicitly add Plaintiff's name to the complaint as one of the listed models allegedly in breach of their contract. *Id.* Exhibit B ¶¶ 38, 49-52, 54.

## PROCEDURAL HISTORY

Plaintiff filed this action on April 3, 2020. ECF No. 1. The Court held an initial conference on December 1, 2020. Plaintiff filed her First Amended Complaint on January 1, 2021. ECF No. 49. On January 22, 2021, Defendants filed a pre-motion letter requesting a conference on their anticipated motion to dismiss based on Rule 8, ECF No. 35, to which Plaintiff responded, ECF No. 37, and on which the Court held a conference on February 1, 2020, ECF 38. On March 3, 2021, immediately after becoming aware of Defendants' retaliatory state court filing, Plaintiff

requested leave to amend her complaint to add retaliation and additional class claims, ECF No. 42, which the Court confirmed she could do as of right on March 9, 2021. ECF No. 44. On March 17, 2021, the Court granted the parties' jointly requested extension of time for Plaintiff to file her Sec. Am. Compl. in order to explore the possibility of mediation, ECF Nos. 47-48, but the parties were unable to reach agreement on attending a mediation. Plaintiff filed her now-operative Second Amended Complaint on March 26, 2021, adding additional wage and hour and DJA class claims pursuant to NYLL §§ 191, 193, 195, and individual FLSA and NYLL retaliation claims. ECF No. 49. On April 16, 2021, Defendants filed their second motion to dismiss. ECF Nos. 52-53.

## STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion to dismiss, a court must "accept all of plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *U.S. v. Space Hunters, Inc*., 429 F.3d 416, 424 (2d Cir. 2005) (quoting *Desiderio v. NASD*, 191 F.3d 198, 202 (2d Cir. 1999)); *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In turn, the Plaintiff must "assert nonconclusory factual matter sufficient to nudge[] [his] claims . . . across the line from conceivable to plausible." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal, 556 U.S. 662, 680, (2009)).

In the particular context of employment cases, and therefore, the wage and hour retaliation allegations at issue here, Plaintiff "need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss." *Id.* at 254 (internal citations omitted); *Padilla v. Yeshiva Univ.*, 691 F. App'x 53, 54 (2d Cir. 2017) (plaintiff's obligation is to "plausibly allege facts that give rise to an inference of retaliation or discrimination."); *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) ("allegation of facts supporting a minimal plausible inference of discriminatory intent suffices . . . ."); *Brown v. Daikin Am., Inc*., 756 F.3d 219, 298 n.10 (2d Cir.

2014) (citation omitted) (the complaint need only be "facially plausible and allege sufficient facts to give the defendant fair notice of the basis for the claim"). In fact, "the plaintiff's burden at this stage is 'very lenient, even *de minimis*.'" *Gordon v. City of New York*, No. 14 Civ. 6115, 2015 U.S. Dist. LEXIS 70915, at *15 (S.D.N.Y. June 2, 2015) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)); *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999); *Columbia Univ.*, 831 F.3d at 55 n.8 (collecting cases) ("[W]e have . . . cautioned district courts against imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage.").

## ARGUMENT

### I.    The Second Amended Complaint Does Not Violate Rule 8

#### A.    Rule 8 Provides for Alternative Pleading

Fed. R. Civ. P. 8(d) provides that: (1) "[a] party may set out two *or more* statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones;" (2) "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient"; and (3) "[a] party may state as many separate claims .  .  .  as it has, regardless of consistency." Fed. R. Civ. P. 8(d) (emphasis added). This is precisely what the Sec. Am. Compl. does here.

#### B.    The Complaint's Alternative Pleading is Exactly What Rule 8(d) Envisions

##### 1.    The Complaint Alleges Three Alternative Legal Theories Based on Common Factual Allegations

The Second Amended Complaint alleges three alternative legal theories -- that Plaintiff and the putative class and collective: (1) were employees under the FLSA and NYLL wage and hour provisions; (2) were not employees but *were* owed a fiduciary duty by Defendants concerning their funds received and held through Defendants' power of attorney; or (3) were both employees *and* owed a fiduciary duty concerning their funds received and held through Defendants' power of attorney. Sec. Am. Compl. ¶¶ 69, 291, 398, 416. These alternative statements of Plaintiff's claims,

based on the *same* underlying *factual* allegations are the very "two or more statements of a claim . . . alternatively or hypothetically . . . regardless of consistency," specifically contemplated by Fed. R. Civ. P. 8(d).

### 2. The Factual Allegations Concerning a Power of Attorney Support Alternative Claims

As an initial matter, the common factual allegations concerning Defendants' inclusion of power of attorney language in its modeling agreements supports *both* Plaintiff's wage and hour and breach of fiduciary duty claims. Sec. Am. Compl. ¶ 93, 146-47. With respect to the wage and hour claims, one of the factors of the economic reality test for employee status is the "degree of control exercised by the employer over the worker[]." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988). Defendants' possession of a power of attorney to act on behalf of and legally bind their models -- potentially without their knowledge -- represents an unprecedented "degree of control" that weighs heavily in favor of employee status under the economic reality test. *Id.* at 1058; *see also Zaubler v. Picone*, 100 A.D.2d 620, 621 (2d Dep't 1984) (characterizing the scope of power provided by a power of attorney as "extraordinary"). This level of control over Plaintiff's work favors a finding that Plaintiff was an employee, because it means Plaintiff necessarily, "depend[ed] upon . . . [Defendants'] business for the opportunity to render service." *Agerbrink*, 787 F. App'x at 24 (quoting *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017) (quoting *Brock*, 840 F.2d at 1059).

In turn, with respect to the breach of fiduciary duty claim, the *factual* allegation of Defendants' inclusion of power of attorney language their modeling agreements, supports the *legal* allegation of a resulting statutory or common law fiduciary duty to Plaintiff and the members of the putative class. *See* NY General Obligations Law § 5-1505(2) ("An agent acting under a power of attorney has a fiduciary relationship with the principal."); *Perrone v. Amato*, No. 09 Civ. 0316,

2010 U.S. Dist. LEXIS 148202, at *45 (E.D.N.Y. Aug. 30, 2010) ("New York courts impose fiduciary duties on attorneys-in-fact."); *Yngwie Malmsteen v. Berdon*, 595 F. Supp 2d 299, 306-08 (S.D.N.Y. Jan 20, 2009) (business manager has fiduciary duty to act in client's interest and is customarily responsible for maintaining awareness of all professional and personal income earned by its client and ensuring the collection of same). Plaintiff plausibly alleges this legal duty was breached by, *inter alia*, Defendants' failure to provide, mishandling of, and misrepresentations concerning models' earnings held funds held pursuant to the power of attorney. ECF No. 32 (Sec. Am. Compl. ¶¶ 244-45, 399, 400-12, 418-31).

### 3. Plaintiff's Status as an Employee Would Not Be Mutually Exclusive of Defendant Having A Fiduciary Duty to Her Concerning the Subject of the Power of Attorney

Although the wage and hour and breach of fiduciary claims are pled as alternative claims, they are also pled, in the second alternative, as co-extensive claims. Indeed, there is nothing inherently inconsistent regarding Plaintiff: (1) being an employee of Defendants under the economic reality test; and (2) Defendants having a fiduciary duty to her concerning the subject matter of her monies pursuant to the power of attorney. *See Leevson v. Aqualife USA Inc.*, 770 F. App'x 577, 582 (2d Cir. 2019) (holding that "a worker can be both an employee and an independent contractor concurrently for one employer"); *see also Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32, (1961) ("There is nothing inherently inconsistent between the coexistence of a proprietary and an employment relationship. . . . We fail to see why a member of a cooperative may not also be an employee of the cooperative. In this case the members seem to us to be both 'members' and 'employees.'"); *Acosta v. Off Duty Police Servs.*, 915 F.3d 1050, 1052 (6th Cir. 2019) ("The way we work in America is changing. The relationships between companies and their workers are more fluid and varied than in decades past.").

First, there is nothing, inherently, mutually exclusive regarding Plaintiff relying on Defendants for the "opportunity to provide [modeling] services," *Agerbrink*, 787 F. App'x at 24; *Saleem*, 854 F.3d at 139; *Brock*, 840 F.2d at 1059, and Defendants simultaneously having a fiduciary obligation to Plaintiff regarding the handling of her funds because of the power of attorney language that Defendants require in their modeling agreements. *See* NY General Obligations Law § 5-1505(2); *Perrone*, 2010 U.S. Dist. LEXIS 148202, at *45; *Berdon*, 595 F. Supp 2d at 306-08. Second, Plaintiff could have been an employee of Defendants for the *very reason* that Defendant *exercised* control over her, by *breaching* and *ignoring* its fiduciary duty to her arising from its power of attorney, while nonetheless *utilizing* its "extraordinary" powers, *Zaubler*, 100 A.D.2d at 621, to control the terms and conditions of her work and compensation. *Brock*, 840 F.2d at 1058. And finally, as noted at the outset, the Second Circuit has already concluded that a model alleging similar misclassification claims, who had similar power of attorney language in her modeling agreement, had claims that were not only plausible, but that could prevail at trial. *See Agerbrink*, 787 F. App'x at 26; Agerbrink v. Model Serv. LLC, No 14 Civ. 7841, ECF No. 16-1 (Ex. A to Am. Compl.) (Modeling Agreement ¶ 3)).

### 4. Defendants' Legal Authorities Do Not Actually Support Their Argument

Even Defendants' own legal authorities do not squarely support their arguments. Most of Defendants' authorities largely pre-date *Twombly-Iqbal's* modern pleading precedents, do not even *mention* Rule 8 or alternative pleading standards, and/or address motions for summary judgment. Most importantly, Defendants' legal authorities stand primarily only for the uncontested

proposition that being an employer, *without more*, does not in and of itself, create a fiduciary duty.[2] But no one is actually making that argument here.

Instead, Plaintiff here alleges that the power of attorney language created an *independent* fiduciary legal duty -- pursuant to statute and/or the common law -- regardless of Plaintiff and Defendant *also* had an employment relationship. And even Defendants concede that alternative (or even contradictory) legal claims do not violate Rule 8. *See* Defs.' Br. at 7 (citing *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 615 n.10 (S.D.N.Y. 2003) ("But legal allegations -- *e.g.*, whether that agreement amounted to a 'contract' -- may be pled in the alternative. Indeed, legal theories may be pled in the alternative even if the alternatives are wholly contradictory")).

### C. Defendants Do Not Identify Any Factually Inconsistent Statements and Confuse Factual Allegations with the Legal Claims Arising From Factual Allegations

Simply put, nowhere do Defendants actually identify the supposedly inconsistent factual allegations of which they complain. Whether Defendants argument is styled as a prohibition on *any* factually inconsistent allegations, or merely factually inconsistent allegations within the *same claim*, a review of the Sec. Am. Compl. reveals no inconsistent factual allegations. While the Complaint offers alternative *legal* claims arising from these factual allegations, there is no dispute between the parties that such alternative legal claims are clearly permitted by Rule 8.

The closest Defendants come to specifying what they claim to be supposedly factually inconsistent allegations, is to complain, *inter alia*, "Plaintiff alleges MMMI had 'the power to hire,

---

2      *See, e.g, Kinsey v. Cendant Corp.*, No. 04 Civ. 0582, 2004 U.S. Dist. LEXIS 23059, at *40 (S.D.N.Y. Nov. 16, 2004) (emphasis added) ("The law . . . of New York . . . will not imply a fiduciary relationship *based merely on* [plaintiff's] status as an employee."); *Lind v. Vanguard Offset Printers*, 857 F. Supp. 1060, 1067 (S.D.N.Y. 1994) (holding only that allegation of employment relationship did not by itself establish a fiduciary relationship); *Madera v. Metro. Life Ins. Co.*, 99 Civ. 4005, 2002 U.S. Dist. LEXIS 12000, at *25 (S.D.N.Y. July 2, 2002) (holding that pleading employer-employee relationship alone, with no other facts to support fiduciary claim, was insufficient).

fire, and/or constructively discharge Plaintiff . . . MMMI 'hired Plaintiff,' that MMMI set Plaintiff's wages, had the power to withhold and/or delay payment to Plaintiff, controlled Plaintiff's schedule" while also "claim[ing] a fiduciary relationship existed between MMMI and Plaintiff." Defs.' Br. at 11-12. But the former allegations about hiring, firing, discharging, setting wages, withholding money, and controlling scheduling are *factual* allegations, while the latter allegation concerning the existence of a fiduciary duty is a *legal* allegation, *i.e.* it asserts the *legal* effect of the power of attorney language in Major's modeling agreements. Defendants thus confuse factual allegations with legal claims, legal allegations, and legal theories of liability.

In sum, all of Plaintiff's claims are based on the same set of factual allegations, including the common factual allegation of the existence of power of attorney language in Major's modeling agreement, and this factual allegation is helpful to each of Plaintiff's legal claims because it supports: (1) Defendants' exercise of control supportive of employee status under the FLSA and NYLL economic reality test; and (2) the existence of the legal status of a fiduciary relationship as one aspect of Plaintiff's breach of fiduciary duty claim.

### D.    Even Assuming *Arguendo* That There is Any Factual Inconsistency in the Sec. Am. Compl. Rule 8 Does Not Actually Prohibit Alternative Factual Allegations

Although the Court need not address this issue here given the absence of any factually inconsistent allegations in the Sec. Am. Compl., contrary to Defendants' assertion, Rule 8 does not actually prohibit *factually* inconsistent alternative or hypothetical pleading. *See* 5 Fed. Prac. & Proc. § 1282 Alternative and Hypothetical Pleadings, (3d ed.2021) (emphasis added) (collecting cases) (citing *MacFarlane v. Grasso,* 696 F.2d 217, 224-25 (2d Cir. 1982) ("[A] plaintiff may make effective use the alternative or hypothetical pleading that is permitted by Rule 8(d)(2) in presenting the factual background or legal theories supporting his claim for relief"); *Henry v. Daytop Vill.*, 42 F.3d 89, 95 (2d Cir. 1994) (quoting 2A JAMES W. MOORE & JO D. LUCAS,

MOORE'S FEDERAL PRACTICE P 8.32, at 8-214 to 8-215 (2d ed. 1994) ("a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency. 'The inconsistency may lie either in the statement of the facts or in the legal theories adopted . . .'")); *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 89 F. App'x 287, 289 (2d Cir. 2004) ("It is permissible for [a party] . . . to make conflicting assertions -- it didn't receive the Appraisal, but if it did, the Appraisal was misleading."); *Boyd v. Larregui*, No. 19 Civ. 579, 2020 U.S. Dist. LEXIS 180329, at *9 (D. Conn. Sep. 30, 2020) (Rule 8(d) "allows a plaintiff to plead inconsistently, and the inconsistency may lie with the statement of the facts or the legal theories adopted.'"); *Padre Shipping, Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 333 (S.D.N.Y. 2008) ("plaintiffs are allowed to assert inconsistent facts in support of alternative claims, and courts may not construe allegations regarding one claim to be an admission against another").

Thus, Defendants' contention that the complaint alleges inconsistent facts -- even if accurate -- would not support the dismissal of Plaintiff's claims for this additional reason.[3]

### E. Rule 8 Would Not Prohibit Plaintiff's Legal Claims on a Motion to Dismiss Even if They Were Inconsistent

Defendants assert that should the Court conclude that Plaintiff's legal claims were inconsistent, the remedy here would be the dismissal of one of those claims -- of Defendants' choosing -- at the outset of the litigation. But even if the Court were to conclude that Plaintiff's

---

[3]     While also unnecessary for the Court to address here, Defendants' contention that Plaintiff may not "plead inconsistent facts within the same claim" also misstates the rule on alternative pleading within the Second Circuit. Defendants rely on *Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) for this proposition. But this decision cites only *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 112 F. Supp. 2d 292, 307 (S.D.N.Y. 2000), and *Pierce,* does not discuss Rule 8, was likely only intended to apply to cases involving heightened pleading of fraud claims, and -- most importantly -- was vacated by the Second Circuit misapplying Rule 8's alternative pleading standard in the very same manner Defendants ask the Court to to do here. *See Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 89 F. App'x 287, 289 (2d Cir. 2004).

legal claims are inherently inconsistent -- a provision for which Defendants have provided no actual legal support -- the remedy would occur at a later stage of the litigation on a motion for summary judgment. At that later point, *Plaintiff* might be forced to *choose* between any inconsistent claims, but that would be question for another day after the parties have had the benefit of discovery. *See, e.g.*, *Woodnotch Farms Inc. v. Agri-Mark, Inc.*, No. 20 Civ. 180, 2021 U.S. Dist. LEXIS 72534, at *20 (D. Vt. Apr. 13, 2021) ("claims should not be dismissed until the viability of each of legal theory is established through discovery"); *Andres v. Town of Wheatfield*, No. 17 Civ. 377, 2020 U.S. Dist. LEXIS 244884, at *26-27 (W.D.N.Y. Dec. 30, 2020) (collecting cases) ("[A]s the case progresses to trial, Plaintiffs may be required to elect a theory of recovery"); *Nielsen Media Research, Inc. v. Microsystems Software, Inc*., 99 Civ. 10876, 2002 U.S. Dist. LEXIS 18261, at *22-23 (S.D.N.Y. Sep. 30, 2002) (quoting *Dorking Genetics v. United States*, 76 F.3d 1261, 1269 (2d Cir. 1996)) ("two claims may be submitted as alternatives to the jury'"). Thus, even if Plaintiff's claims were held to be inconsistent, at worst, Plaintiff "may be unable to recover on both alternative theories," but this would not warrant dismissal of either claim on a motion to dismiss. *Walker v. Carter*, No. 12 Civ. 5384, 2014 U.S. Dist. LEXIS 123247, at *4 (S.D.N.Y. Sep. 3, 2014).

## II.    Plaintiff Has Pled Plausible Declaratory Judgment Act Claims

Plaintiff's Twelfth Cause of Action properly states a claim for relief because employees (and former employees) may obtain declaratory relief against unlicensed employment agencies pursuant to GBL § 185(10). The SAC plausibly alleges and seeks a declaration that: (1) that Major operated as an "employment agency" within the meaning of GBL § 171 during the period April 3, 2014 through January 1, 2020; (2) that Major has been unlicensed during this entire period of time, in violation of GB L § 172; and therefore, (3) pursuant to GBL § 185(10), Major has no legal right

to charge or collect any contractual fee for modeling services from Plaintiff or any other member

of the putative class. ECF No. 49 (SAC ¶¶ 6, 104-06, 269, 271-74, 502-09).

Defendants are correct that a similar request for declaratory relief in a prior modeling

lawsuit was denied by Judge Oetken in 2015, based on Judge Oetken's determination that the prior

version of Article 11 did not afford civil litigants a private right of action. *See Agerbrink v. Model*

*Serv. LLC*, 14 Civ. 7841, 2015 U.S. Dist. LEXIS 77821, at *7 (S.D.N.Y. June 16, 2015). What

Defendants fail to mention, however, is that after the *Agerbrink* lawsuit was filed in late 2014, the

New York legislature amended GBL § 185 to add an entirely new subparagraph, *i.e.*, § 185(10),

to "provide an additional enforcement mechanism" by permitting aggrieved employees to use an

employment agency's unlicensed status in civil litigation to void the employment agreement and

prevent the agency's collection of fees. NY L.2014, c. 501 (A. 9396-B), Sponsor's Memo (eff.

Dec. 17, 2014) attached as Exhibit C to Dugger Decl*; see also* NY L.2015, c. 84 (S. 1317),

Sponsor's Memo (eff. July 23, 2015), attached as Exhibit D to Dugger Decl. [4]

The addition of GBL § 185(10) created an implied private right of action for civil

enforcement of GBL § 172's licensing requirement, which permits Plaintiff's declaratory

judgment claim to go forward. This new outcome from the amended statute squares entirely with

Judge Oetken's reasoning in *Agerbrink* and -- more importantly -- it aligns with the holdings of

the Second Circuit and New York appeals court cases upon which *Agerbrink* relied.

## A.    General Business Law § 185(10) Amended Article 11 Post-*Agerbrink*

As finalized in July 2015, GBL § 185(10) provides:

---

[4]    Subparagraph 10 was first enacted on December 17, 2014 and then amended in material ways on July 23, 2015, *i.e.*, six weeks after Judge Oetken's Article 11 decision in *Agerbrink*. The *Agerbrink* parties did not raise, nor did Judge Oetken consider, the impact of the addition of subsection 10 to GBL § 185.
The *Agerbrink* lawsuit, filed several months before the addition of GBL § 185(10), had relied on the then-existing provisions of GBL § 185(5), which merely caps fees for employment agencies at 10%.[4]

Notwithstanding any other provision of law to the contrary, <u>no fee may be charged or collected for services rendered by an employment agency not licensed pursuant to section one hundred seventy-two of this article at the time such services were rendered.</u> <u>In an action to collect a fee, the court shall void all or any part of an agreement or contract with an employment agency that did not have a valid license at the time the contract was entered into or services were rendered;</u> however, such contract shall not be considered void if a court finds a good faith effort by an employment agency to maintain its license despite clerical error or delay by the department of labor or the New York city department of consumer affairs.

GBL § 185(10) (emphasis added).

As shown in the portion underlined above, this new text added three crucial elements to Article 11 that did not exist in the version of the statute considered by *Agerbrink* or the New York Appellate Division case, *Rhodes v. Herz*, upon which *Agerbrink* relied. First, GBL § 185(10) prohibits unlicensed employment agencies from charging or collecting fees. Second, it explicitly provides for private enforcement of this prohibition in the context of civil litigation – whereas Article 11 previously allowed only for administrative enforcement of § 172 licensing violations by New York State and City agencies. Third, GBL § 185(10) explicitly *requires* courts to invalidate contracts of unlicensed agencies -- whereas the prior version of GBL §§ 172 and 185 afforded no such voidness remedy, whether to civil litigants or otherwise. The legislature's stated purpose for the new enforcement scheme and remedies was to provide additional protections to "performing artists, especially . . . younger and more inexperienced artists who may not be sophisticated in their dealings with agents." Dugger Decl. Ex. C and D (NY L.2014, c. 501 (A. 9396-B), Sponsor's Mem).

**B.      General Business Law § 185(10) Created an Implied Private Right of Action**

### 1.   The Legal Standard for Implied Rights of Action

Under New York law, in the absence of explicit statutory authorization, a private right of action may be implied if three factors are satisfied: "(1) whether the plaintiff is one of the class for

whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Sheehy v Big Flats Community Day*, *Inc*., 73 N.Y.2d 629, 633 (N.Y. 1989). "Legislative intent is thus the linchpin in any case where a private right of action is to be implied." *Rhodes v. Herz*, 84 A.D.3d 1, 9 (1st Dep't 2011).

### 2. GBL § 185(10) Provides an Implied Private Right of Action to Prevent Unlicensed Employment Agencies from Charging or Collecting Fees

In *Rhodes*, a First Department Article 11 case decided prior to the enactment of GBL § 185(10), the plaintiff sought to invalidate her contract with her employment agency based on the agency's violation of GBL § 172's licensing requirement. The First Department specifically found that the first two *Sheehy* factors were satisfied, in that (a) "[c]ertainly, plaintiff, who alleges to have contracted with defendants for the procurement of employment, is within the class article 11 was enacted to benefit"; and (b) "To the extent that a private action would deter future unlawful behavior by defendants and other employment agencies and agents, an implied private right of action would wholly promote the legislative purpose." *Id.* at 13. However, the appeals court ultimately denied relief, finding that a private right of action would be "inconsistent with the legislative scheme" because previous amendments to Article 11 had "delegated all enforcement" exclusively to the New York State Department of Labor (and to the NYC Department of Consumer Affairs under City administrative law). *Id.*

Shortly after *Rhodes*, however, the New York legislature enacted GBL § 185(10) specifically to provide "an additional enforcement mechanism" for GBL § 172's licensing requirement by "prohibiting unlicensed agents from charging or collecting fees" and affording artists a right to void their contracts in the context of civil litigation. NY L.2014, c. 501 (A. 9396-B), Sponsor's Memo. The effect of the statutory change embodied in §185(10) -- and the legislative

intent behind it -- was that enforcement of GBL § 172 would no longer be delegated exclusively to governmental agencies; private litigants could now enforce it, as well. This change alone compels a finding that *Sheehy*'s third prong is satisfied because an implied private right of action is now "consistent with the legislative scheme." *Sheehy*, 73 N.Y.2d at 633. *See also Rhodes*, 84 A.D.3d at 10-11 ("whether a private right of action is consistent with the legislative scheme often depends in large measure on whether the statute has a potent or extensive enforcement mechanism and whether that method of enforcement was intended to be exclusive."). Further, given that § 185(10) explicitly requires courts to void the contracts of unlicensed agencies – which has comparable (if not greater) effect as the relief that Plaintiff seeks via her declaratory judgment claim here – there is no risk that granting relief to Plaintiff would be "out of proportion to the requirements of public policy or appropriate individual punishment." *Columbia Artists Mgm't, LLC v. Swenson & Burnakus, Inc.*, 05 Civ. 7314, 2008 U.S. Dist. LEXIS 74377, at *23, (S.D.N.Y. Sept. 24, 2008) (quoting *Thistle v. Englert*, 479 N.Y.S.2d 921, 922 (4th Dep't 1984)).

In *Schlessinger v. Valspar Corp.*, another case heavily relied upon by *Agerbrink* and which came down after *Rhodes*, the New York Court of Appeals examined this exact same question, certified to it by the Second Circuit, with respect to another state law: whether a plaintiff could seek a declaration of contractual invalidity where the contract itself was contrary to the New York statute. The Court of Appeals answered in the negative, reasoning that (a) the statue at issue did not explicitly render the offending contract provision "null and void" – in contrast to other sections of the General Business Law that had elsewhere been held privately enforceable; and (b) the statute at issue did not create a private right of action because "the legislature chose to assign enforcement exclusively to government officials." 21 N.Y.3d 166, 171 (N.Y. 2013) ("*Schlessinger II*"); *see also Schlessinger v. Valspar Corp.*, 723 F.3d 396, 398-99 (2d Cir. 2013) ("*Schlessinger III*")

(recognizing exclusive governmental enforcement and the absence of statutory language voiding contracts to be the two determining factors in the whether plaintiffs could seek a declaration of contractual voidness).

Here, by contrast, GBL § 185(10) explicitly includes both of the elements whose absence was held to be dispositive in *Schlessinger II* and *III* -- *i.e.*, a civil enforcement mechanism available to private parties and an explicit judicial remedy of contractual voidness. New York courts have regularly permitted plaintiffs to affirmatively enforce similar statutory prohibitions without the need for an express private right of action under the prohibiting statute. *See, e.g.*, *West-Fair Elec. Contractors v. Aetna Casualty & Sur. Co.*, 872 F. Supp. 1212, 1213-14 (S.D.N.Y. 1994) (permitting plaintiff to enforce NY Lien § 34, which renders void and unenforceable agreements in which the right to enforce a lien is waived); *Williams v. City of Albany*, 271 A.D.2d 855, 856-57 (3rd Dep't 2000) (enforcing NY Gen. Oblig. § 5-326, which renders void and unenforceable certain agreements exculpating liability for negligence); *Corcoran v. John F. Trommer, Inc.*, 203 Misc. 37, 39 (N.Y. Sup. Ct. 1952) (permitting contract and *quantum meruit* claims based upon Civil Rights Law provision rendering void an agreement to refrain from joining a union); *Bruno v. Bruno*, 51 A.D.2d 862, 862 (4th Dep't 1976) (finding marital separation agreement's support provisions void based on conflict with Gen. Oblig. § 5-311). Indeed, the federal District Court in *Schlessinger* acknowledged this longstanding practice, observing that, just like GBL § 185(10) -- though unlike the law at issue in *Schlessinger* – "[e]ach of the[se] statutes . . . acts to void the improper clause found within the contract. Therefore, a breach of contract claim implicating these statutes operates from the premise that the cited statutes have already rendered the provision null and void." *Schlessinger v. Valspar Corp.*, 817 F. Supp. 2d 100, 106 (E.D.N.Y. 2011); *see also Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co.*, 239 F. Supp.

17

3d 761 (S.D.N.Y. 2017) (finding implied private right of action for plaintiffs to obtain rescission of insurance policies that violated New York fee ceiling statute).[5]

The United States Supreme Court has held similarly in the federal context. "[T]he legal consequences of voidness are typically not … limited [to raising a statutory violation defensively]. A person with the power to avoid a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid."[6] *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18-19 (1979) ("[W]e conclude that when Congress declared . . . that certain contracts are void it intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission or *for an injunction against continued operation of the contract*, and for restitution." (emphasis added)); *see also*, *e.g.*, *Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382, 389 (S.D.N.Y. 2004) (permitting affirmative claim for restitution and referencing "numerous" federal cases holding that plaintiffs who were parties to statutorily invalid investor agreements may "seek[] a remedy consistent with a determination that the contract is void."); *Gpif-I Equity Co. v. HDG Mansur Inv. Servs., Inc.*, 13 Civ. 547, 2014 U.S. Dis. LEXIS 55193, at *10 (S.D.N.Y. Apr. 21, 2014) (emphasis added) ("Plaintiffs seek damages in the form of restitution, as well as *relief that would bar Defendants from collecting any 'severance' or other sum to which the [invalid contracts] might entitle them*. Both equitable remedies are customary incidents of voidness."))[7]

---

[5]     As recognized by the Second Circuit in its first *Schlessinger* opinion, *see* 686 F.3d 81, 85-88 (2d Cir. 2012), New York courts have regularly permitted contracts to be invalidated where one party had violated a state licensing statute that "has for its purpose the protection of public health or morals or the prevention of fraud." *Benjamin v. Koeppel*, 85 N.Y.2d 549, 553 (N.Y. 1995); *see also Thistle v. Englert*, 103 A.D.2d 268, 270 (4th Dep't 1984)). Here, the plain intent of GBL §§ 172 and 185(10) was to protect artists, and specifically, models, against fraud and incompetence. *See* NY L.2014, c. 501 (A. 9396-B), Sponsor's Memo; *see also People ex rel. Armstrong v. Warden*, 183 N.Y. 223, 227 (N.Y. 1905).

[6]     *Cf. Samuels v. Mackell*, 401 U.S. 66, 70 (1971) (observing that declaratory judgments, even where arising from a "statutory remedy," can still be "essentially an equitable cause of action").

[7]     Defendants' reliance on *Sigall v. Zipcar, Inc.,* No. 13 Civ. 4552, 2014 U.S. Dist. LEXIS 22976, (S.D.N.Y. Feb. 24, 2014) is inapposite because (1) *Sigall* did not involve Article 11; (2) New York appellate

"The purpose of the declaratory remedy is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548-49 (2d Cir. 1963) (rejecting defendant's argument that, although "[t]he plaintiff's claim can concededly be asserted as a defense . . . it cannot be asserted as the basis for declaratory relief" and permitting declaratory action where plaintiff "seeks only a declaration of non-liability for additional payments which the defendant claims are due.").[8] Plaintiff here seeks no more relief than the Second Circuit approved in *Luckenbach Steamship*, and no greater remedy than the legislature explicitly provided via the § 185(10) amendment.

For all of these reasons, the legislature's expansion of § 172's enforcement scheme via § 185(10) to authorize (a) civil enforcement in private litigation, and (b) a statutory right to judicial invalidation of unlicensed agency contracts satisfies *Sheehy's* third prong. Therefore, an implied private right of action exists for Plaintiff and the putative class to obtain a declaration that Major – which Plaintiff plausibly alleges operated as an unlicensed employment agency from April 2014 through January 2020 – may not charge or collect fees for its modeling agency services during the period of time that it was unlicensed.

## III.  Plaintiff Has Pled Plausible NYLL and FLSA Retaliation Claims

### A.  Plaintiff Has Exceeded Her Pleading Requirements by Plausibly Pleading a *Prima Facie* Case of Retaliation Under the FLSA and NYLL

---

division cases had previously held there was no implied private right of action for the underlying car rental statute; and (3) appellate division reasoning upon which *Sigall* explicitly relied and quoted was abrogated by *Rhodes* for incorrectly expressing the *Sheehy* analysis. *See Rhodes*, 84 A.D.3d at 11 n.3 ("To the extent that in *Goldberg v. Enterprise Rent-A-Car Co.*, 14 A.D.3d 417 (1st Dep't 2005) we previously held that a potent enforcement mechanism was, by itself, dispositive of whether a private right of action is consistent with the legislative scheme, that case should not be followed. It is clear that potency is but one factor and thus, by itself, not determinative.").

[8]     Plaintiff's concern over future claims by Major is well-founded.  *See Major Model Mgm't, Inc. v. The Lions Model Mgm't, LLC, et al.*, No. 133759/2015 (N.Y. County Sup. Ct.); *Major Model Mgm't, Inc. v. Kuhn*, No. 652074/2019 (N.Y. County Sup. Ct.).

### 1. The Prima Facie Element of a FLSA and NYLL Retaliation Claim

In order to establish a *prima facie* case of retaliation under the FLSA and NYLL, a plaintiff must show: (1) participation in protected activity known to the defendant; (2) action that "*well might have dissuaded* a reasonable worker from making or supporting a charge of discrimination";[9] and (3) a causal connection between the protected activity and the adverse employment action. *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010); *Gristede's Operating Corp.*, 628 F. Supp. 2d at 472; *Burlington*, 548 U.S. at 68; *Rodriguez v. Nat'l Golf Links of Am.*, No. 19 Civ. 7052, 2020 U.S. Dist. LEXIS 100138, at *5 (E.D.N.Y. June 8, 2020) ("The burden-shifting standard for a retaliation claim under the NYLL is the same as that under the FLSA.") (collecting cases). While doing so is not *necessary to survive a motion to dismiss, that Plaintiff has pled a prima facie case here is sufficient to dispose* of Defendants' instant motion to dismiss. *See Chan v. Big Geyser, Inc.*, No. 1:17 Civ. 06473, 2018 U.S. Dist. LEXIS 148291, at *32 (S.D.N.Y. Aug. 30, 2018) ("The plaintiff 'is not required to specifically plead every element of a prima facie case to survive a motion to dismiss'").

### 2. Plaintiff Has Plausibly Pled Participation in Protected Activity and a Causal Connection

Although overlooked by Defendants, *see* Defs.' Br. at 15, Plaintiff has plausibly alleged protected activity and a causal connection. She has pled: (1) that she engaged in protected activity by amending her complaint to add class and collective wage claims on January 1, 2021, Sec. Am. Compl. ¶¶ 447-48; and (2) a causal connection based on the temporal proximity of five weeks between that protected activity and Defendants filing of their retaliatory state court proceeding

---

[9]      *See Li v. Oliver King Enters.*, No. 14 Civ. 9293, 2015 U.S. Dist. LEXIS 102597, at *7 (S.D.N.Y. Aug. 4, 2015) (observing "courts . . . use [of] the phrase 'materially adverse *employment* action'" is a misnomer given its actual expansive reach beyond employment-related retaliatory conduct).

against her current modeling agency and booker, and then amending their complaint to specifically reference Plaintiff by name three weeks later. *Id.* ¶¶ 437-44; *Gristede's Operating Corp.*, 628 F. Supp. 2d at 474 ("The fact that [defendant] had almost an entire year to raise its counterclaims, but chose to do so only three weeks after Plaintiffs amended their complaint to allege wrongdoing by top-level corporate executives, strongly suggests an impermissible retaliatory motive."); *Williams v. Metro N. R.R.*, No. 16 Civ. 1141, 2016 U.S. Dist. LEXIS 109299, at *7 (S.D.N.Y. Aug. 17, 2016) ("ongoing litigation [is] a statutorily protected activity")); 29 U.S.C. § 215 (emphasis added) (prohibiting conduct that "in *any* other manner discriminate[s] against any employee because such employee has filed *any* complaint . . . ."); Dugger Decl., Ex. A-B.

While the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship . . . . [, a]t the pleadings stage, [even] four months is not too attenuated to find temporal proximity." *Nunez v. Metro. Learning Inst., Inc.*, No. 1:18 Civ. 1757, 2019 U.S. Dist. LEXIS 185674, at *4 (E.D.N.Y. Oct. 24, 2019) (citing *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001)). Thus, the five-week period plead in the Sec. Am. Compl. -- or eight weeks with respect to Defendants' amended state court complaint specifically identifying Plaintiff by name -- is "sufficient to make a *prima facie* causation showing. *See Rivera v. JP Morgan Chase*, 815 F. App'x 603, 608 (2d Cir. 2020); *see also Mazurkiewicz v. NY.C. Health & Hosps. Corp.*, No. 09 Civ. 5962, 2010 U.S. Dist. LEXIS 107697, at *5 (S.D.N.Y. Sept. 16, 2010) (less than two months . . . gives rise to an inference of retaliatory intent). Indeed, Defendants' own brief concedes that eight weeks is sufficient. *See* Defs.' Br. at 19 ("Nine or ten weeks is at the outer bounds of what is acceptable where . . . plaintiff relies solely on temporal proximity . . . .").[10]

---

[10]     Plaintiff, however, need not rely solely on temporal proximity. Major's own state court complaint betrays its retaliatory intent by admitting that Major knew of the alleged factual basis for certain of its state court

### 3. Plaintiff Has Plausibly Pled a Materially Adverse Action Under *Burlington's* Well Might Have Dissuaded Standard

Under the applicable *Burlington* "well *might* have dissuaded" standard, "the category of conduct that constitutes actionable retaliation includes more than just 'adverse employment actions' or 'ultimate employment decisions,'" *Gristede's Operating Corp.*, 628 F. Supp. 2d at 472 (emphasis added). Rather, it extends both to retaliation by former employers and to forms of retaliation unrelated to employment. *Li v. Oliver King Enters.*, No. 14 Civ. 9293, 2015 U.S. Dist. LEXIS 102597, at *9-10 (S.D.N.Y. Aug. 4, 2015). Importantly, because it is based "upon the circumstances of the particular case," and "judged from the perspective of a reasonable person in the plaintiff's position," considering 'all the circumstances,'" there is no one-size-fits-all proscription for determining what "well *might* have dissuaded" a worker from engaging in protected activity. *Burlington*, 548 U.S. at 68-69, 71 ("Context matters.  The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.") (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81-82 (1998). As a result, the FLSA and NYLL anti-retaliation provisions not only, "prohibi[t] a wide variety of employer conduct that is intended to restrain, *or that has the likely effect of restraining*, employees in the exercise of protected activities, including the retaliatory filing of a lawsuit against an employee," but must also be applied in the context of the unique economic realities of the NYC modeling industry. *Burlington*, 548 U.S. at 67, 71 (emphasis added).

---

claims *years* ago. ECF No. 32 (Sec. Am. Compl. ¶¶ 452-453); Dugger Decl., Ex. B. Yet, Major chose to file these claims only after -- indeed only *five* weeks after -- Plaintiff filed her Amended Complaint adding class and collective claims. *See Gristede's Operating Corp.*, 628 F. Supp. 2d at 474**.**

Against this backdrop, Plaintiff has plausibly pled a materially adverse action by alleging that: (1) Defendants filed a bad faith or meritless lawsuit against Plaintiff and putative class members' current modeling agency and booker (including at least some *meritless* claims with expired statutes of limitations), within five weeks of her filing her second amended complaint, *see* Sec. Am. Compl. ¶¶ 440, 445, 473-74, 479;[11] (2) Defendants amended that state court complaint to specifically identify Plaintiff by name as a model they asserted was still under contract with Major three weeks later, *id.* ¶¶ 441-42, 475-76;[12] (3) even if Defendant's state court lawsuit *was* entirely meritorious it was nonetheless actionable retaliation because it was filed because of retaliation -- *several years* after Major admits it was aware of some of the grounds for the lawsuit, *id.* ¶¶ 452-453; Dugger Decl., Ex. B;[13] (4) in the context of the NYC modeling industry a public pronouncement that a model is still "under contract" is even *more* materially adverse than a single retaliatory negative job reference privately communicated to a single prospective employer, because it is a pronouncement, to the entire industry that working with that model might result in litigation with and a claim of owing Major a 20% commission by Major, *see* Sec. Am. Compl. ¶¶

---

[11]     *See Burlington*, 548 U.S. at 66-67 ("Anti-retaliation provision 'prohibi[ts]. . . the retaliatory filing of a lawsuit against an employee); *EEOC Enforcement Guidance on Retaliation and Related Issues* (August 25, 2016) § II(B)(2) ("[E]xamples of materially adverse actions may include . . . filing a civil action"); *Lawrence v. NYC Med. Practice, P.C.*, No. 1:18 Civ. 8649, 2019 U.S. Dist. LEXIS 150408, at *26 (S.D.N.Y. Sep. 3, 2019) (Woods, J.) (collecting cases); *Gristede's Operating Corp.*, 628 F. Supp. 2d at 473 (collecting cases) ("Courts have held that baseless claims or lawsuits designed to deter claimants from seeking legal redress. Bad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are actionable retaliation precisely because of their in *terrorem* effect.").

[12]     *Id.*

[13]     *See Rodriguez v. Nat'l Golf Links of Am.*, No. 19 Civ. 7052, 2020 U.S. Dist. LEXIS 100138, at *13 (E.D.N.Y. June 8, 2020) (defendant "would not have sued Plaintiff in state court over the unpaid loan had Plaintiff abandoned the instant action"); *Romero v. Bestcare, Inc.*, No. 15 Civ. 7397, 2018 U.S. Dist. LEXIS 33901, at *12 (E.D.N.Y. Feb. 28, 2018) (allegation lawsuit "would not have been pursued absent a retaliatory motive" is sufficient); *Kreinik v. Showbran Photo, Inc.*, 2003 U.S. Dist. LEXIS 18276, at *24 (S.D.N.Y. Oct. 10, 2003) ("it is reasonable to assume that . . . counterclaims could impact . . . personal and professional reputation"); *Marchiano v. Berlamino*, 2012 U.S. Dist. LEXIS 135109, at *10 (S.D.N.Y. Sep. 18, 2012); *see also Lawrence*, 2019 U.S. Dist. LEXIS 150408, at *27 ("'[w]hether or not an employee can claim retaliation because . . . she has been sued in a well-founded lawsuit is an open question.'").

460-62, 485, 496-97, 492, 494, 504;[14] and (4) Major's state court lawsuit was a threat to Plaintiff and other putative class members and the agency or agency clients they might work for, that they were still under contract and potentially subject to suit, *see id.* ¶¶ 442-44, 451, 458, 492-97.

Each of these alleged actions, in the "circumstances of" the NYC modeling industry, for a model in "plaintiff's position considering 'all the circumstances'", "well might have dissuaded a reasonable worker from making or supporting" a wage complaint against Major. *Burlington*, 548 U.S at 68-69 ("Context matters."). Importantly, because *Burlington's* standard extends to conduct either "intended to restrain" or that merely "has the *likely* effect of restraining" protected activity, it is well-established that merely *threatened* actions, including threated legal action, even if never acted upon, "well *might . . . dissuade[]* a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S at 68.

Therefore, even if Major's retaliatory state court action -- which has put the economic livelihood of Plaintiff and several other models in jeopardy -- *were* characterized as merely a "threat" of potential future litigation directly against Plaintiff and other putative class members, it nonetheless satisfies *Burlington's* "well *might . . . dissuade[]*" standard. *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 141, 149 (2d Cir. 2014) ("retaliation cases based on [discipline] threats are generally strong" and "fairly obvious" that "threats" by the Department to charge appellants with making a false report to the EEOC established a *prima facie* case of illegal retaliation"); *Porter v. MooreGroup Corp.*, No. 17 Civ. 07405, 2020 U.S. Dist. LEXIS 398, at

---

[14]     *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) ("plaintiffs may be able to state a claim for retaliation . . . if, for example, the company 'blacklists' the former employee, . . . wrongfully refuses to write a recommendation to prospective employers . . . or sullies the plaintiff's reputation."); *Lynch v. N.Y. State Urban Dev. Corp.*, No. 16 Civ. 5926, 2018 U.S. Dist. LEXIS 136675, at *20 (E.D.N.Y. Aug. 10, 2018) ("Actions that may negatively affect an employee's chances of securing employment may be considered materially adverse"); *see also Kreinik v. Showbran Photo, Inc.*, 2003 U.S. Dist. LEXIS 18276, at *24 (S.D.N.Y. Oct. 10, 2003) ("reasonable to assume . . . counterclaims could impact . . . personal and professional reputation").

*31-32 (E.D.N.Y. Jan. 2, 2020) (emphasis added) ("[C]ourts in the Second Circuit have recognized actionable retaliation claims . . . involving . . . a threatened legal claim" and retaliatory "harassment" of the plaintiffs was actionable because "although plaintiffs ha[d] not suffered any [economic] harm . . . *plaintiffs were threatened*"); *Liu v. Elegance Rest. Furniture Corp.*, No. 15 Civ. 5787, 2017 U.S. Dist. LEXIS 160110, at *14 (E.D.N.Y. Sep.25, 2017) (emphasis added) ("District courts in this Circuit have held that reporting *or threatening to report* an undocumented immigrant . . . constitutes [retaliation] under the FLSA."); *see also Ming Hou v. Pat Kwok Lam*, No. 3:16 Civ. 01592, 2017 U.S. Dist. LEXIS 159170, at *11 (D. Conn. Sep. 27, 2017); *EEOC Enforcement Guidance on Retaliation and Related Issues (August 25, 2016)* § II(B)(2) ("taking (or threatening to take) a materially adverse action against a close family member"). Moreover, the text of the NYLL's anti-retaliation provision quite explicitly prohibits "threats." NYLL § 215 (emphasis added) ("No employer or his or her agent . . . or any other person, shall . . . *threaten* . . . or in any other manner . . . retaliate . . . ."); *Alvarado v. GC Dealer Servs.*, No. 18 Civ. 2915, 2021 U.S. Dist. LEXIS 3237 (E.D.N.Y. Jan. 6, 2021) ("Section 215 'explicitly reaches threats as well as fully executed retaliatory actions.'").

<u>CONCLUSION</u>

For all of the foregoing reasons, the Court should deny Defendants' motion to dismiss in its entirety.

Dated:  May 7, 2021
          Whitestone, New York

                                        Respectfully submitted,

                                        By: _____/s/ Cyrus E. Dugger_____
                                        Cyrus E. Dugger
                                        **THE DUGGER LAW FIRM, PLLC**
                                        **Cyrus E. Dugger**
                                        **28-07 Jackson Ave., 5th Fl**
                                        **Long Island City, NY 11101**
                                        **Tel: (646) 560-3208**