# Exhibit B
(State Court Action
First Amended Complaint)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| MAJOR MODEL MANAGEMENT, INC. | Index No. 650911/2021 |
| Plaintiff, | FIRST AMENDED COMPLAINT |
| -against- | |
| ELIZABETH GUBITOSI and MUSE MODEL MANAGEMENT, INC. | |
| Defendants. | |

Plaintiff MAJOR MODEL MANAGEMENT, INC. ("Major" or "Plaintiff"), by its attorneys Goldberg Segalla LLP, as and for its Complaint herein against ELIZABETH GUBITOSI and MUSE MODEL MANAGEMENT, INC. ("Muse"), alleges as follows:

## INTRODUCTION

1.  This action presents the two sets of intentional misconduct by Gubitosi directed against her former employer Major: Gubitosi's conspiracy with Major's competitor Muse to target and damage Major's business by inducing models to breach their contracts with Major, knowing they are under exclusive binding contracts; and Gubitosi's raiding of Major's bank accounts while she was sill employed by Major.

2.  As described below, Gubitosi's and Muse's misconduct constitute, among other things, misappropriation of trade secrets, unfair competition, aiding and abetting unfair competition, breach of fiduciary duty, tortious interference with Major's contractual relationships, fraud, and unjust enrichment. Major seeks substantial damages in an amount to be determined at trial based upon the injuries and losses caused by Gubitosi and Muse.

28941620.v2

## PARTIES

3.	Plaintiff MAJOR MODEL MANAGEMENT, INC. is a New York corporation. Major is an agency that focuses on the management of the careers of top women and male fashion models, and is well known through the modeling industry. Major's principal place of business is in New York, New York.

4.	Defendant ELIZABETH GUBITOSI is an individual residing in Monmouth County, New Jersey. Gubitosi is a former officer and employee of Major, and a current employee of Major's competitor Muse.

5.	MUSE MANAGEMENT, INC., also known as Muse NYC or Muse Models, is a Delaware corporation with its principal place of business at 150 Broadway, #1101, New York, New York, 10038. Muse is an agency that provides fashion-related talent services to models.

## JURISDICTION AND VENUE

6.	This Court may exercise personal jurisdiction over Defendants pursuant to CPLR §§ 301 and 302. Venue lies in this Court pursuant to CPLR § 503.

## THE UNDERLYING FACTS

7.	Plaintiff Major is a leading model management firm representing hundreds of models all over the world.

8.	From 1999 to 2017, defendant Gubitosi worked as a Vice President of Major, booking modeling, acting, and other similar engagements for models under contract with and represented by Major in New York, as well as booking their travel and accommodations, managing their schedules, and providing other similar personal and professional management services.

9.	During her time at Major, Gubitosi became intimately familiar with Major's business model and had access to and possessed substantial confidential and proprietary trade

28941620.v2

secret information of Major's that were not available and not meant to be available to non-Major employees.

10. The confidential information and proprietary trade secret information included, but was not limited to Major's contracts with models, the terms of those contracts, the contact information for each and every person and entity that Major booked models' engagements with, the terms on which Major booked work for models, the earnings earned by each model, the commissions and fees earned by Major for each job booked for models, among others (the "Confidential Information").

11. Major protected the confidentiality of the Confidential Information by keeping access to it limited to Major employees. Major kept some hard copy Confidential Information at its offices or in a storage facility that was only accessible by Major employees. Major kept some electronic Confidential Information on its password protected servers, email accounts, and internal software.

12. During Gubitosi's employment with Major she earned an annual salary paid in weekly installments. Major also reimbursed Gubitosi for monthly transportation expenses. Major made these payments to Gubitosi in exchange for her work as Vice President, her exercise of her fiduciary duty and duty of loyalty, and the expectation that she would keep Major's Confidential Information confidential.

13. Unfortunately, the salary and expense reimbursements paid to Gubitosi was not enough for her. She diverted tens of thousands of dollars per year from Major's accounts to her own pocket.

28941620.v2

14. Over the course of her last three years of employment alone, Gubitosi shamelessly exploited her position of trust by stealing nearly $70,000 from Major in payments on top of her salary, made in dozens of separate payments over the course of 2014 to 2017.

15. Gubitosi had these payments recorded in Major's QuickBooks records as "other" or "bonus" or "holiday bonus." In one three month stretch from September 2016 to December 2016, Gubitosi had Major make 13 separate payments to her, each recorded as "holiday bonus."

16. All of Gubitosi's payments were facilitated by making intentionally false statements to Major in the form of the recording into the company's QuickBooks accounts of false pretextual justifications for the payments. The false statements were made regularly by Gubitosi to Major, or by another Major employee on Gubitosi's behalf, on the dates the false entries were entered into QuickBooks.

17. The false entries and payments were only discovered in December 2020 as part of an investigation of an unrelated litigation.

18. At some point in late 2016 or early 2017, Gubitosi determined that she had reached the limit of what could be extracted from Major by remaining its employee and entered into discussions to sell Major out to its competitor Muse.

19. On information and belief, Gubitosi had learned that Major was seeking to hire a new Vice President, and rather than curtail her illegal activities, Gubitosi sought to leave Major and destroy it on the way out for fun and profit.

20. While Gubitosi was still employed by Major, Gubitosi had discussions with Muse regarding discontinuing her employment with Major and joining Muse instead.

28941620.v2

21. As part of those discussions, while still employed by Major, operating out of Major's offices, and being paid a regular salary by Major in addition to stealing thousands on the side, Gubitosi surreptitiously commenced working for Major's competitor Muse.

22. While still employed by Major, Gubitosi, acting on Muse's behalf, had discussions with several models under contract with Major regarding Gubitosi's plan to leave Major for Muse.

23. While still employed by Major, Gubitosi, acting on Muse's behalf, solicited several models with contracts with Major to breach their agreements with Major and sign with Muse instead.

24. Prior to Gubitosi leaving Major, at least one and possibly other models succumbed to Gubitosi's solicitation and breached their contract with Major to sign with Muse.

25. During the time Gubitosi was still employed by Major, Gubitosi shared Confidential Information with Muse, including details of models' contracts with Major and their earnings, and solicited models on behalf of Muse to breach their contracts with Major to sign with Muse.

26. Muse had knowledge of and actively encouraged Gubitosi's solicitation of models prior to her leaving Major by offering Gubitosi lucrative employment in exchange for soliciting models to breach their agreements with Major.

27. Muse also had knowledge of Gubitosi's access to Confidential Information, the impropriety of Gubitosi sharing that Confidential Information with Muse, and encouraged Gubitosi to do so anyway.

28. Prior to leaving Major, Gubitosi took or copied confidential documents and information related to many of the models under contract with Major, including but not limited to

28941620.v2

the models' contact information, their contracts (which contain personal information and the terms and term of their contracts), details of their modeling jobs, schedules, and payments made to them.

29. Muse had knowledge of Gubitosi's position with Major.

30. Muse had knowledge of Gubitosi's access to Confidential Information about the models under contract with Major.

31. Muse had knowledge of each and every model under contract with Major, as Major lists those models on its website.

32. Muse had knowledge that the models under contract with Major had agreed that Major would be their exclusive manager within New York, as it is customary within the modeling industry that models have exclusive contracts with modeling agencies governing a particular geographic area.

33. Muse hired Gubitosi with the expectation that she would continue to cause Major's models to breach their contracts with Major to sign contracts with Muse.

34. On information and belief, Muse hired Gubitosi and encouraged her to and had the expectation that she would take from Major whatever information was necessary to solicit models to breach their contracts with Major and sign with Muse.

35. On information and belief, Muse encouraged Gubitosi to solicit models from Major, while both Gubitosi and the models were under contract with Major, knowing that if Gubitosi did so, she would breach her fiduciary duty to Major.

36. On information and belief, after Gubitosi joined Muse, Muse encouraged Gubitosi to solicit more models from Major, knowing the models she solicited would have to breach their contracts with Major to join Muse.

28941620.v2

37. On information and belief, Muse knew that Gubitosi would use the confidential documents and information taken from Major to solicit models from Major.

38. Muse and Gubitosi working together successfully solicited and caused at least five models to breach their contract with Major, Jasmine Burgess, Clare Cirillo, Kennedy Hunter, Shakyla Ramsey and Tamiris Freitas.

39. On April 4, 2018, counsel to Major wrote to Muse and Gubitosi demanding they cease and desist from continuing to solicit models to breach their contracts with Muse.

40. Neither Muse nor Gubitosi responded to the April 4, 2018 letter.

41. Of the models Defendants enticed to breach their contracts, Defendants solicited and caused several of them to breach their contract with Major after Defendants received the April 4, 2018 letter.

## The Model Contracts

42. Each model that signs with Major, signs the same form of contract, containing the same terms covering the services provided, geographic area of exclusivity, commissions and fees, length of term, automatic renewal, notice of termination, and other material terms.

43. Each of the four models, listed in paragraph 38 above signed such a contract.

44. Each of the model's contracts described the services to be provided by Major as follows:

> I hereby engage Major Model Management Inc. (herein referred to as "MMMNY") as my sole and exclusive personal manager in New York for the term of the agreement (herein referred to as the "Term") in connection with the development of my career in the modeling, advertising, licensing, entertainment, musical, theatrical, dramatic, artistic, fashion, film, video, television, CD-ROM, social network industries (such as Facebook, MySpace, Twitter, Tumblr, Instagram, blogs, etc.), and other visual media industries, and all services to be rendered or performed by me in connection therewith. (All of my work in such industries being referred to herein as "Services".)

28941620.v2

45. Each of the model's contracts described the term of the agreement to be three years, automatically renewed for successive additional one year periods unless written notice of termination is provided more than 90 days prior to the expiration of the then current term.

46. Each of the model's contracts states that Major will receive 20% of all the model's gross income earned by the model during the term of the Model Contract, except for the model's earnings for services under the jurisdiction of the acting industry union, for which Major will receive 10% of the model's gross earnings.

47. Each of the model's contracts states that she will pay to Major a $450 fee per year that the Model Contract is automatically renewed

48. Each model's contract states that Major shall be entitled to recover attorneys' fees and costs from the model incurred by Major in connection with seeking a remedy for their breach of contract.

49. Jasminee Burgess entered into a contract with Major on May 29, 2012. She did not terminate the contract, which automatically renewed on May 29, 2014 for another one-year term, and on every anniversary of that date for an additional one-year term.

50. Major fully performed under its contract with Jasmine Burgess, including by providing the contracted services.

51. Jasmine Burgess did not provide written notice of termination of her contract with Major. She therefore did not terminate the contract, which remains current and binding.

52. On information and belief, Jasmine Burgess entered into a contract with Muse to be represented in New York in or about July 2017.

53. Jasmine Burgess's entry into a contract with Muse is a breach of the exclusivity term of her contract with Major.

28941620.v2

54. On information and belief, Gubitosi, with knowledge of Burgess's contract with Major, solicited Burgess to breach her contract with Major by signing with Muse.

55. Clare Cirillo entered into a contract with Major on September 20, 2013. She did not terminate the contract, which automatically renewed on September 20, 2016 for another one-year term, and on every anniversary of that date for an additional one-year term.

56. Major fully performed under its contract with Clare Cirillo, including by providing the contracted services.

57. Clare Cirillo did not provide written notice of termination of her contract with Major. She therefore did not terminate the contract, which remains current and binding.

58. On information and belief, Clare Cirillo entered into a contract with Muse to be represented in New York in or about September 2017.

59. Clare Cirillo's entry into a contract with Muse is a breach of the exclusivity term of her contract with Major.

60. On information and belief, Gubitosi, with knowledge of Cirillo's contract with Major, solicited Cirillo to breach her contract with Major by signing with Muse.

61. Kennedy Hunter entered into a contract with Major on March 17, 2016. She did not terminate the contract, which automatically renewed on March 17, 2019 for another one-year term, and on every anniversary of that date for an additional one-year term.

62. Major fully performed under its contract with Kennedy Hunter, including by providing the contracted services.

63. Kennedy Hunter did not provide written notice of termination of her contract with Major. She therefore did not terminate the contract, which remains current and binding.

28941620.v2

64. On information and belief, Kennedy Hunter entered into a contract with Muse to be represented in New York in or about January 2018.

65. Kennedy Hunter's entry into a contract with Muse is a breach of the exclusivity term of her contract with Major.

66. On information and belief, Gubitosi, with knowledge of Kennedy's contract with Major, solicited Kennedy to breach her contract with Major by signing with Muse.

67. Tamiris Freitas entered into a contract with Major on October 31, 2016. She did not terminate the contract, which automatically renewed on October 31, 2019 for another one-year term, and on every anniversary of that date for an additional one-year term.

68. Major fully performed under its contract with Tamiris Freitas, including by providing the contracted services.

69. Tamiris Freitas did not provide written notice of termination of her contract with Major. She therefore did not terminate the contract, which remains current and binding.

70. On information and belief, Tamiris Freitas entered into a contract with Muse to be represented in New York in or about January 2018.

71. Tamiris Freitas's entry into a contract with Muse is a breach of the exclusivity term of her contract with Major.

72. On information and belief, Gubitosi, with knowledge of Freitas's contract with Major, solicited Freitas to breach her contract with Major by signing with Muse.

73. Shakyla Ramsey entered into a contract with Major on September 11, 2016. She did not terminate the contract, which automatically renewed on September 11, 2019 for another one-year term, and on every anniversary of that date for an additional one-year term.

28941620.v2

74. Major fully performed under its contract with Shakyla Ramsey, including by providing the contracted services.

75. Shakyla Ramsey did not provide written notice of termination of her contract with Major. She therefore did not terminate the contract, which remains current and binding.

76. On information and belief, Shakyla Ramsey entered into a contract with Muse to be represented in New York in or about January 2018.

77. Shakyla Ramsey's entry into a contract with Muse is a breach of the exclusivity term of her contract with Major.

78. On information and belief, Gubitosi, with knowledge of Ramsay's contract with Major, solicited Ramsey to breach her contract with Major by signing with Muse.

79. Each of the models listed above have an existing contract with Major, and Major is entitled to commissions on all jobs performed by those models in New York during the contract period, as well as residuals and other fees and commissions that Major would have earned had the models honored their contracts.

## FIRST CAUSE OF ACTION

**(Against Muse and Gubitosi for Misappropriation of Trade Secrets)**

80. Major repeats, reiterates, and realleges each factual allegation set forth in paragraphs 1 to 79 as if fully set forth herein.

81. Major maintains trade secrets in the form of the Confidential Information, which is valuable to Major, and its value is in part derived from not being known outside of Major.

82. Major maintains the secrecy of the Confidential Information by keeping confidential documents storage or in the office that is only open to Major employees, and by keeping electronic documents on password protected servers and accounts.

83. Major disclosed the Confidential Information to Gubitosi in confidence for the purpose of facilitating Gubitosi performing her job functions for Major.

84. Gubitosi breached the confidentiality of the Confidential Information by disclosing it to Muse.

85. Muse and Gubitosi proceeded to use the Confidential Information by soliciting models under contract with Major to breach their contracts and sign with Muse instead.

86. Muse and Gubitosi's use of the Confidential Information to solicit models under contract with Major caused Major harm in the form of those model's breaching their contract, costing Major substantial lost revenue.

87. Muse and Gubitosi knew that their use of the Confidential Information to solicit models under contract with Major would cause harm to Muse.

88. By reason of the foregoing, Muse and Gubitosi are liable to Major for all damages suffered by Major and continued to be suffered by Major as a result of the misappropriation of Major's trade secrets in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**(Against Muse and Gubitosi for Unfair Competition)**

89. Major repeats, reiterates, and realleges each factual allegation set forth in paragraphs 1 to 88 as if fully set forth herein.

90. Major maintains trade secrets in the form of the Confidential Information.

91. Major disclosed the Confidential Information to Gubitosi in confidence for the purpose of facilitating Gubitosi performing her job functions for Major.

28941620.v2

92. Gubitosi disclosed the Confidential Information to Muse in return for Muse hiring Gubitosi.

93. Muse and Gubitosi proceeded to use the Confidential Information to unfairly compete with Major by soliciting models under contract with Major to breach their contracts and sign with Muse instead.

94. Muse and Gubitosi's use of the Confidential Information to unfairly compete with Major caused Major harm in the form of those model's breaching their contract, costing Major substantial lost revenue.

95. By reason of the foregoing, Muse and Gubitosi are liable to Major for all damages suffered by Major and continued to be suffered by Major as a result of their use of Major's property to unfairly compete with Major in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

**(Against Gubitosi for Breach of Fiduciary Duty)**

96. Major repeats, reiterates, and realleges each factual allegation set forth in paragraphs 1 to 95 as if fully set forth herein.

97. Gubitosi owed a fiduciary duty to Major by virtue of her employment with Major.

98. Gubitosi breached her fiduciary duty to Major by disclosing the Confidential Information to Major's competitor Muse.

99. Gubitosi breached her fiduciary duty to Major when during the term of her employment with Major she solicited models on behalf of Muse to breach their contract with Major to sign with Muse.

28941620.v2

100. Gubitosi's breach of her fiduciary duty to Major caused Major harm in the form of models breaching their contracts, costing Major substantial lost revenue.

101. By reason of the foregoing, Gubitosi is liable to Major for all damages suffered by Major and continued to be suffered by Major as a result of Gubitosi's breach of her fiduciary duty in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

**(Against Muse for Aiding and Abetting Breach of Fiduciary Duty)**

102. Major repeats, reiterates, and realleges each factual allegation set forth in paragraphs 1 to 101 as if fully set forth herein.

103. Gubitosi owed a fiduciary duty to Major by virtue of her employment with Major.

104. Muse was aware of Gubitosi's employment with Major and that Gubitosi owed a fiduciary duty to Major.

105. Muse solicited Gubitosi during the term of her employment with Major to provide Muse the Confidential Information and to solicit models under contract with Major to breach their contracts and sign with Muse in exchange for Gubitosi's employment with Muse.

106. Muse knew that Gubitosi providing Confidential Information to Muse and soliciting models to breach their contracts with Major would violate Gubitosi's fiduciary duty to Major.

107. Gubitosi breached her fiduciary duty to Major by disclosing the Confidential Information to Major's competitor Muse and by soliciting models on behalf of Muse to breach their contract with Major to sign with Muse.

108. Muse's aiding and abetting Gubitosi's breach of her fiduciary duty to Major caused Major harm in the form of models breaching their contracts, costing Major substantial lost revenue.

28941620.v2

109. By reason of the foregoing, Muse is liable to Major for all damages suffered by Major and continued to be suffered by Major as a result of Muse's aiding and abetting Gubitosi's breach of her fiduciary duty in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (Against Muse and Gubitosi for Tortious Interference with Contractual Relations)

110. Major repeats, reiterates, and realleges each factual allegation set forth in paragraphs 1 to 109 as if fully set forth herein.

111. Major had valid contracts with models as described in paragraphs 42 to 79 herein.

112. Gubitosi had actual knowledge of those models' contracts via her employment with Major.

113. Muse had actual knowledge of those models' contracts through Gubitosi as well as through its own industry knowledge.

114. Muse and Gubitosi intentionally procured the breach of the models' contracts without justification and by tortious means, including by misappropriating Major's Confidential Information, through unfair competition, and by breaching her fiduciary duty to Major.

115. Muse's and Gubitosi's tortious interference with Major's contracts with the models caused Major harm in the form of models breaching their contracts, costing Major substantial lost revenue.

116. By reason of the foregoing, Muse and Gubitosi are liable to Major for all damages suffered by Major and continued to be suffered by Major as a result of their tortious interference with Major's contracts in an amount to be determined at trial.

28941620.v2

## SEVENTH CAUSE OF ACTION

### (Against Gubitosi for Fraud)

117. Major repeats, reiterates, and realleges each factual allegation set forth in paragraphs 1 to 116 as if fully set forth herein.

118. Gubitosi had operational control over Major's bank accounts and accounting and bookkeeping functions.

119. Gubitosi used that control to make false entries into Major's books and records, that she knew was false, and then caused Major to make payments to herself based on those false entries.

120. The false entries into Major's books and records were made to justify payments to Gubitosi that she was not entitled to.

121. Gubitosi knew that she was not entitled to the payments because she knew what her authorized salary was, and that these regular payments were made far in excess of those salaries.

122. These misrepresentations were material in that without them, Major would not have made the payments.

123. The misrepresentations were also material in that if the payments were accurately described, the illegality and extent of the improper payments would have been discovered and acted upon by Major sooner.

124. Major relied on the misrepresentations as to the purpose of the payments by making the payments to Gubitosi.

125. Major suffered damages as a result of Gubitosi's misrepresentations in the amount of the improper payments.

126. By reason of the foregoing, Gubitosi is liable to Major for all damages suffered by Major as a result of her fraud in an amount to be determined at trial.

**EIGHT CAUSE OF ACTION**

**(Against Gubitosi for Unjust Enrichment)**

127. Major repeats, reiterates, and realleges each factual allegation set forth in paragraphs 1 to 126 as if fully set forth herein.

128. Over the course of her employment by Major, Gubitosi took improper payments above and beyond her salary had that no legitimate purpose, and for which Major received no benefit.

129. Gubitosi was enriched by those payments.

130. The payments were made at Major's expense.

131. It is against equity and good conscience to permit the defendant to retain the payments.

132. By reason of the foregoing, Gubitosi is liable to Major for all damages suffered by Major as a result of her unjust enrichment in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**

**(Against Gubitosi for Breach of Fiduciary Duty)**

133. Major repeats, reiterates, and realleges each factual allegation set forth in paragraphs 1 to 132 as if fully set forth herein.

134. Gubitosi owed Major a fiduciary duty by virtue of her employment with Major.

28941620.v2

135. Gubitosi breached that fiduciary duty by taking improper payments above and beyond their salary that had no legitimate purpose, and for which Major received no benefit.

136. Major suffered damages from the breach of fiduciary duty in the form and amount of the improper payments.

137. By reason of the foregoing, Gubitosi is liable to Major for all damages suffered by Major as a result of her breach of fiduciary duty in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Major demands judgment against the Defendants as follows:

a. On the First Cause of Action, an award of money damages against Muse and Gubitosi for their misappropriation of trade secrets, plus punitive damages, interest, attorneys' fees and costs;

b. On the Second Cause of Action, an award of money damages against Muse and Gubitosi for their unfair competition, plus punitive damages, interest, attorneys' fees and costs;

c. On the Third Cause of Action, an award of money damages against Gubitosi for her breach of fiduciary duty, plus punitive damages, interest, attorneys' fees and costs;

d. On the Fourth Cause of Action, an award of money damages against Muse for its aiding and abetting Gubitosi's breach of fiduciary duty, plus punitive damages, interest, attorneys' fees and costs;

e. On the Fifth Cause of Action, an award of money damages against Muse and Gubitosi for their tortious interference with Major's contract, plus punitive damages, interest, attorneys' fees and costs, and a permanent injunction prohibiting them from soliciting models that it knows to be under contract with Major;

28941620.v2

f. On the Sixth Cause of Action, an award of money damages against Gubitosi for her fraud, plus punitive damages, interest, attorneys' fees and costs;

g. On the Seventh Cause of Action, an award of money damages against Gubitosi for her unjust enrichment, plus punitive damages, interest, attorneys' fees and costs;

h. On the Eighth Cause of Action, an award of money damages against Gubitosi for her breach of fiduciary duty, plus punitive damages, interest, attorneys' fees and costs;

i. Granting such other relief as the Court deems just and proper.

Dated: New York, New York
March 3, 2021

                                          GOLDBERG SEGALLA LLP

                              By: __/s/ Matthew S. Trokenheim_____
                                  Matthew S. Trokenheim
                                  711 Third Avenue, Suite 1900
                                  New York, New York 10017
                                  Tel. 646-292-8700
                                  mtrokenheim@goldbergsegalla.com
                                  *Attorneys for Plaintiff*
                                  *Major Model Management, Inc.*

28941620.v2